𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔠𝔬𝔲𝔯𝔱
𝔣𝔬𝔯 𝔱𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔠𝔬𝔩𝔲𝔪𝔟𝔦𝔞

|  |  |  |
|---|---|---|
| Kathyrn Rucker Krepp | : | |
| 1837 A Street SE | : | |
| Washington, D.C. 20003 | : | Case No.: _____ |
| | : | |
| *Plaintiff* | : | |
| | : | Judge: _____ |
| *vs.* | : | |
| | : | |
| The Honorable John Phelan | : | |
| Secretary of the Navy | : | **JURY TRIAL DEMAND** |
| 1000 Navy Pentagon | : | |
| Washington, D.C. 20350 | : | |
| | : | |
| *Defendant* | : | **COMPLAINT - CIVIL** |
| | : | |
| | : | |

## COMPLAINT

**NOW COMES THE PLAINTIFF**, Kathryn Rucker Krepp ("Plaintiff" or "Ms. Krepp"), by and through her undersigned counsel, MNB Meridian Law, Ltd., and hereby files this Complaint against the Defendant(s) Secretary of the Navy, John Phelan, and the Department of the Navy (hereinafter the "Navy"), and avers as follows:

### I.    INTRODUCTION

1.    Plaintiff brings this civil action pursuant to Title VII of the Civil Rights Act of 1964, alleging discrimination and a hostile work environment/harassment on the basis of her sex/gender, and retaliation for conducting a protected activity, including, but not limited to filing an EEO complaint and for reporting violations of statute, regulation and policy by the leadership of the Naval Heritage and History Command ("NHHC") with regard to a hostile work environment, gender discrimination, and retaliation for filing an EEOC complaint.

2.      Plaintiff also brings this civil action against Defendant(s) pursuant to the Freedom of Information Act (Title 5 U.S.C. § 552) for its unlawful withholding of agency records, specifically records related to investigations or other inquires completed by the Department of the Navy as to the toxic work environment created by Defendants' appointees, officers, or employees at NHHC.

## II.    JURISDICTION AND VENUE

3.      The Complaint is filed pursuant to Title VII of the Civil Rights Act of 1964 (Title 42 U.S.C. § 2000e, *et seq*.), which prohibits employment discrimination on the basis of sex; discriminatory employment practices; retaliation for participating in and/or filing a complaint of discrimination or harassment; whistleblowing; and, retaliation for reporting incidences of misconduct by NHHC's white male senior leadership and supervisors; Title 28 U.S.C. § 1331, Title 28 U.S.C. § 1343, the Freedom of Information Act ("FOIA") (5 U.S.C. § 552 *et seq*.), and the Equal Access to Justice Act (Title 28, U.S.C. § 2412) (collectively the "Claims")

4.      Venue is appropriate in the Federal District Court for the District of Columbia insofar as Plaintiff's EEO Claims assert claims that arose under the laws of the United States; are federal questions of law; Plaintiff is resident of the District of Columbia; the Department of the Navy is located within the District of Columbia; NHHC is located in the District of Columbia at the Washington Navy Yard; and, the underlying facts giving rise to this Complaint occurred at NHHC at the Washington Navy Yard in the District of Columbia.

## III    EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Plaintiff timely filed Equal Employment Opportunity ("EEO") complaints with the Navy on July 16, 2024 (amended on July 22, 2024, further amended on September 4, 2024, further amended on July 16, 2025) (Agency Docket Number(s) DON 24-63151-01110 and DON 24-

68323-00706), and on July 16, 2025 (Agency Docket No. UNASSIGNED). (the "EEO Complaint(s)"),

6.    In each of the EEO Complaint(s), Plaintiff alleged prohibited acts committed by Plaintiff's supervisors, Navy Rear Admiral (Retired) Samuel A. Cox, Director, Navy Heritage and History Command ("NHHC"), and Navy Captain (Retired) Patrick C. Burns, Deputy Director, NHHC, based on Plaintiff's sex (gender), and retaliation for conducting protected activities including being a Whistleblower, the filing of the EEO Complaint(s), and for "calling out" misogynistic behavior toward Plaintiff and other NHHC female employees.  (*see* Exhibit "A")  Defendant's actions, and those of its appointees, employees, or agents began in 2023, and continue until the date of this Complaint.

7.    The Navy acknowledged and accepted several of Plaintiff's complaints on September 25, 2024, for investigation.  (*see* Exhibit "B")

8.    On October 16, 2024, Plaintiff agreed to extend the Navy's timeline to investigate the EEO Claims for 90 days, or until April 12, 2025.

9.    Plaintiff was issued a "Right to Sue" letter by the Navy on June 17, 2025, due to the Navy's inability to complete its investigation within the time limits of Title 29 C.F.R. § 1614.108, and informing Plaintiff of her right to file this civil action pursuant to 29 C.F.R. § 1614.407 stating the estimated time to complete the Navy's investigation was September 3, 2025, well beyond the 360-days (beginning July 16, 2024) permitted by 29 C.F.R. § 1614.407. (*see* Exhibit "C")

10.    Plaintiff has exhausted her administrative remedies, and files this timely Complaint.

**IV    PARTIES**

3

11.    Kathryn Rucker Krepp is a resident of the District of Columbia and a United States Citizen.

12.    The Department of the Navy is a subordinate executive agency of the Department of Defense, and as such is subject to suit for the discriminatory, wanton, intentional, willful, wrongful acts and/or omissions of Defendants' appointees, officers, employees, and agents.

13.    John Phelan serves as the Senate-confirmed Secretary of the Navy, and in that role is responsible to the Secretary of Defense and the President of the United States for and has the authority necessary to conduct all affairs of the Department of the Navy (*see* Title 10 U.S.C. § 8013).

14.    NHHC is a subordinate agency of the Department of the Navy with its primary place of business located in the District of Columbia at the Washington Navy Yard.

15.    Samuel Cox, a Caucasian male, a retired United States Navy Rear Admiral, is a Senior Executive Service employee of the Department of the Navy, as serves as the 14th NHHC Director and Curator of the Navy, and in that capacity is responsible for the Navy's official history programs, operational archives, Navy Department Library, and the Navy's collection of historic artifacts, photographs, art, weapons, and display aircraft, and for the Navy's underwater archaeology program.  Mr. Cox serves as Plaintiff's second level supervisor and the immediate supervisor of Mr. Patrick Burns.

16.    Patrick Burns, a Caucasian male, is a retired Navy Captain and general schedule employee serving as the Deputy Director, NHHC, and in that capacity is responsible for executing NHHC's mission of preserving, acquiring, producing, and disseminating history and heritage products and resources through naval historical, archival, museum, curatorial, art, and underwater archaeological programs.  Mr. Burns is Plaintiff's immediate supervisor.

### V    Factual Background

#### A.    <u>Plaintiff</u>.

17.    Plaintiff is a well-regarded long time employee, veteran and former commissioned officer of the United States Coast Guard, an attorney, former political senior executive service appointee as the Chief Counsel of the U.S. Maritime Administration, senior staff counsel for the United States House of Representatives Homeland Security Committee, former registered lobbyist, former District of Columbia elected official, and currently a general schedule (GS-0340-15-08) employee of the Department of the Navy.

18.    Plaintiff was hired in March 2020, holding the position title and billet of Program Manager (GS-0340-15-08), serving as the Director, Director Actions Group ("D/DAG"), NHHC.

#### B.    <u>Plaintiff's Employment, Duties and Responsibilities</u>.

19.    Plaintiff, as Director, Director's Action Group ("DAG"), is responsible for, among other things:  supervise and develop the creation of NHHC-related briefings, decision papers, white papers, reports for NHHC, the Chief of Naval Operations, and the Secretary of the Navy; identify, develop, and publish and present high-priority special projects of interest to the Navy; and, develop the Navy's strategic engagement plan for NHHC and the National Museum of the United States Navy, as well as supervising general DAG administrative matters related to the NHHC's budget, organization, manpower, training, and administrative programs.

#### C.    <u>NHHC Command Climate, Demographics and Misogynistic Behavior</u>.

20.    The Naval History and Heritage Command is responsible for managing the official history of the United States Navy to preserve, analyze and interpret information of its institutional history.  NHHC manages or supervises the collections of ten Navy museums, and

supervises the collection, conservation, and archiving of naval history, as well as maintaining the naval art collection, the Navy library, and the maintenance of the USS Constitution.

21.     Headquarters, NHHC, is located at the Washington Navy Yard, and is comprised of approximately 100 employees in the administrative directorates responsible for overseeing and supporting NHHC missions.  The Director for each directorate, but for the Plaintiff's position as the D/DAG and the NHHC Comptroller, are white males, and are graded at the GS-15 level in the federal civil service.

22.      Beginning in approximately calendar year 2020 and continuing through the date of this Complaint, the NHHC Deputy Director, with the explicit and implicit support of the NHHC Director (collectively the "NHHC Leadership"), allowed and encouraged the white male directors (collectively the "Senior Male Staff") to create a hostile work environment for Plaintiff and other female NHHC headquarters employees by undertaking a pattern of misogynistic and retaliatory behavior, contrary to the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 (the "No FEAR Act") by creating an atmosphere of a fear of retaliation for, among other things, reporting safety issues, including the assault of a female employee in the NHHC building on the Washington Navy Yard.

23.     The NHHC Leadership undertook a pattern explicit and implicit acts of misogynistic and retaliatory behavior specifically toward Plaintiff, including but not limited to:

        a.      significantly delaying, for more than four months, the approval of Plaintiff's Navy-required telework agreements when the telework agreements for the other white male directors, including that of a director whose duty station was in Texas, were approved within days of their request.

b.        being called and routinely referred to as the "speech police" after Plaintiff repeatedly asked the NHHC Leadership and Senior Male Staff to refrain from using the words "bitch" and a "pussy" in the office.

c.        despite assigning significant task-specific responsibilities to other senior staff, the NHHC Leadership deliberately modified Plaintiff's performance plan to include those task-specific responsibilities assigned to employees assigned to other directorates and directors, and then attempted to discipline Plaintiff for the tasks not being completed when those employees could not complete the assigned tasks.

d.        attempted to discipline Plaintiff when Plaintiff, on approved personal time off, provided information to the Senate Committee on Commerce, Science and Transportation, and Homeland Security and Governmental Affairs; the House of Representatives Committees on Homeland Security, Oversight and Accountability, and Transportation and Infrastructure; and, the Department of Homeland Security Inspector General regarding Operation Fouled Anchor and acts of sexual misconduct in the U.S. Coast Guard.

e.        routinely excluding Plaintiff from senior staff meetings and working lunches during which decisions affecting Plaintiff's areas of responsibilities were made.

f.        routinely "calling out" Plaintiff for attempting to assist other female employees to help them resolve their pay, harassment, and other issues of which Messrs. Cox and Burns failed to timely and appropriately correct, including but not limited to conduct of one of the Senior Male Staff telling a female military subordinate "don't go getting pregnant on me;" and, another of the Senior Male Staff harassed a employee by hindering her ability to get routine medical care for a high-risk pregnancy such employee chose to resign due to Messrs. Cox and Burns's inaction.

D.    <u>Defendant's Accusations Against Plaintiff for Acts of Alleged Misconduct</u>

24.    In February 2024, Plaintiff was designated the hiring official for the Deputy Director, Director's Actions Group, NHHC (the "Deputy DAG Position").

25.    The Plaintiff was the chairperson of a selection panel comprised of three individuals, Plaintiff, and a male and a female NHHC employees.

(1)    *The First Deputy DAG Position Advertisement.*

26.    The Office of Navy Civilian Human Resources ("ONCHR"), a Navy agency independent of NHHC, was responsible for establishing the criteria for the Deputy DAG Position, drafting the position announcement, and setting the period for which the position would be open for applicants to apply ("RPA 818020").

27.    In March 2024, four applicants were certified for the position, two females and two males, and each were interviewed by the Selection Panel.   The Selection Panel determined the two females were unsuited for the position.  A male applicant, coincidently Mr. Burns's former commanding officer, a current NHHC employee and re-hired federal civilian annuitant, was not selected for the position due to his performance in the interview and his post interview behavior as described by the male Selection Panel member:  "When the interview finished, [the candidate] immediately stood up and shook my hand. However, he did not do so with the others (*the two females*) on the hiring panel, including Ms. Krepp who was leading the hiring and whom he would be working for."  When combined with his answers to the interview questions, the Selection Panel chose not to select this applicant.  A male applicant was selected but ultimately declined the position for personal reasons.  No applicants for the RPA 818020 announcement were selected.

(2)    *The Second Deputy DAG Position Advertisement.*

28.     In June 2024, in preparing for the advertisement of the Deputy DAG position again, Plaintiff requested ONCHR make two changes to the RPA 818020 advertisement: the position should be open to all federal employees and the advertisement remain open for 14 days.

29.     ONCHR declined to make the adjustments stating the "policy" was to have the announcement open only 5 days, and that the ONCHR representative would make "the call" to extend the response time so to allow for a "*sufficient amount of applicants*." The "policy" cited by the ONCHR representation was an inaccurate restatement of the Office of Personnel Management ("OPM") Delegated Examining Operations Handbook (the "DE Handbook"). The position was advertised as RPA 917488.

30.     The ONCHR representative, without notice to Plaintiff as the chairperson of the selection panel or the other panel members, extended the announcement for two additional days – seven in total. At the close of the advertisement, of the 47 applicants, only 4 applicants were certified for consideration based on the ONCHR established criteria.

31.     The ONCHR representative further stated for the first time: "Since this is a DE recruitment, applicants with veteran's preference must be selected or decline the position before we can review non-vet applicants." In other words, you _must_ select a veteran that is not the best qualified (or technically minimally qualified on paper), and each must decline before you can select a qualified candidate in the non-Veteran pool of candidates.

32.     Plaintiff questioned the ONCHR representative's conclusions, insofar as she was concerned that only 4 applicants of 47 were found to be "qualified." As the supervisor of the person whom the panel would ultimately select, Plaintiff reviewed the 4 resumes and found the four applicants did not have the qualifications required for the position. Plaintiff then requested

the advertisement be cancelled, changes made to the position announcement with the intent of finding ways to expand the qualified pool to all qualified candidates.

33.    Of the four applicants, Mr. Burns's former commanding officer was again a certified candidate who was previously non-selected, as well as another former male NHHC employee.

34.    Mr. Burns found Plaintiff's desire to hire the most qualified candidate "created the appearance of … excluding qualified applicants from consideration for a subordinate position within her preview (*sic*) on the basis of gender."  Furthermore, Mr. Burns stated "Asking questions," or as Mr. Burns describes it as "external intervention" brought "unwelcome scrutiny to the Command, potentially damaging its reputation."  As a result, Mr. Burns removed Plaintiff from the selection panel, named another female NHHC employee as the chairperson, and withheld the selection authority to himself.

35.    The new selection panel chairman informed Plaintiff that the prior NHHC employee – who had been among the four "qualified" candidates, was attempting to contact the selection panel chairman outside normal and acceptable channels of communication.

36.    Ultimately, Mr. Burns's selected his former commanding officer for the D/DAG position, and who remains in the position as the Acting Director, Director's Action Group – yet another white male in a senior leadership position who appears to distain females.

(3)    *Navy Museum Development Fund*.

37.    The Navy Museum Development Fund ("NMDF") is the not-for-profit corporation which was "selected and endorsed by the U.S. Navy to achieve one mission—and only one mission: to secure the funding required to build a state-of-the-art national Navy museum."

38.    NMDF established an office in NHHC to facilitate greater communication between NHHC and NMDF.

39.     As a former senior staff counsel to the House Homeland Security Committee, and given her status as a federal civilian employee prohibited from lobbying Congress, Plaintiff frequently offered guidance to NMDF on how to work with Congress, recommending many times that NMDF retain a registered lobbyist to help NMDF with their congressional engagement.

40.     Plaintiff was rightfully concerned with and reiterated repeatedly to NMDF and NHHC the relationship between NHHC, NMDF, and Congress was fraught with ethical and legal concerns that should be addressed and guidelines established for all personnel.

41.     Plaintiff's interactions with NMDF personnel on official matters were sporadic and provided liaison support between NMDF and the Navy Office of Legislative Affairs; and, but for scheduling meetings for NMDF with Navy representatives, Plaintiff was not a considered a "working" liaison between NMDF and NHHC.

42.     Over the course of calendar year 2024, Mr. Burns slowly and increasingly laid blame for his own Congressional engagement missteps with Plaintiff, claiming she "was clearly instructed to coordinate with the NMDF to solicit funding from Congress for the construction of a new Naval History Museum."  Mr. Burns claims that "[d]espite these clear directives, she disregarded them, demonstrating a willful disregard for her obligations and positions duties."  He later claimed that Plaintiff's actions had a  "negative impact on this partnership has likely damaged the Command's standing with external stakeholders and could have long-lasting repercussions on future projects and funding opportunities."  This despite an NMDF staff member's clear statements that "it has been my responsibility to implement and manage the Congressional strategy for funding with the assistance of [a] board member [and] … it is important to clarify that the only NHHC member who has made calls, attended meetings, or contributed to the strategy regarding the US Congressional effort has been Pat Burns."

E.    <u>Notice of Proposed Removal</u>

43.    On September 4, 2024, despite having received annual No FEAR Act training on at least

one occasion, Mr. Burns retaliated against Plaintiff for her prior EEO protected acts and issued a

Plaintiff a Notice of Proposal Removal (the "Proposed Removal") to remove Plaintiff from

federal service citing three "charges" for:  (a) conduct becoming a supervisor for attempting to

exclude qualified candidates from consideration for the NHHC deputy director, DAG position,

and lying about activities related to the construction of the Navy Museum; (b) failure to follow

instructions for failing to provide answers to questions related to the hiring of the NHHC deputy

director, DAG position, and failure to coordinate meetings with Congressional staff with the

Naval Museum Development Foundation ("NMDF"); and, (c) lack of candor in communicating

with the NHHC Deputy Director regarding meetings with Congressional staff regarding

communications between NMDF and Congressional staff. (*see* Exhibit "D")

44.    Mr. Cox was identified as the Deciding Official for the Proposed Removal.

45.    Given the EEO Claims pending against Mr. Cox and Burns, Plaintiff appealed to the

Director, Navy Staff  (the "DNS") (as the supervisor of Mr. Cox), and requested the appointment

of a superior deciding official.   The DNS granted Plaintiff's request and appointed the Assistant

Deputy Chief of Naval Operations for Personnel Manpower, and Training, as the deciding

official (the "Deciding Official").

46.    Contemporaneous with the Proposed Removal, Plaintiff was placed on paid

administrative leave intensifying the continued retaliation by the NHHC Deputy Director due to

his retaliatory belief that " … other options such as assigning you to other alternative duties, or

allowing you to take leave for which you are eligible e.g. annual leave; I concluded that none

were appropriate. Consequently, I have made the determination that your continued presence

12

may result in the loss or damage to government property and/or jeopardize legitimate

Government interest during the course of the thirty (30) day advanced notice period."

47.     On September 26, 2024, Plaintiff submitted a response to the Proposed Removal. (*see*

Exhibit "E")

48.     On January 27, 2025, the Deciding Official declined to remove Plaintiff from federal

service stating that the Deputy Director's concerns were "not supported by a preponderance of

the evidence ... and merit your consideration, not your removal from federal service." (*see*

Exhibit "F")  To which Mr. Cox later responded that "senior agency officials [incidentally both

female] did deliberately delay the start of the investigation for reasons known only to them ...

[until] after the OCG Mr. Sean Coffey, and the Secretary of the Navy [incidentally both male]

departed office."

49.     Plaintiff remained on paid administrative leave given Plaintiff still had EEO complaints

outstanding against Messrs. Cox and Burns, and given their behavior, comments, and sworn

responses to the EEO interrogatories, it would be inappropriate and rife with the potential for

continued harassment and retaliation against Plaintiff were she to return to NHHC.

50.     At Plaintiff's request, on May 4, 2025, Defendant placed Plaintiff in a temporary position

of appropriate rank and responsibility until the resolution of this case.

F.     <u>Continuing and Other Retaliation</u>.

51.     In fall 2023, Messrs. Cox and Burns recommended a change in Plaintiff's 2024

performance plan to include responsibilities listed on her position description but were, *in fact*,

assigned other senior staff personnel, and for which Plaintiff had no capability or opportunity to

monitor, influence, or complete.  Plaintiff strongly objected to the inclusion of these

responsibilities noting that others were responsible for the duties, and refused to sign the amended performance plan.

52.    In mid-2024, in retaliation for Plaintiff continually "calling out" the behavior of Messrs. Cox and Burns, talking with and providing testimony to Congressional committees, and unlawful belief that Plaintiff was committing misconduct as detailed in the preceding paragraphs, Messrs. Cox and Burns retaliated against Plaintiff by downgrading her performance scores in her 2024 performance evaluation.

53.    Lastly in mid-2024, Mr. Burns added language to the Plaintiffs performance evaluation: "declined to sign," which Plaintiff did not decline.  When Plaintiff contacted Mr. Cox regarding the inaccurate statement and requesting assistance, Mr. Cox instead signed the document knowing in included inaccurate information.

54.    On or about June 17, 2025, after Plaintiff filed three EEO complaints and successfully defended Mr. Burns's attempted removal of Plaintiff from federal service, Messrs. Cox and Burns forged Plaintiff's signature on her 2025 performance plan and evaluation claiming that she had signed and concurred with the document, narrative evaluation, and performance grades.  She did not concur with or sign her performance plan or evaluation. The forgery of Plaintiff's signature strongly suggests further and continuing retaliation for the acts for which she filed the EEO Complaints.

55.    Plaintiff was involuntarily placed on paid administrative leave by Mr. Burns on or about September 4, 2024, when he proposed removing her from federal service.  However, NHHC Leadership demanded, despite NHHC Leadership removing Plaintiff's IT access, that Plaintiff modify her time and attendance each pay period "to request" paid administrative leave.

56.     On or about June 26, 2025, NHHC human resources personnel contacted Plaintiff demanding that she correct her time and attendance due to "Plaintiff's" failure to use the appropriate accounting code during the time when Plaintiff did not have access to her time and attendance due Messrs. Burns and Cox removing her computer access to Navy IT systems. When Plaintiff informed the NHHC employee of these facts, Plaintiff was accused of being disgruntled and uncooperative.  Defendant's accusatory acts strongly suggests further and continuing retaliation for the acts for which she filed the EEO Complaints.

G.     EEO Complaints and Investigation

57.     In addition to the timely filed Equal Employment Opportunity ("EEO") complaints with the Navy on July 16, 2024 (amended on July 22, 2024, and further amended on September 4, 2024) (Agency Docket Number(s) DON 24-63151-01110 and DON 24-68323-00706) (the "EEO Complaint(s)") previously identified, on July 16, 2025 Plaintiff amended the EEO Complaint(s) to include the continuing retaliatory acts identified above (*see* Exhibit "G") (DON Docket No.: UNASSIGNED")

H.     Constructive and Actual Denial of FOIA Requests.

58.     On September 4, 2024, Plaintiff filed a complaint with the Department of the Navy Inspector General ("Navy IG") requesting the Navy IG investigate the NHHC Leadership Team for creating and maintaining a toxic work environment.

59.     After initial conversations with Plaintiff, and believing there was credible information, the Navy IG opened an investigation into NHHC (20240917-098416-CASE-01) on or about September 17, 2024.

60.     Plaintiff believes the investigation of NHHC was completed in mid-November 2024, insofar as the Navy IG completed an "out brief" with NHHC Leadership on or about December 9, 2024.

61.     On December 22, 2024, Plaintiff submitted a FOIA request (2025-NAVYFOIA-002410) to the Department of the Navy requesting "… a copy of the Office of the Naval Inspector General investigation of NHHC that was conducted and completed in the fall of 2024. I requested a copy of the NHHC investigation from the Office of the Naval Inspector General and was directed to submit a FOIA for the document. This request complies with the IG direction." (*see* Exhibit "H")

62.     On April 17, 2025, the Navy responded to Plaintiff's FOIA request for " a copy of the NHHC investigation in which you were the complaint (*sic*)."  (*see* Exhibit "I")

63.     The Navy provided Plaintiff with 5 pages of a redacted email conversation between a Navy Senior IG Investigator and another Navy IG investigator with the subject "Leave Question" and propounding the question "aware of any leave policy that would cover such a scenario?"

64.     The "responsive" documents provided by the Navy FOIA office were, *in fact*, unresponsive in every conceivable way.

65.     On April 22, 2025, Plaintiff appealed the unresponsive FOIA response to the Office of the Navy Judge Advocate General (Code 14) ("Navy FOIA Appeals"), Washington Navy Yard (2025-NAVYAPPEAL-000232).

66.     On April 28, 2025, Navy FOIA Appeals denied Plaintiff's FOIA request stating that "during its search it found one responsive case, (NIGHTS case #202403035), which was opened in June 2024 and closed in October 2024. This case did not develop into a full investigation, and

the IDA provided you with five redacted pages of responsive records on April 17, 2025."  (*see* Exhibit "J")

## COUNT I

### Discrimination

(Title 42 U.S.C. § 2000e *et seq*.)

67.    Plaintiff incorporates paragraphs 1 to 66 by reference as if fully set forth herein.

68.    By and through its conduct Defendant(s) failed to afford Plaintiff the equal rights under the law in violation of 42 U.S.C. § 2000e.

69.    Plaintiff is a member of a protected class of individuals.

70.    As set forth, Defendant discriminated against Plaintiff on the basis of her protected class.

71.    There was and is no legitimate, non-discriminatory reason for Defendant's actions.  Any purported reason offered is pretextual to mask unlawful discrimination.

72.    Due to Defendant's actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain, suffering, and/or damage to her professional reputation.

73.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered substantial damages that will be proved at trial.

## COUNT II

### Hostile Work Environment

(Title 42 U.S.C. § 2000e *et seq*.)

74.    Plaintiff incorporates paragraphs 1 to 73 by reference as if fully set forth herein.

75.    As set forth herein, Defendant created and sustained a hostile work environment for Plaintiff and for the "reasonable person."

76.    Defendant's conduct was severe or pervasive, humiliating and unreasonably interfered with Plaintiff's work performance. Defendant's conduct created an intimidating, hostile and/or offensive work environment.

77.    Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct, and she perceived the conduct to be offensive and/or undesirable.

78.    There is no legitimate, non-discriminatory reason for Defendant's actions.

79.    Any purported reason offered is pretextual to mask the hostile work environment created and sustained by Defendant.

80.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered substantial damages which will be proven at trial.

## COUNT III

### Retaliation

(Title 42 U.S.C. § 2000e *et seq*.)

81.    Plaintiff incorporates paragraphs 1 to 80 by reference as if fully set forth herein.

82.    By and through Defendant's conduct and that of its appointees, officers, and employees and agents, Defendant did not afford Plaintiff equal rights under the law and violated Title VII by retaliating against Plaintiff for engaging in a protected activity.

83.    Defendant, through its appointees, officers, employes or agents, to a "materially adverse" action against Plaintiff in the form of Mr. Burns's Proposed Removal of Plaintiff from federal service, soon after becoming award of her protected activity that might discourage a reasonable person from participating the protected activity.

84.    A causal connection existed between Plaintiff's activity and the adverse actions taken against Plaintiff.

85.    There is no legitimate, non-discriminatory reason for Defendant's actions.

86.     Any purported reason offered is pretextual to mask the hostile work environment created and sustained by Defendant.

87.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered substantial damages which will be proven at trial.

### COUNT IV
### Violation of the Freedom of Information Act
### (Improper Withholding)
(Title 5 U.S.C. § 552 *et seq*.)

88.     Plaintiff incorporates paragraphs 1 to 87 by reference as if fully set forth herein.

89.     Defendant improperly withheld agency records responsive to Plaintiff's FOIA request, in violation of 5 U.S.C. § 552(a)(3)(A) and (a)(4)(B).

90.     Defendant bears the burden of proving that the withheld records fall within a FOIA exemption and that no segregable portions can be released. Defendant failed to meet this burden.

91.     Plaintiff is entitled to prompt disclosure of all responsive, non-exempt records.

### COUNT V
### Violation of the Freedom of Information Act
### (Failure to Conduct an Adequate Search)
(Title 5 U.S.C. § 552 *et seq*.)

92.     Plaintiff incorporates paragraphs 1 to 91 by reference as if fully set forth herein.

93.     Defendant failed to conduct a reasonable and adequate search for records responsive to Plaintiff's FOIA request, in violation of 5 U.S.C. § 552(a)(3)(A).

94.     Plaintiff is entitled to an order compelling Defendant Agency to conduct a thorough and adequate search for all responsive records.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays this Honorable Court:

a.  Award compensatory damages in an amount proven at trial but not less than $300,000;

b.  Award punitive damages in an amount proven at trial;

c.  Award direct and indirect medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d.  Award reasonable attorney fees, costs, and expenses incurred for this action and the underlying proceedings;

e.  Declare Defendant violated the Freedom of Information Act, 5 U.S.C. § 552 et seq., by improperly withholding agency records and/or failing to conduct an adequate search.

f.  Order Defendant to immediately search for and disclose all records responsive to Plaintiff's FOIA request, including any segregable portions of otherwise exempt records.

g.  Enjoin Defendant(s) from further withholding of the requested records.

h.  Award such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted:

MNB MERIDIAN LAW, LTD

By:  _____

Christopher Nuneviller, Esq.
PA Sup.Ct. ID. No.:  81969
DCDC Bar No.:  PA0148
1650 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Main:  (215) 268-3003
Facsimile:  (267) 392-2024
Email:  cnuneviller@mnbmeridian.com

# Exhibit (A)

**DEPARTMENT OF THE NAVY**
CHIEF OF NAVAL OPERATIONS
EQUAL EMPLOYMENT OPPORTUNITY OFFICE

## INTAKE INFORMATION

| | |
|---|---|
| **DATE OF EEO CONTACT** | |
| **NAME OF EEO COUNSELOR** | Carolyn Jones |

**PERSONAL INFORMATION**

| | |
|---|---|
| **NAME OF AGGRIEVED** | K. Denise Rucker Krepp |
| **DATE OF BIRTH** | ▮▮▮▮▮▮▮▮ (mm/dd/yyyy) |
| **GENDER** | ✓ Female ☐ Male |
| **HOME MAILING ADDRESS** | 1837 A Street SE Washington, DC 20003 |
| **TELEPHONE NUMBER AND EMAIL** | HOME ▮▮▮▮▮ WORK EMAIL ▮▮▮▮▮▮ |
| **ACTIVITY'S UIC** | |
| **NAME & MAILING ADDRESS OF FACILITY WHERE COMPLAINT TOOK PLACE** | 805 Kidder Breese Street SE Washington, DC 20374 |
| **JOB TITLE AND GRADE/SERIES** | Director, Director's Action Group, GS-15 |

**COMPLAINT INFORMATION TYPE**

| OF INTERVIEW | IDENTIFICATION OF AGGRIEVED | | |
|---|---|---|---|
| ☐ In Person | ✓ Employee ☐ Former Employee ☐ Applicant | | |
| ☐ Appointment | ☐ Other: _____ (Please specify) | | |
| ☐ Via Telephone | | | |
| **Have you filed previous EEO claims?** | ✓ YES ☐ NO | | |
| **If so, when and what was the basis and issue of the claim(s)?** | Whistleblower Retaliation | | |
| **Have you filed with the Merit Systems Protection Board (MSPB) on this claim?** | ☐ YES ✓ NO | | |
| **Has an administrative grievance been filed on this claim?** | ☐ YES ✓ NO | | |

## INITIAL INTERVIEW FORM (continued)

### DESIGNATION OF REPRESENTATIVE

You have the right to retain representation of your choice. You may elect to have a representative at any stage in the process. Please complete the information below, if you have a representative at this time.

| Name of Representative | Not at this time |
|---|---|
| Mailing Address and Phone number | |

### ANONYMITY You have the right to remain anonymous at the Pre-Complaint counseling stage.

**DO YOU WISH TO REMAIN ANONYMOUS?**

☐ Yes, I elect to remain anonymous          ☑ No, I waive my right to remain anonymous

### WHAT SPECIFIC INCIDENT(S) OCCURRED WITHIN THE PAST 45 CALENDAR DAYS. (IF ANY DATE IS MORE THAN 45 CALENDAR DAYS BEFORE THIS INITIAL CONTACT, PLEASE EXPLAIN THE DELAY.)

| Date(s) Incident Occurred (mm/dd/yyyy) | CLAIM(S) Please provide a brief and concise statement describing incidents in support of the claim(s) listed. *You may attach additional sheets of paper if needed.* |
|---|---|
| 1. 07/22/24 | The DAG space has no air conditioning. The DAG team is compromised of 2 women. Every day, Charlene and I walk past Frank and Brian's offices which have portable AC units. Someone removed the portable AC unit in the DAG space. No one removed the units in Frank and Brian's spaces. Mr. Burns is now taunting people telling them he has AC in his office. He is making a joke of the fact that he has it while others in the command, myself included, do not. DC has been undergoing a heat wave, the hottest summer on record and the lack of AC in the DAG space has been mentally and physically exhausting. It's regularly over 80 degrees in the DAG space. The latest taunt occurred this morning when Chris Renfrow shared that he runs an efficient meeting. Pat Burns retorted that he's the one with AC. Regardless of the fact that I ran the meeting, the fact that Mr. Burns is making a joke about AC when Charlene and I have none and have been begging for help for months is demoralizing and discriminatory. |
| 2. Multiple dates ⊞ | Without prior communication on 7/15/24, Pat Burns tasked another division director with being the hiring manager for the Deputy DAG position. Pat Burns has never stopped a male division director from hiring individuals in their respective divisions. Pat Burns also communicates with the male directors. He regularly goes to lunch with them. He never invites women to lunch. He invites senior male NHHC employees to holiday parties in New York City but does not extend the same invite to senior female NHHC employees. Last year, J_____ _____ NHHC Counsel) attended the NYC event but Mr. Burns didn't invite me or the other women. Important to note that while Mr. Burns hosted an exclusive NYC event he did not organize a command wide holiday party. Lastly, Mr. Burns is allowing a male NHHC employee to be responsible for the building on the new National Museum of the US Navy while working remotely in Texas. He has regular calls with him. I work down the hall from Mr. Burns and he not only doesn't communicate with me, he has also not signed my telework agreement. All of the male NHHC division directors have signed telework agreements. |
| 3. Multiple date ⊞ | Week of February 26, 2024 - Patrick Burns told _____ _____ (DAG contractor) that I was the command's speech police and that I was the reason that he could not curse in meetings. During a October 4, 2023 staff meeting someone made a reference to "those pussies". After that statement was made, I emailed Admiral Cox and Pat Burns reminding them that that phrase was derogatory to women and respectfully asking that it not be used. At at October 23, 2024 staff meeting I told the male division directors that there was a male NHHC employee who loudly and repeatedly called his female colleague a "bitch" and that the employee was afraid to report because of retaliation. Bitch and pussy shouldn't be used in the workplace environment and ridiculing me for promoting a healthy work place environment is gender discrimination. |
| 4. Multiple date ⊞ | While I was in California giving three presentations about female Navy trailblazers in February 2024, Admiral Cox told the male division directors at a meeting that he'd received a message from one of the attendees stating that I was doing a good job. Pat Burns rolled his eyes at that statement. _____ _____ the then Deputy DAG, observed the eye rolling and noted that no one said anything. No one, including Admiral Cox, said stop the eye rolling and treat your colleagues with respect. A couple of weeks later I was scheduled to give a presentation at the Pentagon on female Navy trailblazers. Patrick Burns called the event organizer demanding to know why I was the one invited to give the presentation. He implied that I wasn't qualified to give it Pat Burns does not call organizers when male NHHC employees are giving presentations. He also does not imply that male NHHC employees aren't credible presenters. |
| 5. Multiple date ⊞ | On 8/9/23, Patrick Burns told _____ _____ hat he wanted to see her in "slimming dress" at a NMDF. Mr. Burns has never told a man that he needed to wear slimming clothes. On 10/18/22, I notified Admiral Cox and Patrick Burns that Chief _____ told PO _____ not to go getting pregnant on him. On 5/15/23, I notified Admiral Cox that _____ _____ departed the command after being hassled by her supervisor for being pregnant. The supervisor discouraged her from taking leave. He also made it clear that she should work while sick. I was recently notified of a woman in the command who was assaulted in a NHHC building. She is declining to report the crime for fear of retaliation. In June, a male NHHC employee attempted to stop me from talking about a safety concern. The person who witnessed the exchange wrote down in writing that I shouldn't be retaliated. I was. Also important to note that men are not trying to stop other men from talking at NHHC, only women. |

## INITIAL INTERVIEW FORM (continued)

| **WHAT IS THE <u>DATE</u> OF THE MOST RECENT INCIDENT?** | 07/22/2024 |
|---|---|
| | (mm/dd/yyyy) |

**ALLEGED BASES:** Check and specify the basis(es) on which you believe you were discriminated against. If you are alleging age discrimination, provide your date of birth.

- ■ To file a complaint based on age, you must be at least 40 years old when the incident occurred.*
- ■ If you are alleging discrimination based on disability, give the nature of your disability.**
- ■ If you are alleging discrimination based on retaliation/reprisal, you must have had prior involvement in the EEO complaint process.***

## WHAT IS THE BASIS(ES) FOR THIS COMPLAINT?

| | **BASIS** | **DESCRIPTION** (Please Specify) |
|---|---|---|
| ☐ | **RACE** | |
| ☐ | **RELIGION** | |
| ☑ | **SEX** | ☑ FEMALE  ☐ MALE |
| ☐ | **NATIONAL ORIGIN** | |
| ☐ | **COLOR** | |
| ☐ | **AGE*** | Date of Birth: _____ <br> (mm/dd/yyyy) |
| ☐ | **PHYSICAL DISABILITY*** | |
| ☐ | **MENTAL DISABILITY*** | |
| ☐ | **REPRISAL/RETALIATION*** <br> (Provide Date(s)/Type(s) of Prior EEO Activity) | |
| ☐ | **Genetic Information Nondiscrimination Act of 2008 (GINA)** | |

## ALLEGED RESPONSIBLE MANAGEMENT OFFICIAL(s) (RMO)

If applicable, please identify the responsible management official(s) who are alleged to have engaged in the discriminatory act.

| Name of RMO | Samuel Cox | | Name of RMO | Patrick Burns |
|---|---|---|---|---|
| Position Title | Director | | Position Title | Deputy Director |
| Work Address | 805 Kidder Breese St SE, Washington DC 20374 | | Work Address | 805 Kidder Breese St SE, Washington DC 20374 |
| Phone Number | 202 433 4882 | | Phone Number | 202 433 4882 |

## WITNESS(ES)

What are the names of any witness(es) who can support and/or have <u>direct</u> knowledge about your discrimination complaint? Please provide the name and work number of each witness, their relationship to you, e.g. co-worker, and what you believe s/he knows about the matter at issue. *You may provide additional sheets of paper if needed.*

| Name of Witness | | Phone Number | | Relationship to You | |
|---|---|---|---|---|---|
| Pertinent information they will have: | | | | | |
| Name of Witness | | Phone Number | | Relationship to You | |
| Pertinent information they will have: | | | | | |
| Name of Witness | | Phone Number | | Relationship to You | |

## INITIAL INTERVIEW FORM (continued)

### REMEDY/RESOLUTION

**Please describe the terms, conditions, corrective actions, and remedial relief you are seeking in resolving your complaint.** *You may provide additional sheets of paper if needed.*

Respect and equality. Please treat female NHHC employees with respect. Please care about the working environs of NHHC employees and understand that lack of AC and lack of heat creates an unhealthy workig environment.

### ADDITIONAL INFORMATION/NOTES *You may provide additional sheets of paper if needed.*

### ALTERNATIVE DISPUTE RESOLUTION (ADR)

You have the right to have your pre-complaint handled through the traditional EEO counseling process or use the agency's ADR process (mediation). ADR is a proactive tool to attempt early resolution of EEO disputes. If you elect to participate in mediation and it does not achieve a resolution, you have the right to file a formal EEO complaint. Also, if you have elected mediation, Department of Navy (DON) policy still requires the EEO counselor to obtain relevant information (e.g., identified claims, basis, RMO, etc.) regarding your complaint.

You are requested to make an election whether to use the ADR process or the traditional EEO counseling process:

**I have elected:**

[✓] **ADR Process**   [ ] **EEO Counseling**

If you have elected the ADR Process (mediation), please provide three (3) **specific dates and times** during which you would be available to participate in mediation during the month.

August 2, 2024
_____

August 21, 2024
_____

August 22, 2024
_____

### DOCUMENTATION

Please attach any documentation you wish to support your allegation(s). Include a copy of written action(s) which caused you to seek EEO counseling at this time.

**Please sign, make a copy and return original form to your EEO Counselor.**

KREPP.KATHRYN.R

1010616847

**SIGNATURE OF THE AGGREIVED**                **DATE**

### REASONABLE ACCOMMODATION

If you require **Reasonable Accommodation** (e.g. TTY /TDD, Sign Language Interpreter, etc.), for the counseling and/ or ADR process, please inform your EEO Counselor directly.

**PRIVACY ACT STATEMENT (5 U.S.C. §552a)**

AUTHORITY: Public Law 92-261

PRINCIPAL PURPOSE: Used for filing complaints of discrimination because of race, color, national origin, religion, sex, age, physical or mental disability, genetic information, and/or reprisal by the Department of the Navy civilian employees, former employees, applicants for employment, and some contract employees.

ROUTINE USES: Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (Congress, White House, Equal Opportunity Commission) regarding the status of a complaint or appeal; (d) to adjudicate a complaint or appeal.

DISCLOSURE: Voluntary, however, failure to provide all pertinent information required by law may lead to rejection of the complaint on the basis of inadequate data on which to continue processing.

Exhibit (B)



**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
2000 NAVY PENTAGON
WASHINGTON, DC 20350-2000

```
                                           12713
                                           DNS-E/24U112476
                                           25 SEP 2024
```

From:  Director, Equal Employment Opportunity
To:    Kathryn Denise Rucker Krepp
       1837 A Street SE
       Washington, DC 20003

Subj:  AMENDED NOTICE OF PARTIAL DISMISSAL AND ACKNOWLEDGEMENT
       OF CLAIMS OF FORMAL COMPLAINT FORWARDED FOR INVESTIGATION
       FOR KATHRYN DENISE RUCKER KREPP v. CARLOS DEL TORO,
       SECRETARY OF THE NAVY, AGENCY NUMBER DON 24-63151-01110

Ref:   (a) Your formal complaint received on 16 July 2024
       (b) Notice of Acknowledgement of Receipt of Formal
           Complaint dated 17 July 2024
       (c) Email from Complainant, RE: ADR Case 24-NM-012 –
           Scheduling Documents - Kathryn Krepp, dated 4
           September 2024
       (d) 29 C.F.R. Part 1614
       (e) Management Directive (MD) 110, Chapter 5
       (f) Email from Complainant, Subject: RE: Krepp NHHC Gender
           Discrimination Complaint, dated 22 July 2024


Encl:  (1) EEO Counselor's Report

1. Your formal discrimination complaint, identified as
reference (a) was received on 16 July 2024, and acknowledged by
reference (b).

2. This letter is in reference to your 4 September 2024 request,
per reference (c) to amend the above-referenced Equal Employment
Opportunity (EEO) complaint.  Upon further review of the claims
and after considering your new amendment, the Office of the
Chief of Naval Operations has revised and reframed the
previously accepted/dismissed claims and accepted your new
incident (k) for investigation.

Allegation: Whether you were subjected to discrimination,
disparate treatment, and ongoing harassment based on sex
(female) and retaliation (prior protected EEO activity) when:

a. Beginning on or about January 2020 to present, your first-
line supervisor, Patrick Burns, Deputy, Naval History and

Heritage Command (NHHC), regularly goes to lunch with male directors, however, he never invites you or other women to lunch;

b. Beginning on or about January 2020 to present, the men at NHHC are trying to stop women but not men from talking and reporting safety and health concerns;

c. From January 2024 to present, Mr. Burns, does not communicate with you as he does with the male directors;

d. Beginning on 23 April 2024 to present, you have been denied telework while all male NHHC division directors have signed telework agreements authorized by Mr. Burns;

e. Beginning on 29 April 2024, Mr. Burns has been scrutinizing your participation with the House Oversight Committee regarding Operation Fouled Anchor (inquiry into the handling of sexual assault and harassment at the Coast Guard Academy) while on duty (official time);

   (1)  On 30 April 2024, you received an email from Mr. Burns stating, "we also discussed not doing this on government time, when are you making up these hours?" in reference to you speaking with Congress;
   (2)  On 1 May 2024, you emailed Mr. Burns stating that he did not direct you to use personal time or make up the time when speaking to Congress. Mr. Burns responded stating "You're not representing the US Navy. This is not part of your official duties. I never said that you needed to take vacation time to do this. I said, you can't do this on government time.";
   (3)  Mr. Burns approved your requested leave for additional conversations that you had with Senator Cruz's office and the Senate Commerce Committee, however, the leave has since disappeared from the SLCADA system;

f. In May 2024, you received an unreasonably low performance appraisal rating of Level 3-Fully Successful instead of Level 5-Outstanding;

   (1)  On 31 May 2024, you emailed your second-line supervisor, Mr. Samuel Cox, Director, NHHC, seeking guidance to correct your performance appraisal noting that Mr. Burns added information that wasn't accurate, however, Mr. Cox never responded;

    (2)   On 3 June 2024, you were scheduled to meet Mr. Burns to discuss your performance appraisal however, Mr. Burns cancelled the meeting;

    (3)   On 4 June 2024, without communicating with you, Mr. Burns closed out your performance appraisal marking it "declined to sign";

g. Beginning on or about 21 May 2024, you have been deprived of air conditioning (AC) in the Director's Action Group (DAG) workspace despite voicing concerns about safety with the temperature to NHHC management;

    (1)   On 28 May 2024, Mr. ███████████, Facility Services Assistant, NHHC, attempted to stop you from voicing safety and health concerns with the temperature in the office;

    (2)   On 22 July 2024, Mr. Burns taunted personnel telling them he has air conditioning (AC) in his office although your workspace continues to have no AC and the temperature is regularly over 80 degrees;

h. Beginning in June 2024, your supervisors have reduced their in-person interactions with you:

    (1)   On 3 June 2024, you were scheduled to meet with Mr. Cox for your biweekly meeting, he attended all other biweekly meetings with staff, however, did not attend yours and never asked for your meeting to be rescheduled;

    (2)   In June 2024, Mr. Burns cancelled your weekly DAG meetings with him;

    (3)   On 5 July 2024, you sent an email to Mr. Burns noting your concern with lack of in-person communication and requested an in-person meeting upon his return;

    (4)   On 11 July 2024, Mr. Burns declined the in-person meeting that you requested on 5 July 2024;

    (5)   Following 15 July 2024, you've noticed a pattern where Mr. Burns will cancel your scheduled in-person meetings and sent you emails instead;

i. On 1 July 2024, Mr. Burns retrieved your 2024 performance plan without notifying you and did not tell you what additional information was added to your plan;

j. On or about 1-12 July 2024, Mr. Burns diminished your role as the Director DAG by excluding you from participation in meetings with DC government regarding the next Navy museum.

3

k. In July 2024, Mr. Burns diminished your role as the Director DAG in the recruitment process for the Deputy DAG vacancy while he has never interfered with a male division director hiring individuals in their respective divisions.

    (1)   On 1 July 2024, Mr. Burns met with Mr. ███████████, Attorney, NHHC, to discuss the recruitment of the Deputy DAG job without you present;

    (2)   On or about 15 July 2024, Mr. Burns notified you by email that you were no longer involved in the hiring of the Deputy DAG and that another division director, Ms. ███████ ███████ Financial Manager, would serve as the hiring manager;

l. In August 2024, Mr. Burns is allowing, Dave Adams, a male NHHC employee, to be responsible for building on the new National Museum of the U.S. Navy while working remotely in Texas while you are not afforded the same teleworking privileges.

m. On 4 September 2024, Mr. Burns placed you on administrative leave.

3. Based upon my review of reference (a)-(b), and (f), and in accordance with reference (d) and (e), I am hereby dismissing the following bases and claims for untimely EEO counselor contact under 29 C.F.R. § 1614.105(a)(1):

a. On 4 October 2023, during a staff meeting someone made a reference to "those pussies". After that statement was made, you emailed Mr. Cox and Mr. Burns reminding them that the phrase was derogatory to women and respectfully asking that it not be used;

b. On 16 October 2023, Captain ███████████, Chief of Staff, shut down a conversation you started regarding commemorating female and minority Navy trailblazers. Captain ██████ stated, "I'm done with this conversation" and then stomped out of the room;

c. In December 2023, Mr. Burns invited senior male NHHC employees to holiday parties in New York City but does not extend the same invite to senior female NHHC employees. Last year, Mr. ████████, Captain █████ and Mr. ████████ NHHC Counsel, attended the NYC event but Mr. Burns didn't invite you or other women on the staff;

d. In February 2024:

4

(1) Mr. Burns rolled his eyes when Mr. Cox told the male division directors that he received a message stating that you were doing a good job when giving a presentation about female Navy trailblazers;

(2) You were scheduled to give a presentation on female Navy trailblazers. Mr. Burns called the event organizer demanding to know why you were the one invited to give the presentation implying that you weren't qualified. Mr. Burns do not call organizers when male NHHC employees are giving presentations; and

e. On 28 February 2024, Mr. Burns told ███████████ (contractor), Director's Action Group (DAG), that you were the command's speech police and that you were the reason that he could not curse in meetings.

Pursuant to 29 C.F.R. § 1614.107(a)(2), the agency or the Equal Employment Opportunity Commission (EEOC) shall extend the 45-day time limit only when the individual shows they were not notified of the time limits and were not otherwise aware of them, that they did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence they were prevented by circumstances beyond their control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission. You made initial contact with the EEO Office on 7 June 2024, which makes any claims involving discrete acts occurring before 23 April 2024 untimely. Whether or not you dispute your actual awareness of the 45-day time limit, an agency may establish that a complainant had constructive knowledge of the time limit. *See Santiago v. United States Postal Service*, EEOC Request No. 05950272 (July 6, 1995). Where there is an issue of timeliness, "[a]n agency always bears the burden of obtaining sufficient information to support a reasoned determination as to timeliness." *See Felton S. v. Department of Interior*, EEOC Appeal No. 0120161353 (June 21, 2016); *Guy v. Department of Energy*, EEOC Request No. 05930703 (January 4, 1994) (*quoting Williams v. Department of Defense*, EEOC Request No. 05920506 (August 25, 1992). According to the Total Workforce Management System (TWMS), you received DON EEO Training on 26 August 2022 and DON POSH/Anti-Harassment Training on 20 June 2024. Therefore, you at least had constructive notice of the 45-day time limit. The time limits in the federal EEO complaints process are subject to waiver, estoppel, and equitable tolling by both the agency and the EEOC, pursuant to 29 C.F.R. § 1614.604(c). In cases involving physical or mental health difficulties, an extension is warranted where an

individual is so incapacitated by their condition that they are unable to meet the regulatory time limits. *See Davis v. United States Postal Service*, EEOC Request No. 05980475 (August 6, 1998); *Crear v. United States Postal Service*, EEOC Request No. 05920700 (October 29, 1992). Here, there is no indication or evidence that you were unable to meet the regulatory time limits due to incapacitation. Thus, a waiver, estoppel, or equitable tolling due to incapacitation are not appropriate in this case. Moreover, you have not otherwise provided evidence that despite due diligence factors outside of your control, prevented you from contacting an EEO Counselor within the 45-day time limit.

Claims 3(a)-2(e) are a time-barred claims that involve discrete acts that must be dismissed because untimely discrete acts are not separately actionable. Following the United States Supreme Court decision in *National Railroad Passenger Corp. v. Morgan*, the complainant cannot recover for discrete discriminatory or retaliatory acts that fall outside the limitation period for filing a charge, even if they are related to acts that occurred within the time period. 536 U.S. 101, 113 (2002). Under *Morgan*, a discrete act that occurred before the relevant time limitation period is untimely even if it is related to other actions that are timely. *Id*.

Although I am dismissing these claims as discrete acts that were not timely raised with an EEO Counselor, however, these events should be considered in the analysis of your harassment claim because they are sufficiently related to the overall pattern of harassment. **Therefore, claims 3(a)-3(e) of this letter are dismissed for untimeliness; however, they will be included in the investigation as background information to the extent that it provides relevant information in support of the accepted hostile work environment claims.** *See James v. Department of the Army*, EEOC Request No. 0520120488 (May 17, 2013).

4. Based upon my review of references (a)-(b), and (f) in accordance with reference (d) and (e), I am hereby dismissing the following bases and claims for failure to state a claim under 29 C.F.R. § 1614.107(a)(1):

a. On 18 October 2022, you notified Mr. Cox and Mr. Burns, that Chief ███ told Petty Officer ████████ not to go get pregnant on him;

b. On 15 May 2023, you notified Mr. Cox, that ████████ ████████ former employee, NHHC, departed the command after being hassled by her supervisor for being pregnant and he made it

clear that she should work while sick;

c. On 9 August 2023, Mr. Burns, told ███████████, Navy Museum Development Foundation (NMDF) that he wanted to see her in a "slimming dress" at a NMDF meeting. Mr. Burns has never told a man that he needed to wear slimming clothes;

d. On 23 October 2023, at a staff meeting, you told the male division directors that there was a male NHHC employee who loudly and repeatedly called his female colleague a "bitch" and that the employee was afraid to report it because of retaliation;

e. On 23 July 2024, you were notified by ██████████████, NHHC Security, regarding a woman in the command who was assaulted in a NHHC building. The individual is declining to report the crime for fear of retaliation.

Pursuant to 29 C.F.R. § 1614.107(a)(1), the agency is required to dismiss a complaint if the complainant is not "aggrieved" by the matter alleged. According to the EEOC, an employee or applicant is aggrieved if that individual suffered "a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy." This means the Agency's actions must have caused "some concrete effect on the individual's employment status." See *Diaz v. Department of the Air Force*, 94 FEOR 30755, EEOC Number 05931049 (April 21, 1994). Additionally, the complainant has no standing to pursue a claim of sex based harassment experienced by her subordinates or other agency employees because "she did not suffer a harm or loss with respect to a term, condition, or privilege of employment as a result of the alleged conduct." *See Mayfield v. Department of Agriculture*, EEOC Appeal No. 0120100735 (Aug. 8, 2011) *citing Edwards v. U.S. Postal Serv.*, EEOC Appeal No. 01830784 (1983)(the allegations as framed by appellant did not sufficiently claim personal injury as a result of discriminatory practices, the allegations were general concerns about the manner in which the agency was pursuing its EEO obligations). **Therefore, claims 4(a)-4(e) of this letter are dismissed for failure to state a claim.**

5. Per 29 C.F.R. § 1614.107(b), there is no immediate right to appeal a partial dismissal of a complaint to the Equal Employment Opportunity Commission (EEOC). However, this determination is reviewable by an EEOC administrative judge if you request a hearing on this complaint but is not appealable until the final action is taken on the remainder of this complaint. If you elect a decision by the Secretary of the Navy,

without a hearing, this decision will address all the claims in your complaint, including its rationale for dismissing the claims and its findings on the merits of the remainder of your complaint. The Secretary of the Navy's decision will include your appropriate appeal rights. You may appeal the Navy's decision to EEOC. If you request a hearing from an Administrative Judge, the Administrative Judge will evaluate our reasons for believing that a portion of the complaint met the standards for dismissal before holding the hearing. If the Administrative Judge finds that all or part of our reasons are not well taken, the entire complaint or all of the portions not meeting the standard for dismissal will continue in the hearing process and the parties will be allowed to conduct discovery.

6. If you believe that the accepted claim(s) are not correctly identified, you must send written notification within seven (7) calendar days of receipt of this letter specifying why you believe the claim is not correctly identified to:

████████████

Director, Equal Employment Opportunity
Department of the Navy
Chief of Naval Operations
Director, Navy Staff (DNS-E)
1013 O. Street, SE, Building 166, 3rd Floor, Room B311
Washington Navy Yard, D.C. 20374 or

███████████████████

Your complaint must be limited to the claims discussed with the EEO Counselor. If you do not reply, I will consider the claims as stated above to be correct.

7. By copy of this letter, the Area Representative, Defense Civilian Personnel Management Service, Office of Investigations and Resolutions Division (IRD) is notified of the claim that has been accepted for processing and is requested to assign an investigator. IRD is also requested to produce a report of investigation.

8. The IRD investigation will begin in approximately 1-3 months. Please be prepared to present a statement to the investigator and any additional evidence you have to support your belief that you were discriminated against. You should also provide the investigator with any evidence you have of expenses, damages, or injuries suffered as a result of the alleged discrimination. Please be sure to prepare this case in the near future so you are available and ready to meet with the

investigator at the scheduled time.

9. If you have any questions concerning the processing of this Complaint, you may contact ███████████ EEO Counselor, at ███████████

X _____
  ████████████

Copy to:
████████████, Agency Representative

Exhibit (C)



**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
2000 NAVY PENTAGON
WASHINGTON, DC 20350-2000

                                        12713
                                        DNS-E/25U103151
                                        16 JUN 25

From:  Director, Equal Employment Opportunity
To:    Christopher Nuneviller
       One Liberty Place
       1650 Market Street, Suite 3600
       Philadelphia, Pennsylvania 19103

Subj:  INVESTIGATION NOT COMPLETED AS REQUIRED BY §1614.108(f)
       FOR FORMAL COMPLAINT OF KATHRYN DENISE RUCKER KREPP V.
       JOHN C. PHELAN, SECRETARY OF THE NAVY, AGENCY NUMBER DON
       24-63151-01110

Ref:   (a) 29 CFR Part 1614.108

1.  In accordance with reference (a), this is your client's
notice that the Department of the Navy (DON) has been unable to
complete its investigation within the time limits required by
§1614.108(f).  The new estimated completion date of the
investigation is 3 September 2025.

2.  If your client decides not to wait for the investigation to
be completed, she may request a hearing with the Equal
Employment Opportunity Commission (EEOC).  Your client's hearing
request must be submitted directly to the EEOC at the address
provided below:

                Equal Employment Opportunity Commission
                Washington Field Office
                131 M Street, NE, 4th Floor
                Washington, DC 20507

With a copy to the Equal Employment Opportunity (EEO) Office
processing this complaint:

                Department of the Navy
                Chief of Naval Operations
                1013 O Street SE
                3rd Floor, Suite B311
                Washington Navy Yard, DC 20374

Subj:  INVESTIGATION NOT COMPLETED AS REQUIRED BY §1614.108(f)
       FOR FORMAL COMPLAINT OF KATHRYN DENISE RUCKER KREPP V.
       JOHN C. PHELAN, SECRETARY OF THE NAVY, AGENCY NUMBER DON
       24-63151-01110


3.  Your client must certify to the EEOC that she provided the
DON a copy of her hearing request via the EEO Office servicing
her complaint.

4.  Instead of requesting a hearing with the EEOC, your client
may file a civil action in an appropriate United States District
Court in accordance with §1614.407(b).

5.  The point of contact ███████████████
          s Manager, ███████████████████████
███████████

                            ███████████████

Copy to:
          se Rucker Krepp, Complainant
███████████, Agency Representative

2

# Exhibit (D)

12752
4SEPT24

From: Deputy Director, Naval History and Heritage Command (NHHC)
To:     Kathryn (Denise) R. Krepp, Program Manager, GS-0340-15

Subj:   NOTICE OF PROPOSED REMOVAL

Ref:    (a) SECNAVINST 12752.1A, Disciplinary Actions, dated May 3, 2016; Incorporating
            Change Transmittal 1, dated November 6, 2017
        (b) Position Description Number H429A, Program Manager GS-0340-15
        (c) Training Record, Kathryn Krepp, spanning from April 6, 2020 thru June 20, 2024
        (d) Email chain regarding Subject: RPA 917488 Announcement Extended – NHHC DAG
            job, spanning from June 12-26, 2024
            Announcement Extended, dated June 25, 2024
        (e) Certificate of Eligibles, Program Analyst, GS-0343-13, Certificate Number
            20240625-CACL-024, issued date June 25, 2024
        (f) Certificate of Eligibles, Program Analyst, GS-0343-14, Certificate Number
            20240625-CACL-024, issued date June 25, 2024
        (g) Memorandum for the Record by Patrick Burns, Subject: Refusal to Consider men for
            Deputy DAG, signed June 26, 2024
        (h) Memorandum for the Record by Charmain Graves, Subject: Denise Krepp, signed
            July 11, 2024
        (i) Memorandum for the Record by Ryan Magee, Subject: RE: RPA 917488, dated July
            10, 2024, signed July 11, 2024
        (j) Memorandum for the Record by Patrick Burns, Subject: Appropriations Committee,
            dated and signed June 6, 2024
        (k) Memorandum for the Record by Captain Matt Tharp, Subject: NHHC Future
            Museum Congressional Appropriations Issue, dated and signed July 24, 2024
        (l) Statement by Jennifer Kaye, Principal, NMDF, dated and signed July 18, 2024
        (m) Email chain between Burns and Krepp, Subj: Hiring The Deputy DAG, spanning
            from July 4 – 11, 2024
        (n) Memorandum for the Record by Patrick Burns, Subject: Congresswoman Kiggans,
            dated and signed June 8, 2024
        (o) Memorandum for the Record by James C. Renfrow, Subject: Principals' Meeting,
            Wednesday July 17, 2024, dated and signed July 17, 2024
        (p) Memorandum for the Record by Lois Chattman, Subject: Recap of Conversation with
            Denise Krepp on Monday July 15, 2024, dated and signed July 18, 2024

Encl:   (1) Proposing Official Douglas Factor Analysis, date September 4, 2024
        (2) Preliminary Notice of Appeal Rights for Effected Adverse Actions

1.  I am proposing you be removed from the Department of the Navy and from Federal service
in accordance with reference (a), to promote the efficiency of the service, effective no earlier
than 30 calendar days from receipt of this letter.

2.  <u>BACKGROUND:</u> Per reference (b), as a Program Manager GS-0340-15, you are entrusted
with critical executive-level responsibilities within the Command.  Your primary duties involve

Subj:  NOTICE OF PROPOSED REMOVAL

making high-level decisions on Command functions, including the development and execution of the NHHC Strategic Plan, the annual Command Program Objective Memorandum submission, and the creation and implementation of Command policies, instructions, and processes. Additionally, you lead the Director's Action Group (DAG) as the Supervisory Program Manager and Primary Action Officer, overseeing all DAG staff actions. This includes conducting interviews for subordinate positions and making recommendations regarding hiring, promotions, and reassignments of staff. Per reference (c), your qualifications for these duties are underscored by your completion of numerous relevant trainings, including courses on Merit System Principles, Hiring, and Equal Employment Opportunity. These experiences and training demonstrate your preparedness for the responsibilities associated with your position and the requisite knowledge of personnel programs required of your position.

3. This action is based on the following charge(s) and specification(s):

**Charge 1:  Conduct Unbecoming a Supervisor**

**Specification (a):**  On June 25, 2024, per reference (d), two (2) certificates for a Program Analyst, GS-0341-13/14, were issued for a hiring action (RPA 917488) in which you were the selecting official/hiring manager. The GS-13 certificate, reference (e), contained two (2) best qualified Compensable Disability Preference (CPS) Veterans. The GS-14 certificate, reference (f), contained three (3) best qualified CPS Veterans. Reference (d) also provided an overview of the Delegated Examination (DE) regulations pertaining to selection order and Veterans preference rules. Per reference (g), after reviewing references (d) thru (f), you came to my office asking to discuss the hiring action, wherein you then indicated that there were four (4) men on the certificates and disclosed your intent to cancel the hiring action. You stated, "I shouldn't have to pick from a cert without women on it in this day and age." I asked how many applicants there where, and you responded with "47." I informed you that it was the Office of Civilian Human Resources (OCHR) job to screen the applicants to ensure they are qualified and to send you the most qualified applicants to choose from and that if any were Veterans you would have to justify why you chose not to hire them. I then instructed you to meet with ███████ ████ Human Capital Officer, to review what the rules were regarding not hiring an applicant from the certificates you were given. Per reference (h), you met with Ms. ██████ on that same day and stated to her that there were no women listed on the certificate, and that you were not going to hire any men. Ms. ██████ responded that you have to at least interview them to which you replied that you would email the HR Specialist ██████ with your refusal to hire any men. Per reference (i), you then called Mr. ██████ and stated that the certificates only contained men and that you were uncomfortable proceeding with interviewing only men. In response, Mr. ██████ explained the delegated examining, OPM, and Veteran's Preference rules/procedures to you. Despite being expressly reminded of rules, you again requested to cancel the recruitment and re-announce the position for hiring. Mr. ██████ requested that you submit your request to cancel the recruitment in writing. Per reference (d), you emailed Mr. ██████ the following: "Please cancel the announcement. The list you shared only contained resumes for men. It's 2024 and I'm not comfortable with only interviewing men for this job. I'll work with Charmain to submit a new announcement." Per reference (d), Mr. ████████████ who is Mr. ██████ supervisor, then contacted you to reiterate the rules for DE recruitments and confirm your

---

[1] Ryan Magee is the OCHR HR Specialist assigned to assist management with the processing of this recruitment action.

Subj:  NOTICE OF PROPOSED REMOVAL

request for cancelation and re-recruitment. Per reference (d), you responded "As stated earlier, please cancel the job announcement." Consequently, you attempted to exclude qualified candidates from consideration for the position based on gender and attempted to grant an advantage to future female applicants, if any, for selection to the position and thus, were removed as the selecting official for the recruitment action. Your conduct was improper and detracts from your character and reputation; therefore, you are charged with conduct unbecoming a supervisor.

**Specification (b):**  Per references (j) and (k), in the early months of 2024, during our NHHC Leadership Team meetings on Mondays and Wednesdays and at other Museum related meetings, I asked you about your efforts to arrange a meeting with the Appropriations Committee staffers and also, if you had coordinated with the Navy Museum Development Foundation (NMDF)In response, you repeatedly informed me that you had coordinated with the NMDF and set up the briefing. However, during a subsequent meeting with the NMDF staff members, it was disclosed that you had not been coordinating with NMDR in their efforts to fund the new museum as you previously indicated. I brought this matter to Director Cox's attention, who then asked you about it. You stated to Director Cox that I had simply asked the wrong NMDF members, indicating that you had been coordinating with the NMDF Administrative Officer, ▇▇▇▇▇ ▇▇▇▇▇▇▇▇ Contrary to your assertion, Mr. ▇▇▇▇▇ subsequently confirmed that you had not coordinated anything with him regarding the Appropriation Committee. Per reference (l), in early 2024, you called ▇▇▇▇▇▇ Principle at NMDF, to inquire about the progress made to date and the ongoing activities of the funding requests for the new museum. You suggested that I had been asking if you were helping in any way and despite never attending any meetings, making any calls to Congress, or conducting any outreach, you implied that you wanted her to state, if asked, that you had helped and been engaged with the effort. Your conduct was improper and detracts from your character and reputation; therefore, you are charged with conduct unbecoming a supervisor.

### Charge 2:  Failure to Follow Instructions

Specification (a): Per reference (m), on July 4, 2024, I emailed you instructing that you provide answers to me regarding the Deputy DAG certification. Specifically, I listed the questions I required answers to and instructed you to provide such answers to me by July 10, 2024. In response, on July 5, 2024, you expressed confusion regarding the line of questioning and requested to meet with me on July 11, 2024, reference (m). You did not provide answers to the questions by July 10, 2024, as instructed, nor were you granted an extension for submission of your response; therefore, you have failed to follow instructions.

Specification (b): Per reference (j), NHHC and the Navy Museum Development Foundation (NMDF) worked on drafting language for the upcoming National Defense Authorization Act (NDAA) regarding Congressional matching funds to build a new National Museum of the United States Navy. You were involved in and assisted with this effect and liaised with the Navy Office of Legislative Affairs (OLA) as part of your duties. Furthermore, I instructed you to set up briefings with the Appropriations Committed in addition to the House Armed Services Committee (HASC) and Senate Armed Services Committee (SASC) to request funds for the new museum and coordinate such efforts with the NMDF. Per references (j) and (k), on numerous occasions, when I asked you if you had coordinated with the NMDF and set up the briefings, you responded "yes" to both questions. When I spoke with members of the NMDF, it was disclosed

Subj:  NOTICE OF PROPOSED REMOVAL

to me that you were not coordinating with them, nor had you set up the briefings as instructed. You failed to set up a briefing with the congressional committees and you failed to coordinate with the NMDF; therefore, you have failed to follow instructions.

## Charge 3:  Lack of Candor

Specification (a):  Per reference (n), during our executive morning meeting in late January/early February 2024, you informed me that we had a brief scheduled with Congresswoman ▮▮▮▮ on February 7, 2024.  As I had just recently met with the Congresswoman on two occasions, I was surprised.  I asked you the following questions:  1) Who set up the meeting, 2) Who requested the meeting, 3) What was the topic, 4) Was it with the Congresswoman or her staff.  Despite me asking you these questions repeatedly over the next two weeks leading up to the meeting, you never provided a substantive answer and instead, deflected your responses.  Consequently, I called the Congresswoman's staff to inquire about the upcoming meeting; however, they seemed confused by the assertion of such scheduled.  On February 5, 2024, I again asked you about the meeting and stated how important it was for us to know who set up the meeting, who asked for it, who it was with, and the agenda so that we could properly prepare a brief.  In response you stated "I think OLA" and then, "I believe they did."  On February 7, 2024, when CDR ▮▮▮▮ ▮▮▮▮▮▮▮ from OLA arrived to transport Director Cox and I to the Congresswoman's office, I asked him who asked for or set up this meeting.  He replied that you requested and set the meeting up. When asked about the details of the meeting on numerous occasions, you repeatedly failed to inform me that you had requested and scheduled the meeting.  Thus, you knowingly provided less than candid information; therefore, you are charged with lack of candor.

4.  Your misconduct is exceptionally serious in nature and adversely affects the efficiency of the service.  The range of penalties found in reference (a) for similar or like offenses[2] is reprimand to removal for the first offense of misconduct.  In determining the appropriate penalty to propose in this case, I have considered the applicable aggravating and mitigating Douglas Factors as specifically annotated within enclosure (1).

5.  For the reasons set forth above, both individually and cumulatively, and after full consideration of all relevant factors, I believe this proposed removal is the minimum action that can reasonably be expected to correct your misconduct and promote the efficiency of the service.

6.  You have the right to reply orally or in writing, or both, and furnish affidavits and other documentary evidence in support of your position.  You are entitled to be represented by an attorney or other representative of your choice.  However, before a representative may act on your behalf in this matter, that person must be designated by you, in writing, to the person indicated directly below, who is the Designated Deciding Official (DDO) for this proposed removal in accordance with reference (a).

                    Samuel J. Cox
                    Director, NHHC

---

[2] Per reference (a), misconduct the forms of "discrimination against an employee or applicant based on sex", "notoriously disgraceful conduct", "failure or delay in carrying any proper instruction", and "attempted or actual misstatement or concealment of material fact" each range from a penalty of reprimand to removal for a first offense.

Subj:  NOTICE OF PROPOSED REMOVAL



The written designation must include your representative's name, title, address and telephone number, and state whether or not your representative is an employee of the Navy. The agency may disallow as an employee's representative, an employee whose activities as a representative would cause a conflict of interest or position, or whose release from his/her official position would give rise to unreasonable costs, or whose priority work assignments preclude his/her release.

7. You and your representative are entitled to review the material relied upon to support proposing this removal. If you are otherwise in a regular duty status, you will be granted a reasonable amount of official duty time, requested and approved in advance, to review such material relied on to support the proposal, secure affidavits, medical documentation[3] or other evidence, and to answer this notice. Requests for such official time must be submitted to me, your immediate supervisor, and approved in advance.

8. If you choose to respond to this proposal, you should direct any written and/or oral response and supporting documents to the DDO. Your written reply must be received by the DDO within seven (7) calendar days from the date you receive this letter. If you request an extension, your request and reasons for the extension must be submitted in writing to the DDO before the expiration of the seven (7) calendar day reply period. If you desire to reply orally, you must schedule an appointment with the DDO for the delivery of your oral reply within seven (7) calendar days from the date you receive this letter. Any oral and/or written reply, as well as all case file evidence, will be considered before a final decision is made. If you choose not to make a response, the DDO will base his decision on the current record.

9. You are hereby given thirty (30) calendar days advance notice of this proposed action beginning the day after you receive this letter. Unless otherwise instructed, you will remain in an regular duty status during the notice period of this proposed removal. No final decision on this action has been made nor will a decision be made until after the time allowed for your reply. Your reply will be given full and careful consideration before a decision is made. Should adverse action be effected as a result of this proposed action, see enclosure (2) for avenues of redress.

10. If you believe that you have a disability that affects your conduct, you may submit a request for Reasonable Accommodation (RA). Such request must address the mitigating effect it would have on your job and how it would allow you to satisfactorily perform all of the essential functions of your current position. Be advised that it is incumbent upon you to submit such a

---

[3] The Genetic Information and Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of employees or their family members. In order to comply with this law, we are asking that you not provide any genetic information when responding to any type of request for medical information. 'Genetic information,' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

Subj:  NOTICE OF PROPOSED REMOVAL

request for assistance for management consideration.  Please submit such a request with the information requested above to your immediate supervisor and ███████████ RA Coordinator via email at ████████████████ To be clear, your request must include the specifics of the assistance you are seeking as well as the condition it is intended to remedy.  Management, however, reserves the authority and right to grant or deny any assistance or arrangement based on but not limited to consideration of its effects on the mission, incurred costs to the agency, disruption to the workplace, and overall reasonableness.

11.  If you are experiencing personal or medical problems, I encourage you to take whatever action necessary to alleviate the problem. Counseling services are available through the Civilian Employee Assistance Program (CEAP) if you wish to discuss with a trained counselor any personal problems that may be related to your actions. Upon request and subject to supervisory approval, you may be provided with an opportunity to contact the CEAP counselor on duty time or you may call the CEAP Coordinator, telephone 1-844-366-2327 to arrange an appointment for yourself.

12.  Copies of applicable regulations as well as the official case file are available to you and your representative at the Chief of Naval Operation's Human Resources Office (CNO HRO), 2000 Navy Pentagon, Rm 4C669, Washington, D.C. 20350.  Should you require further information regarding your rights, you may consult with ████████ CNO HRO, at ████████ or ████████████████████

P. C. BURNS    9 Sep 24

My signature below indicates that I received this notice.  In signing this notice I am in no way indicating that I agree or disagree with the contents of this notice.

_____
Date          Employee Signature

Copy to:
CNO HRO, LER
Deciding Official (DDO)

6

12752
9 SEP 24

From:  Deputy Director, Naval History and Heritage Command (NHHC)
To:    Kathryn (Denise) R. Krepp, Program Manager, GS-0340-15

Subj:  CORRECTION TO NOTICE OF PROPOSED REMOVAL ICO KREPP

Ref:   (a) Notice of Proposed Removal, dated September 4, 2024

1.  On September 4, 2024 you were provided with reference (a) which proposed your removal
from Federal Service.  Reference (a) contained an error in the listing of references section of the
letter.  Attached are copies of ref (a) and encl (1) correcting the references within both letters.

P. C. BURNS          9 Sept 24

My signature below indicates that I received this notice.  In signing this notice I am in no way
indicating that I agree or disagree with the contents of this notice.

_____
Date          Employee Signature

Copy to:
CNO HRO, LER
Deciding Official (DDO)

# ENCLOSURE (1)

## Proposing Official (PO)
## Douglas Factors Analysis

When taking disciplinary and/or adverse action, you must review and consider all the relevant Douglas factors in determining a reasonable penalty for the misconduct per SECNAVINST 12752.1A. You must discuss the reasons for finding a factor to be mitigating, aggravating, or neutral (also mark neutral for any factor that is not relevant).

If you need assistance in interpreting these factors, please contact the CNO HRO, Labor and Employee Relations Division: ███████████████████
██████

## FACTOR 1: Nature and Seriousness of the Offense

The nature and seriousness of the offense and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, was committed maliciously or for gain, or was frequently repeated.

☒ Aggravating　　☐ Mitigating　　☐ Neutral

**WRITTEN ANALYSIS:**

In evaluating Ms. Krepps misconduct, I found the nature and seriousness of the charged offenses to be particularly egregious. Ms. Krepp's misconduct, as described in the proposed removal, was deliberate, deceptive, and unbecoming. As a Program Manager, GS-0340-15, a senior leader within this command, and a supervisor, Ms. Krepp is held to a higher standard of conduct where even the appearance of impropriety is a serious matter. It is imperative to the efficient operation of NHHC that Ms. Krepp exercise sound judgment in the commission of her duties. By engaging in the charged misconduct, Ms. Krepp created the appearance of, and subsequently admitted to, excluding qualified applicants from consideration for a subordinate position within her preview (Program Analyst, GS-0341-13/14) on the basis of gender. Rather than omitting applicants for lawful and legitimate business reasons, Ms. Krepp permitted personal preference to negatively influence her judgement as the designated selecting official for this hiring action. Discriminating against male applicants as the designated selecting official violates laws, rules, and regulations implementing or directly concerning merit system principles. To be very clear, her misconduct, as specifically stated within the proposed removal letter, directly and adversely impacted the hiring and recruitment process for the Program Analyst, GS-0341-13/14 position.

Ms. Krepp's actions demonstrate an alarming absence of judgement and detracts from her character and reputation as an NHHC leader and as the leader of the DAG and Primary Action Officer. Our operations and successful mission accomplishment relies upon a continued culture of equity and fairness in the hiring and selection of our employees. As the designated selecting official, Ms. Krepp was expected and required to adhere to all merit systems hiring principles,

including treating qualified applicants equally regardless of gender, and to avoid prohibited personnel practices. Her failure to recognize this has caused me to question her judgment and character, resulting in a complete lack of confidence in her ability to deport herself with the professionalism and care required of her position.

Ms. Krepp has also demonstrated an unwillingness to be forthcoming to leadership or to accept responsibility for her actions. This is demonstrated by the numerous times she has refused to disclose important information when asked, such as who set up the briefing with Congresswoman ▮▮▮▮ office, her dishonest statements that she was coordinating with the NMDF and her attempt to cover up the fact that she failed to do so as instructed. Additionally, her failure to follow instructions is especially concerning. Following instructions is a basic expectation of any employee in the Federal service to ensure proper and efficient conduct of operations and to maintain working relationships with stakeholders and partners. Despite receiving clear instruction to provide her responses to me regarding the Deputy DAG certification by July 10, 2024, she failed to do so. Ms. Krepp did not request, nor did she receive an extension for submission of her response. To date, she still has not provided a response to my questions, as instructed on July 4, 2024. Ms. Krepp's misconduct detracts from my confidence in her ability to maintain appropriate conduct and follow instructions in the workplace.

Furthermore, in considering this factor, I note that Ms. Krepp's misconduct has the potential to cause current employees and prospective future applicants to lose trust in leadership's ability to make sound business decisions in the best interests of NHHC. Ms. Krepps misconduct has eradicated all trust I had in her ability to function as a supervisor, senior leader, and employee of this command. Additionally, I have no confidence that she will perform the duties of her position with the level of autonomy inherent in and required of her position. Her misconduct negatively impacts this command and the Federal service.

Lastly, even without regard as to whether or not it was intentional or inadvertent, I find that Ms. Krepp lacks the honesty, integrity and dependability that is required of her position. Her commission of the charged misconduct in the form of (1) unbecoming of a supervisor, (2) failure to follow instructions, and (3) lack of candor are serious offenses which strikes at the heart of the employer-employee relationship; thus, requiring a severe penalty. No organization can successfully operate without a reliable work force, nor can it achieve an efficient operation when an employee is untrustworthy. To be clear, any one of the three charges standing alone warrant Ms. Krepp's removal.

## FACTOR 2: Employee's Job Level and Type of Employment, including supervisory or fiduciary roles, contacts with the public, and prominence of the position.

☒ Aggravating      ☐ Mitigating      ☐ Neutral

**WRITTEN ANALYSIS:**

As a GS-15 Program Manager, Ms. Krepp holds a prominent position within the Command, with supervisory responsibilities and executive-level decision making authority. Her role and duties include but are not limited to leading the Director's Action Group, making high-level decisions, and influencing the strategic direction of the Command. The gravity of her misconduct is amplified by her position, as she is expected to set a standard of integrity, accountability, and professionalism for others to follow. Her actions not only reflect poorly on her own performance but also jeopardize the Command's reputation and the effectiveness of the programs under her supervision. Ms. Krepp's misconduct demonstrates a significant lack of judgment as a supervisor.

## FACTOR 3: Past Disciplinary Record, including past offenses related and unrelated to the employee's current misconduct.

☐ Aggravating     ☒ Mitigating     ☐ Neutral

**WRITTEN ANALYSIS:**

Ms. Krepp has no prior disciplinary actions on record, which I find to be a mitigating factor weighing in her favor. The absence of previous discipline indicates that this is her first documented violation; however, the nature of the misconduct (involving elements of deliberate dishonesty and an attempt to bypass established hiring principles) is so egregious that it overshadows her prior record and fails to outweigh the severity of her current offenses.

## FACTOR 4: Past Work Record

Past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability.

☐ Aggravating     ☒ Mitigating     ☐ Neutral

**WRITTEN ANALYSIS:**

I have placed substantial mitigating weight upon Ms. Krepps length of Federal service (Service Computation Date: 02/25/2010) and past acceptable performance history. However, her past performance cannot and does not excuse the serious lapses in judgment and integrity that have occurred. While her previous contributions to the Command are acknowledged, they do not outweigh the substantial impact of her current misconduct, resulting in harm to the Command's operations and integrity, nor do they outweigh the significance of the aggravating factors at issue here.

## FACTOR 5: Ability to Perform in the Future

Ability to perform in the future, including the effect of the offense on the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee to perform assigned tasks.

☒ Aggravating     ☐ Mitigating     ☐ Neutral

**WRITTEN ANALYSIS:**

I have lost all trust and confidence in Ms. Krepps ability to effectively perform the duties of her position due to the egregious nature of her misconduct and that it was repeated. Her ability to perform in the future is severely compromised by her demonstrated lack of integrity and accountability. Her refusal to adhere to merit system principles, her failure to follow instructions and repeated dishonesty regarding her coordination with the NMDF, and her lack of candor in setting up a meeting with a Congressperson's office indicate that she cannot be trusted to carry out her duties in an ethical and responsible manner. Her actions have eroded trust, not only between her and her superiors but also within the Command as a whole. As a result of her actions, Ms. Krepps was stripped of her role as a selection official for the recent hiring action, reflecting the serious breach of trust that occurred. Since her misconduct came to light, her job duties have been performed under increased supervisory oversight, further demonstrating the lack of confidence in her ability to operate independently. The recusal of her selection official role and responsibilities underscores the extent to which her ability to perform her duties has been compromised. Her ongoing lack of accountability and integrity in these critical areas makes it clear that she is no longer capable of performing her role effectively, even with additional supervision. Given the severity of her misconduct, she cannot be trusted to perform the duties of her position or any other position within the Command effectively.

## FACTOR 6: Consistency of Penalty

Consistency of the penalty with those imposed upon other employees for the same or similar offenses.

☐ Aggravating     ☐ Mitigating     ☒ Neutral

**WRITTEN ANALYSIS:**

There are no other employees in a comparable position within this command, with similar or like disciplinary records, who committed the same or similar offenses. For the reasons set forth above, both individually and cumulatively, and after full consideration of all relevant factors, I believe this proposed removal is the minimum action than can reasonably be expected to correct Ms. Krepp's misconduct and promote the efficiency of the service. To be very clear, one charge standing alone supports this proposed removal.

## FACTOR 7: Consistency With Table of Penalties

Consistency of penalty with any applicable agency table of penalties, including the charge most closely matching the current misconduct and the range of suggested penalties.

☒ Aggravating     ☐ Mitigating     ☐ Neutral

4

**WRITTEN ANALYSIS:**

Removal is consistent with both the Department of the Navy's[1] table of penalties for the first offense of misconduct, which ranges from a reprimand to removal for similar or like offenses. Specifically, similar offenses include misconduct in the form of "discrimination against an employee or applicant based on sex", "notoriously disgraceful conduct", "failure in carrying out any instruction", and "attempted or actual misstatement or concealment of material fact" where the recommended penalties range from reprimand to removal for a first offense of misconduct.

Furthermore, I note that the Department of the Navy's Table of Penalties serves to provide a general framework within which supervisors may exercise sound judgment in dealing with particular circumstances recommended penalties. It does not, however, replace supervisory judgment or require specific penalties. While the penalty of removal exceeds the minimum recommended remedy for a first offense, a more severe penalty is warranted due to seriousness of the misconduct and all of the aggravating factors at issue. I have no expectation that a lesser penalty than removal would be effective or appropriate to correct the misconduct and rehabilitate her.

## FACTOR 8: Notoriety and Impact

The notoriety of the offense or its impact upon the reputation of the agency, including the publicity surrounding the misconduct and coworker ability to continue working with the employee.

☒ Aggravating      ☐ Mitigating      ☐ Neutral

**WRITTEN ANALYSIS:**

Ms. Krepps' misconduct has had a significant and negative impact on the Command, both internally and externally, making this factor strongly aggravating. Her actions in attempting to bypass merit system principles during a hiring action were so severe that the Office of Civilian Human Resources (OCHR) had to interject itself to ensure compliance with federal hiring regulations. This external intervention not only highlights the seriousness of her misconduct but also brought unwelcome scrutiny to the Command, potentially damaging its reputation.

Moreover, Ms. Krepps' failure to coordinate with the Naval Museum Development Foundation (NMDF) and her subsequent attempt to cover up this failure by asking an NMDF employee to lie on her behalf have caused a strain in the partnership with NMDF. This relationship is critical to the Command's mission, and her actions have jeopardized the trust and cooperation that are essential to successful collaboration. The negative impact on this partnership has likely damaged the Command's standing with external stakeholders and could have long-lasting repercussions on future projects and funding opportunities.

---

[1] The Department of the Navy's table of penalties is located within the SECNAV 12752.1A.

Given the widespread notoriety of her actions and the tangible negative impact on both internal operations and external relationships, it is clear that Ms. Krepps' misconduct has had a far-reaching and detrimental effect on the Command.  This further supports the conclusion that her removal is warranted.

## FACTOR 9: Clarity of Notice

The clarity with which the employee was on notice of any rules that were violated in committing the offense or was warned about the conduct in question.

☒ Aggravating       ☐ Mitigating       ☐ Neutral

**WRITTEN ANALYSIS:**

Ms. Krepp should know behavior and conduct such as what she displayed falls outside of acceptable conduct. She was clearly informed of her responsibilities and the expectations for her conduct in her role as a Program Manager. She was repeatedly advised against bypassing merit system principles, of which she completed no less than nine (9) relevant training courses between August 2022 to present.  Additionally, Ms. Krepp was clearly instructed to coordinate with the NMDF to solicit funding from Congress for the construction of a new Naval History Museum. Despite these clear directives, she disregarded them, demonstrating a willful disregard for her obligations and positions duties. The clarity of notice provided to Ms. Krepp underscores the intentional nature of her misconduct.  Thus, I find that Ms. Krepp knew or should have known that her misconduct was unacceptable and could result in her removal from Federal service.

## FACTOR 10: Potential for Rehabilitation

Potential for rehabilitation, including whether the employee shows remorse, takes responsibility and reports the misconduct, has a pattern of behavior versus isolated incidents, responded to prior discipline, and has sought treatment for related medical conditions or other personal problems.

☒ Aggravating       ☐ Mitigating       ☐ Neutral

**WRITTEN ANALYSIS:**

I find no potential for Ms. Krepp's rehabilitation.  Her actions after the fact, including her lack of remorse for refusing to hire qualified men and her continued dishonesty regarding her coordination with the NMDF, indicate that she does not fully grasp the seriousness of her misconduct.  Per references (o) and (p) of the Notice of Proposed Removal, Ms. Krepps statement during the Principles Meeting and her conversation with the newly appointed hiring manager demonstrate a lack of accountability and an unwillingness to acknowledge her errors. This lack of remorse and accountability demonstrates the unlikelihood of any successful

rehabilitation. Thus, I have made the determination that Ms. Krepps continued presence may result in the disruption of operations which would jeopardize legitimate government interests during the course of the notice period and have placed her in on administrative notice leave.

## ACTOR 11: Mitigating Circumstances

Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, and bad faith, malice, or provocation on the part of others involved in the matter.

☐ Aggravating        ☐ Mitigating        ☒ Neutral

**WRITTEN ANALYSIS:**

As I'm aware of no mitigating circumstances surrounding the offense which are ripe for my consideration under this factor.

## FACTOR 12: Availability of Alternate Sanctions

The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

☒ Aggravating        ☐ Mitigating        ☐ Neutral

**WRITTEN ANALYSIS:**

I have considered lesser disciplinary actions (a letter of reprimand, suspension, counseling, etc.) but find no alternative sanction to be an appropriate or viable alternative sanction that would rehabilitate her and deter future misconduct given the seriousness of the offense. Ms. Krepp's actions have caused significant harm to the Command's operations and integrity, and her continued employment would pose a risk to the Command's mission. The proposed removal is the only sanction that adequately addresses the severity of her misconduct and promote the efficiency of the service. Consequently, I have determined that there are no alternative sanctions that would rehabilitate Ms. Krepp and deter future misconduct.


**CERTIFICATION: I hereby certify that I have considered the applicable twelve (12) Douglas factors, as indicated above, in making my penalty determination.**

**PROPOSING OFFICIAL'S (PO) SIGNATURE**

7

# Exhibit (E)

# M N B  M E R I D I A N  L A W ,  L t d .

### ATTORNEYS AND COUNSELLORS-AT-LAW

PHILADELPHIA, PA • WASHINGTON, D.C. • ALEXANDRIA, VA

ONE LIBERTY PLACE
1650 MARKET STREET, SUITE 3600
PHILADELPHIA, PENNSYLVANIA 19103

MAIN: (215) 268-3003 • FACSIMILE: (267) 392-2024 • INTERNET: WWW.MNBMERIDIANLAW.COM

CHRISTOPHER NUNEVILLER ^
M. CHARLOTTE MAHONEY +

PARTNERS

+ ADMITTED IN NORTH CAROLINA
^ ADMITTED IN PENNSYLVANIA
* ADMITTED IN VIRGINIA
# ADMITTED IN THE DISTRICT OF COLUMBIA
† ADMITTED IN GEORGIA
※ ADMITTED IN ARKANSAS

MARTHA FOSS †※
DEREK (DIRK) MAURER *
NAOYO MORI, PhD #
DARA PALESKI #

OF COUNSEL

Reply to:
CHRISTOPHER NUNEVILLER
DIRECT: (215) 367-3761
EMAIL: CNUNEVILLER@MNBMERIDIAN.COM

September 26, 2024

███████ (ADCNO PMT/N1B)
Office of the Chief of Naval Operations
2000 Navy Pentagon
Washington, D.C. 20350-2000

Ref(s): (1) EEO Docket No.: DON 24-68323-00706

Re:     RESPONSE to Notice of Proposed Dismissal of K. Denise Rucker Krepp

Dear ███████ :

By and through her undersigned counsel, Kathryn Denise Rucker Krepp, Director, Director's Actions Group ("DAG") provides the following in response to the Naval History and Heritage Command's ("NHHC") September 9, 2024 REVISED Notice of Proposed Dismissal (the "Notice"), issued by the NHHC Deputy Director, Patrick Burns. We thank you for you gracious extension of time, and to taking on this important responsibility and regret that it is even necessary.

### THE NHHC OPERATING ENVIRONMENT

You should be aware that Ms. Krepp strongly believes, and the evidence suggests that this Notice of Proposed Removal recommended by Patrick Burns is a retaliatory act responding to Ms. Krepp's attempts to hold the NHHC leadership accountable for its misogynistic dysfunctional leadership that routinely fails to clearly communicate and articulate its expectations, strategy, and retaliates against and harasses staff.

Ms. Krepp also asserts that the Notice of Proposed Removal recommended by Patrick Burns is retaliation for Ms. Krepp filing a consolidated Equal Employment Opportunity ("EEO") Complaint

M N B  M e r i d i a n  L a w ,  L t d .

against Mr. Burns and Mr. Cox for:  (1) retaliation for speaking with Congress and DHS IG about sexual assaults in the US Coast Guard, and (2) gender discrimination and retaliation for reporting gender discrimination, both of which have been accepted for investigation by the Office of the Chief of Naval Operations ("CNO") (EEO Docket No.:  DON 24-68323-00706 ).  Mr. Burns and Mr. Cox's actions are a clear violation of the No FEAR Act (107 Pub. L. 174) and other statutes, regulations, and Navy and Department of Defense policies.

The harassment and dysfunction at NHHC is such that many of its staff operate ineffectively, inefficiently, and seek new employment because they are constantly watching their backs for fear of harassment and retaliation.  (*see generally* the NHHC 2023 DECOS Report at Enclosure (A) at pp. 99 to 133)  Much of Ms. Krepp's alleged conduct must be viewed as a leadership failure of Messrs. Samuel Cox and Patrick Burns as well as the senior (white male) staff[1] in that they collectively fail to effectively communicate, and develop and promote a cohesive leadership team rather than their true concern with ceremony, empire building, self-preservation, and maintaining the "good old boy network."

NHHC is replete with examples of dysfunction, self-preservation, unfairness, and inefficient operations.  We note that one or more cases of assault have gone unreported and uninvestigated.  (*see* Enclosure (A) at p. 104)  Blatant public harassment is condoned.  Cronyism is rampant (*see* Enclosure (A) at p. 19, 91 to 95)  There is a consistent pattern of organizational defiance as a means to an end.[2]  (*see* Enclosure (A) at p. 90)  Unethical conduct in budgeting, nepotism, and the acceptance of excessive gifts is an overarching perception of the NHHC staff.  (*see* Enclosure (1) at pp. 86 to 90, 92, *and generally* the NHHC 2023 DECOS Report)

We note with interest OPM's guidance on <u>*Managing Federal Employees Performance Issues or Misconduct*</u>[3] suggests that to avoid that toxicity, leadership should provide positive performance support to avoid conduct issues including providing regular feedback on performance, setting the example, and maintaining a good working atmosphere, among others.  These are all qualities missing in NHHC.  For example, Mr. Burns never provided Ms. Krepp with 2024 mid-year feedback.  He had not yet provided Ms. Krepp with 2024 end of year feedback, and finalized her 2024 review stating that Ms. Krepp "refused to sign" which she did not.  (*see* Enclosure (A) at p. 134)  On more than one occasion, in what Ms. Krepp believed was going to be performance feedback Mr. Burns simply called Ms. Krepp into his office to have hours long rambling talkfests replete with negative statements about other NHHC employees that ended with Mr. Burns thanking Ms. Krepp for the therapy sessions.

Given the operating environment in which Ms. Krepp and the NHHC staff operate, Mr. Burns protestations that "*Ms. Krepp's misconduct has the potential to cause current employees and prospective future applicants to lose trust in leadership's ability to make sound business decisions ...*" is laughable and demonstrates yet again how the NHHC leaders lack basic leadership skills.  The enclosures and

---

[1]  The NHHC senior staff is comprised of Rear Admiral Samuel Cox USN (Ret) (Director, NHHC), Patrick Burns (Deputy Director, NHHC), Ms. Krepp, an African American female, and several other Caucasian males, all but one are retired Navy officers.

[2]  We note the recent NHHC driven constructive termination of the USNA and Naval War College Museum directors.

[3]  *See* https://www.opm.gov/policy-data-oversight/employee-relations/reference-materials/managing-federal-employees-performance-issues-or-misconduct.pdf

MNB Meridian Law, Ltd.

statements provided to support Ms. Krepp's response directly challenge Mr. Burns's biased, self-serving notions that Ms. Krepp is apparently the *sole* reason "current employees and prospective future applicants [will] lose trust" in NHHC (*see* Notice Enclosure (1) Factor 1, and *generally* Enclosure (B)). Mr. Burns cannot lay blame for NHHC leadership failures in Ms. Krepp's lap. His allegations only mask NHHC's dysfunction, and that lies squarely at Messrs. Cox and Burns's feet.

### RESPONSE TO NOTICE OF PROPOSED REMOVAL

The operating environment and the character of the allegations being established, and despite the allegations of "conduct unbecoming," "failure to follow instructions," and "lack of candor," Ms. Krepp's alleged conduct does not rise to a level that requires, or even suggest that dismissal is an appropriate remedy. Despite Mr. Burns's hollow factual support, none of Ms. Krepp's conduct, as alleged, rise to or have had a direct measurable impact on the "efficiency of the service," or more specifically NHHC. Furthermore, and very importantly, the documents provided in Enclosures (b) to (p) to the Notice are MFR's unsupported Mr. Burns fails to provide dates and supporting factual documents, *e.g.,* emails, MFRs, etc., or establish the standard by which Ms. Krepp's performance was measured.   in order to justify his conclusion that her conduct was so egregious that only dismissal after 18 and ½ years of federal government service, including military service to our country, is the appropriate remedy.

None of Ms. Krepp's alleged conduct involved excessive unauthorized absences, discrimination, retaliation, harassment, involve drugs or alcohol, gambling, criminal or notoriously disgraceful conduct to colleagues or the public, a failure or delay in executing a work assignment, discourteous conduct, falsification or concealment of official records, false statements, or threatening subordinates, colleagues, or superiors, misuse of government property, endangering the lives of others or property, or even disclosing protected material or HIPAA data. (*see* SECNAVINST 12752.1A, Enclosure (3) pp. 7 to 15, *dtd* 3 May 2016)  In fact, there is no derogative information in her official personnel record. There is no negative counseling. There are no reprimands. There are no suspensions. There is nothing but lauded performance in each of her performance evaluations for the entire period of her service at NHHC. Even the aggrieved 2024 evaluation contains laudatory language, and certainly nothing singularly negative or a pattern of conduct that would warrant immediate dismissal.

We also note that Mr. Burns's <u>*Douglas*</u> Factors analysis is superficial, at best. Solely because he wrote words that when combined together make Ms. Krepp sound as if she is the sole reason NHHC's reputation is being irreparably harmed, does not, <u>*in fact*</u>, make those words the truth of the matter. Mr. Burns' fallacious and contrived Douglas Factors analysis only buttresses Ms. Krepp's retaliation claims for her prior EEO complaints.

### <u>Charge 1:  Conduct Unbecoming a Supervisor</u>.

<u>Specification (a) Allegation</u>:  Mr. Burns alleges that Ms. Krepp "*attempted to exclude qualified candidates from consideration for the position based on gender and attempted to grant an advantage to future female applicants ...*"  Mr. Burns further alleges that Ms. Krepp "*created the appearance of, and subsequently admitted to, excluding qualified candidates from consideration for a subordinate position*

M N B  M E R I D I A N  L A W ,  L T D .

*within our purview on the basis of gender [and] permitted personal preference to negatively influence her judgment as the designated selecting official for this hiring action.*"  He also alleges Ms. Krepp "*directly and adversely impacted the hiring and recruitment process for the Program Analyst position.*"  (*see* Notice Enclosure (1) Factor 1)  These allegations fail to establish the standard by which Ms. Krepp's conduct is being measured, nor does Mr. Burns provide substantive documentary evidence but for months post incident MFR's created solely to support this Notice.

**Bottom Line Up Front** ("BLUF:):  Ms. Krepp *did not* attempt to exclude qualified candidates from consideration based on gender.  She *did not* attempt to grant and advantage to future female applicants.  She *did ask questions* to understand the applicant pool.  Ms. Krepp *did seek guidance* from the Office of Navy Civilian Human Resources ("ONHCR") as to how to expand the applicant pool appropriately and lawfully.  *ONHCR chose not* to guide her and provide lawful options as to how correct her position announcement, or that there were lawful options to object to or pass over candidates.  Mr. Burns, despite knowledge that Ms. Krepp hired a man in the spring for the position, deliberately *jumped to an oppositional conclusion* to ensure that his former commanding officer (Stephen Hill), would obtain the job, which Mr. Burns ultimately accomplished.

Mr. Burns fails to provide the complete story and facts, nor does he provide the legal standard and policy support by which to measure that Ms. Krepp's alleged conduct was, *in fact*, unbecoming a supervisor.  Despite the allegation and inference that Ms. Krepp was solely responsible for the announcement and selection process, she had no control over the content, the announcement, or the selection process.  Her position in both selection rounds was that of the selection committee "chair."  Her questions regarding the applicant certification in the second round (RPA 917488), were valid ones.  Her questions had answers that both ONHCR and Mr. Burns chose not to share with her.

February 2024 RPA 818020 Announcement (the "RPA 818020 Announcement").  Ms. Krepp was designated by NHHC as the hiring official for the Deputy Director, Director's Action Group position.  It is clear from the February 2024 email traffic that ONHCR, but for MS. Krepp confirming the requirements of position description(s) (PD H426A and H426B), was in complete control of the announcement.  ONHCR informed Ms. Krepp the position was to be a term appointment to ensure a former employee could not use her return rights, and that the announcement would only be open for 7 days versus the 10 days Ms. Krepp requested.  ONHCR lastly changed the classification to a Delegating Examined ("DE") position ("*We're going to have to change it to DE, and include in the announcement that it is an obligated position*"), without telling Ms. Krepp the legal implications.  (*see* Enclosure (A) at pp. 1 to 4, 11 to 17)

The RPA 818020 Announcement resulted in four certified applicants:  two men and two women.  They were interviewed by the panel (Ms. Krepp, Dr. ▮▮▮▮▮▮▮, and Ms. ▮▮▮▮▮▮▮) on March 28, 2024.  The two female applicants were determined by the panel to be unsuitable for the position.  The third candidate, Mr. ▮▮▮▮▮:

*"had showed promise on his resume.  However, two things emerged during the interview that made us not want to select him as the first choice:  1) Although we asked Mr. ▮ the same questions as we did the others, his answers were quite short, and conveyed little useful information. Frequently*

4

*his response was "I can do that" or "I've done that before" with no further comment. I remember at one point I rephrased a question to see if we could illicit a broader response, but that did not happen. 2) This might sound to some as unimportant: When the interview finished, Mr. ▮▮ immediately stood up and shook my hand. However,  he did not do so with the others on the hiring panel, including Ms. Krepp who was leading the hiring and whom he would be working for. Then he quickly left the room. I do not want to imply anything to his actions, but it is fair to say it did not leave a very good impression. (see* Enclosure (B))

The *panel* chose not to select Mr. ▮▮  The fourth candidate, ▮▮▮▮▮▮, a retired U.S. Marine Corps officer was *selected by the panel* and offered the position.  He, however, declined the position for personal reasons on May 3, 2024.  (*see* Enclosure (A) pp. 5 to 10)

June 2024 RPA 917488 Announcement.  In June 2024, ONHCR published a second announcement substantially similar to the RPA 818020 (the "RPA 917488 Announcement").  Again, Ms. Krepp had no control over the announcement:

"*I have just sent out the review for the announcement on USA Staffing. I ask that you please review the announcement and let me know if you want to make minor word changes to Specialized Experience. Please ensure that you concur with the listed Responsibilities and Requirements for your review. Please let me know if you wish to make changes on these items. Once returned, I will open the job announcement in USA Jobs. In order to maintain timeliness please return the review by 7 June 2024. requests for the announcement.*"  (*see* Enclosure (A) pp. 11-12)

She made two requests:  "*Two changes.  First, the  announcement should be open for two weeks.  Second, the job should be open to all current federal employees.*" ONHCR rejected the requests:  "*Policy is to start with a 5 day open period. I will be monitoring the announcement and will not let it close without a sufficient amount of applicants. Announcements can be extended up to 14 total days.  All current federal employees can apply to this position. Since this is a DE recruitment it is open to all U.S. citizens.*")  (*see* Enclosure (A) pp. 11-13)

On June 12, 2024, Mr. ▮▮ on his own volition and authority, without revealing the number in the then-current applicant pool, and without Ms. Krepp's knowledge or concurrence, extended the announcement until June 14, 2024 "*to gather more applicants.*"  Mr. ▮▮ later told Ms. Krepp that as of June 12th "*We currently have 47 applicants. 25 of them have completed the USA Hire assessment.*"  On June 25th Mr. ▮▮ issued the certificates:  "*I just issued the certificates for this position. These certificates contain applicants with veteran's preference. Since this is a DE recruitment, applicants with veteran's preference must be selected or decline the position before we can review non-vet applicants.*"  (emphasis added) (*see* Enclosure (A) p. 16)  That is not a correct statement given the Delegated Examining regulations discussed below.

Ms. Krepp was concerned that given 47 applicants, only four individuals were considered qualified, and apparently only due to their veterans preference.  Ms. Krepp reviewed their resumes, and found the four individuals did not have the qualifications required for the position.  Given the information provided, Ms. Krepp wanted to cancel the advertisement with the intent of finding ways to expand the

M N B  M E R I D I A N  L A W,  L T D.

qualified pool, not just for women but all qualified candidates. However, ONCHR and Mr. Burns saw her lack of cooperation with "the system" as a deliberate act of subterfuge. Ms. Krepp's actions clearly were not of a magnitude that her questions and concerns "*created the appearance of, and subsequently admitted to, excluding qualified applicants from consideration for a subordinate position within her preview (sic) on the basis of gender*." (*see* Notice Enclosure (1), Factor 1).

What is abundantly clear from this allegation is that Mr. Burns and ONCHR chose to frustrate this process. Mr. Burns and ONCHR could have, but affirmatively chose not to provide an explanation or options to determine the hiring authorities for or even just discuss the position. Options for objecting to or passing over candidates are clearly available pursuant OPM and ONCHR's operating guidelines.[4] Ms. Krepp's *only concern* was ensuring the pool of purported four qualified candidates were the total pool of qualified candidates.

*In fact*, Ms. Krepp followed the letter and spirit of the Navy's hiring process in all aspects – as she understood it, not having been provided instruction or guidance on the terms of *this* specific recruitment. Ms. Krepp was concerned, as she clearly noted, that at least 47 applicants submitted their names for consideration, but apparently only male veterans "were qualified" (two of which were NHHC cronies), as discussed below. Despite the allegations, Ms. Krepp sought to better understand the applicant pool and the reasoning behind only 4 individuals being considered "qualified."

None of ONHCR's ███████████, ██████████, nor ████████████ provided guidance or the list of applicants for the position, or the scoring for each of the "certified" applicants. In other words, no one was checking ONHCR's work and not inadvertently (or deliberately) passing over otherwise qualified candidates.

Mr. Burns supports his allegations with specious statements, including "*it was the job of the Office of Civilian Human Resources ("OCHR") job to screen the applicants to ensure they are qualified and to send you the most qualified applicants to choose from and that if any were Veterans you would have to justify why you chose not to hire them.*"[5] Mr. Burns directed Ms. Krepp "*to meet with Charmaine Graves, Human Capital Officer, to review what the rules were regarding not hiring an applicant from the certificates* [she was] *given.*" However, Ms. ████ did not provide a review of the rules, she merely stated "*you have to at least interview them.*" (*see* Notice Enclosure (h))

Mr. Burns further states that "*Mr.* ████ *explained the delegated examining, OPM, and Veteran's Preference rules/procedures to you.*" Mr. ████ did not provide that information. Mr. ████ ████ Mr. ████ supervisor, was the individual who provided incomplete guidance: "*This was a DE recruitment open to all US Citizens which follows delegated examining rules and regulations outlined in law. Veterans are granted preference in DE recruitments and they must be exhausted before you are able to see any nonveterans. This does not take into account whether a veteran is a male or female. We would*

---

[4] *see* The Office of Personnel Management ("OPM") Delegated Examining Operations Handbook (the "DE Handbook") (*dated* June 2019)

[5] Obviously, Mr. Burns was familiar with the DE requirements, but chose not to provide or explain to those matters.

MNB Meridian Law, Ltd.

*never be able to screen for that in a DE recruitment.*" (*see* Enclosure (A) at p. 14).[6]  Mr. ███ did not explain the "DE process" and chose not to inform Ms. Krepp of her ability to object and pass-over candidates, or the assessment criteria, rankings, and scoring of all 47 candidates. (*see* DE Handbook p. 6-12) Options that had Ms. Krepp been provided and understood would have impacted her decisions and conclusions.

The Office of Personnel Management ("OPM") Delegated Examining Operations Handbook (the "DE Handbook") (*dated* June 2019) requires OCHR to rate the applicants based on, at a minimum, (a) factors required for the successful performance of the position, and (b) the qualifications needed at the time of entry on duty. (*see* DE Handbook, p. 5-2, *and generally* Chapter 6 (pp. 6-1 to 6-50)  Given Ms. Krepp's concern about the pool of qualified candidates, ONHCR, or Mr. Burns, could have provided the quality ranking factors and the resulting scores in order for Ms. Krepp to determine whether the advertised position was identifying qualified candidates, *e.g.,* providing expanded list of preference ranked eligible candidates, and not limited the certification to a maximum of three. (*see* DE Handbook p. 5-4)  Mr. Dunwell was correct in his conclusion that "*Veterans are granted preference in DE recruitments and they must be exhausted before you are able to see any nonveterans.*"  But he did not provide complete information.

The DE Handbook provides that Ms. Krepp had the authority, or at least the ability, to object to a certified eligible candidate based "proper and adequate reasons," *e.g.*, education, experience, personal characteristics, among others. (*see* DE Handbook p. 6-35)   Ms. Krepp also had the option to pass over a preference eligible candidate when the selecting official identifies "reasons that are sufficient to warrant the pass-over." (*see* 5 U.S.C. § 3318, and DE Handbook p. 6-40)  Furthermore, there is no prohibition from ONHCR from sharing the complete list of candidates and providing the scoring and ranking for each candidate.  Again, Ms. Krepp was not provided with this guidance to allow her to better understand the pool of 47 applicants or her options with regard to the position advertisement and the "certified" candidates.  This conversation left Ms. Krepp wondering why interviews were even held as Mr. Burns clearly had a candidate in mind.

The "Crony" Hire."  Ms. Krepp became concerned ONCHR was manipulating the second applicant certification when Ms. ███ told Ms. Krepp that Mr. ███, a former NHHC employee, was on the hiring certificate.  Ms. Krepp responded that Mr. ███ friendship with Mr. Burns was not a reason to keep a certification open that included no qualified candidates.  Ms. Krepp's concerns grew further still when Ms. ███, whom Mr. Burns tasked with being the RPA 917488 interview panel chairperson, shared that Mr. ███ was calling her cell to talk about the interview. Clearly, Mr. ███ should not have had Ms. Chattman's cell number, and she should not have been communicating with him outside of the formal interview process.  (*see* Enclosure (A) at p. 96 to 100)

Additionally, Ms. Krepp's concerns about Mr. Burns's manipulation of the candidate certification proved prescient when Ms. ███ shared that Mr. ███ Mr. Burns's former commanding officer, a current NHHC employee, and a rehired annuitant, had been ***selected by Mr. Burns*** once Mr. Burns relieved Ms. Krepp as the Selecting Official and withheld the selection authority for the position to

---

[6]  We noted that Mr. Burns did not provide, as Mr. Magee indicated, "the email chain resulting from that phone conversation."  (*see* Notice Enclosure (i))

MNB MERIDIAN LAW, LTD.

himself. Despite his lack of qualifications (*see* Notice Enclosure (1) Reference (m), and Enclosure (A) at pp. 18, 89) It is also interesting to know that Mr. ▇ had been sharing with colleagues as early as mid-July that he had been selected for the position. A position that he was not formally offered until September 19, 2024. (*see* Enclosure (A) at p. 18) Hearing of Mr. ▇ claims, Ms. Krepp sought clarification from Mr. Burns prior to the Labor Day weekend. Mr. Burns never responded.

Mr. Burns's conclusion that Ms. Krepp "[lacks] *remorse for refusing to hire qualified men*" ignores reality, and does not fully appreciate the entirety of the facts – facts that Mr. Burns refuses to acknowledge. These comments continue a pattern by Mr. Burns of lying to fulfill his goal of padding NHHC senior leadership positions with unqualified misogynistic men. (*see* Enclosure (A) at p. 98)

Specification (b) Allegation:[7] Mr. Burns alleges that Ms. Krepp requested Ms. ▇, Principle (*sic*) at the Navy Museum Development Fund ("NMDF"), to "*state, if asked, that* [Ms. Krepp] *had helped and been engaged with the effort*," *e.g.*, arranging Congressional meetings with Committee staffers in coordination with NMDF, further alleging that Ms. Krepp had lied about her interactions with NDMF; and thereby lying about her work with NMDF. Mr. Burns also alleges, without support, that "*Ms. Krepp was clearly instructed to coordinate with the NMDF to solicit funding from Congress for the construction of a new Naval History Museum. Despite these clear directives, she disregarded them, demonstrating a willful disregard for her obligations and positions duties.*" These allegations fail to establish the standard by which Ms. Krepp's conduct is being measured, nor does Mr. Burns provide substantive documentary evidence but for months post incident MFR's created solely to support this Notice.

**BLUF**: Ms. Krepp did not ask Ms. ▇ to lie, nor did Ms. Krepp imply that Ms. ▇ should confirm that "[Ms. Krepp should] *state, if asked, that she had indeed helped with the effort*." The totality of Ms. ▇ statement is that she agreed that Ms. Krepp was not involved in Congressional outreach. That was the exclusive dominion of NMDF, her, and Mr. Burns. Without other proof, Mr. Burns took Ms. ▇ very specific language and maliciously twisted it to infer that Ms. Krepp attempted to hide something nefarious: she failed to do a job that was not hers to perform and from which she was explicitly and deliberately excluded.

In order to facilitate greater communication, NMDF opened a small office in NHHC staffed daily by ▇ Ms. Krepp regularly visited with Mr. ▇ and frequently spoke Ms. ▇ over the phone on NMDF matters, focusing mainly on the land exchange agreement. Insofar as Ms. Krepp was the only congressional staff veteran, she frequently offered guidance to them on how to work with Congress. She also recommended many times NMDF retain a registered lobbyist to help NMDF with their congressional engagement.

---

[7] Title 5 U.S.C. § 7103(a) (10) defines "supervisor" as "*an individual employed by an agency having authority in the interest of the agency to hire, direct, assign, promote, reward, transfer, furlough, layoff, recall, suspend, discipline, or remove employees, to adjust their grievances, or to effectively recommend such action, if the exercise of the authority is not merely routine or clerical in nature but requires the consistent exercise of independent judgment, except that, with respect to any unit which includes firefighters or nurses, the term "supervisor" includes only those individuals who devote a preponderance of their employment time to exercising such authority;*"

MNB Meridian Law, Ltd.

At no time during these conversations did Mr. ███ or Ms. ███ share the details of the meetings that NMDF planned or had had with Congressional appropriators. Neither shared that NMDF had drafted legislation that was shared with Congress, but for being copied on email traffic. (*see* Enclosure (A) at pp. 37 to 51). Neither gave Ms. Krepp real time updates on the NMDF meetings. Given the frequency of the conversations, if there was a communications concern between NMDF and NHHC, NMDF was the source as they were not sharing its congressional engagement strategy with Ms. Krepp – apparently only Messrs. Cox and Burns. It is also entirely possible, given the lobbying restrictions on federal employee, NMDF excluded Ms. Krepp to ensure that she and NHHC were not ethically compromised. However, given Messrs. Cox and Burns's active participation in NMDF's conversations with members of Congress, any ethical considerations would have been for naught.

We also note that Ms. Krepp regularly attended Campus Program Office meetings in the spring of 2024. Engagement with appropriations committees was not on the agenda. NHHC was focused on obtaining the land and NHHC leaders briefed the House and Senate Armed Service Committees to provide a status on the land deal. As the "scheduler," Ms. Krepp, working with OLA, set up the briefings. While, Ms. Krepp is the only NHHC employee who served as permanent staff on a Congressional committee, neither Messrs. Cox or Burns sought her advice or participation, nor did they back brief her on the outcomes or due outs from the meetings.

We also note with great interest, and as is amply documented, Ms. Krepp was specifically and routinely excluded by NHHC from all Congressional planning and strategy meetings. In fact, Mr. Burns goes to great lengths to ensure he was (and is) the primary NHHC point of contact in meetings with Members of Congress. Ms. Kaye was very specific as to Mr. Burns's involvement: "*It is important to clarify that the only NHHC member who has made calls, attended meetings, or contributed to the strategy regarding the US Congressional effort has been Pat Burns.*" (*see* Notice Enclosure (l) and Enclosure (A) p. 24))

We also highlight Mr. Burns's grandiose declarations that Ms. Krepp is the sole strain on the relationship between NHHC and NMDF. Ms. Krepp's conduct did not, cannot and does not have a "*negative impact on this partnership has likely damaged the Command's standing with external stakeholders and could have long-lasting repercussions on future projects and funding opportunities*." On the contrary, it is NHHC's well known leadership dysfunction NHHC due to a failure to effectively communicate, and a leadership team concerned more with ceremony, empire building, self-preservation, and maintaining the naval "good old boy network." (*see* Enclosure (A) at pp. 87 – 89, 137, 138, and *generally at* Enclosure B))

Throughout her tenure at NHHC, Ms. Krepp has been nothing more than a scheduler w/r/t Congressional engagement. Ms. Krepp went to great lengths to be included in conversations, but she was frequently, if not always, excluded. Mr. Burns appears to have had a close working relationship with Ms. ███ and they worked together so closely on congressional engagement, that Mr. Burns (and to a lesser but significant extent Mr. Cox) would be the NHHC face to Congress. Thus, any allegation of "Conduct Unbecoming a Supervisor," lays squarely at Mr. Burns's feet.

M N B  M e r i d i a n  L a w, Ltd.

**Charge 2:  Failure to Follow Instructions**

Specification (a):  Mr. Burns alleges that he asked Ms. Krepp questions about the RPA 917488
certification and that she failed to provide the answers to his questions by an arbitrary deadline.  Mr.
Burns constructively alleges that Ms. Krepp was insubordinate by asking to meet with him to clarify the
questions and answers, and to express her concerns about the hiring.  A meeting that he cancelled to avoid
the conversation.  These allegations fail to establish a standard by which Ms. Krepp's conduct is being
measured, nor does Mr. Burns provide substantive documentary evidence but for post incident MFR's
created solely to support this Notice.

**BLUF**:  Ms. Krepp had valid concerns and legitimate questions about the RPA 917488 Announcement.
She sought an in person meeting to more fully explain her concerns and address his July 4th questions.
Ms. Krepp was not insubordinate.  She was clarifying "commander's intent."  Had ONHCR been
forthcoming and proactive providing information about the announcement, the DE process, and
certification pool by ONHCR, Ms. Krepp would have adjusted her position.  Had Mr. Burns met with Ms.
Krepp, instead of cancelling her July 11 meeting request and subsequently declining all in person
meetings, Ms. Krepp could have conveyed that information to Mr. Burns.  Again, Mr. Burns's
dysfunction is improperly laid at Ms. Krepp's feet.

As was amply discussed in Charge 1, Specification (a), the Deputy, DAG position announcement
was fraught with miscommunication and a lack of candor and openness on the part of ONHCR and Mr.
Burns.  Mr. Burns requested, on July 4th, that Mr. Krepp answer questions regarding the second position
announcement, and demanded answers by July 10th.  That Mr. Burns believes that Ms. Krepp's July 5th
request to meet with him on July 11th (his first availability on his return from vacation), was a deliberate
act of insubordination, is laughable.  (*see* Enclosure (A) at p. 38)

Again, Ms. Krepp had no control over the announcement:  not the number of days the
announcement would be open, the pool from which the applicants could apply, or insight into the list of
applicants.  Ms. Krepp was told she could not see the list of 47 applicants.  She was not told there were
options to object or pass over candidates with sufficient justification.  Mr. Burns solely focuses on Ms.
Krepp's concern there were no qualified and certified women in the pool of more than 50 total candidates
in the February and June announcements.  Mr. Burns takes this concern as a *fait accompli* that Ms. Krepp,
*in fact and action*, violated statute, regulation, and policy just because she asked questions to better
understand the applicant pool.  (*see* Enclosure (A) pp. 11-13)

Mr. Burns claims that Ms. Krepp's (alleged) attempt to "*bypass merit system principles during a
hiring action were so severe that the Office of Civilian Human Resources (OCHR) had to interject itself
to ensure compliance with federal hiring regulations. This external intervention not only highlights the
seriousness of her misconduct but also brought unwelcome scrutiny to the Command, potentially
damaging its reputation*."  (*see* Notice Enclosure (1) Factor 8)  None of Ms. Krepp's actions were so
"severe" that ONHCR "*had to interject itself to ensure compliance with federal hiring regulations.*"  Once
again, Ms. Krepp was asking questions.  The email traffic is clear.  No selections were made.  No hiring
decisions were made.  No statute, regulation, or policy was violated.  Asking questions, or as Mr. Burns

M N B  M E R I D I A N  L A W,  L T D.

describes it "*external intervention*" does NOT bring "*unwelcome scrutiny to the Command, potentially damaging its reputation*." Asking questions should be encouraged and answering them should be what people do who are actually doing their job.

Specification (b): Mr. Burns alleges that Ms. Krepp was insubordinate insofar as he states she was instructed to setup briefings with the Senate and House of Representatives committees in an attempt to lobby the committees to establish funding for the NMDF, and failed to answer his questions truthfully. These allegations fail to establish the standard by which Ms. Krepp's conduct is being measured.

**BLUF**: Congressional engagement was not Ms. Krepp's responsibility, and she expressed concerns regarding "lobbying" for funding of a non-governmental entity – a concern that Mr. Burns has as late as May 7, 2024. Ms. Kaye was very specific in her statement regarding NDMF: "*it has been my responsibility to implement and manage the Congressional strategy for funding with the assistance of board member Admiral Mark Montgomery* [and] *It is important to clarify that the only NHHC member who has made calls, attended meetings, or contributed to the strategy regarding the US Congressional effort has been Pat Burns*."

The relationship between the Navy and NMDF is one fraught with legal and ethical concerns. Ms. Krepp recognized those issues in her repeated verbal comments to Mr. Burns and Ms. ▇▇▇▇. What Mr. Burns requested Ms. Krepp to do was legally ambiguous, which he, *in fact*, recognized given his request for a legal opinion on the matter (*see* Enclosure (A) at p. 22). Furthermore, as we are sure Ms. ▇▇▇ will relate if asked, Ms. Krepp repeatedly recommended NMDF retain a lobbyist to best coordinate with Congress to secure appropriations for the museum. Ms. Krepp also ensured that Navy OLA was the "point person" with Congressional engagement to ensure NHHC complied with statute and Navy policy on the issue.

Nothing in Ms. Krepp's conduct rises to a level requiring discipline, much less dismissal. Ms. Krepp should be lauded for ensuring NHHC avoided actual or perceived legal and ethical traps in the relationships between Congress, NHHC, and NMDF. However, Mr. Burns uses this ambiguity to create smoke where there is no fire, particularly where he did not provide a standard by which Ms. Krepp's conduct was being measured.

**Charge 3: Lack of Candor**

Specification (a): Mr. Burns alleges that on an unspecified date in late January, early February, Ms. Krepp had "lied to him." Mr. Burns alleges that in an NHHC executive meeting that Ms. Krepp had arranged for a brief for Representative ▇▇▇▇ ▇▇▇▇ Mr. Burns further alleges that he was confused as to the reason for the briefing given that Mrs. Kiggans's staff themselves were "confused by the assertion of such scheduled." (*sic*) Mr. Burns finally alleges that Ms. Krepp was evasive when she told him that the Navy OLA arranged the meeting. These allegations fail to provide specific facts or documents, and fails to establish the standard by which Ms. Krepp's conduct is being measured. Particularly given the email traffic between NHHC and Navy OLA – evidence Mr. Burns chose not to provide to support his allegations.

11

MNB MERIDIAN LAW, LTD.

**BLUF**: Mr. Burns fails to provide all of the relevant facts regarding "briefings" to Representative Kiggans claiming that "*Ms. Krepp was well aware of the fact that* ███████████, ███ ███ *and I had a very successful briefing with Congresswoman* ████ *in November 2023*." It is possible that given the number of people involved in setting the briefing, that miscommunication as to attendees and intent is the more likely culprit than Ms. Krepp "lying."

On November 8, 2023 at 12:30 p.m., NMDF (*not NHHC*) briefed Representative ████ at, with Mr. Burns and Dr. ████████ *attending as guests*. This is contrary to his claim that "*Ms. Krepp was well aware of the fact that* ██████████, ██████████ *and I had a very successful briefing with Congresswoman* ████ *in November 2023.*" (emphasis added) (*see* Notice Enclosure (n)) Later that evening, NMDF invited Representative ████ to attend a NMDF salon dinner wherein ███████ ████████ Ms. Kaye, and Mr. Burns had additional conversations (not a "briefing") with Representative ████ regarding the Museum. (*see* Enclosure (A) pp. 40 - 54) After those interactions, Mr. Burns directed that NHHC set an NHHC briefing for Representative ████ and her staff. Those preparations began on January 22, 2024.[8] (*see* Enclosure (A) pp. 56 to 65) By February 2, 2024, Navy OLA has set the meeting for February 7, 2024.

Contrary to Mr. Burns's claims in Notice Enclosure (n), the facts he claims are not the truth of the matter asserted. In fact, it appears he was not going to participate in the brief at all. This may have been intended as a "staff" briefing. He was not going to participate, at least not until February 2, 2024 when Ms. Krepp suggested that he and Mr. Cox should attend given her understanding of Navy OLA's comments. (*see* Enclosure (A) at pp. 61 - 65)

On January 22, 2024, Navy OLA informed Representative ████ staff that "*Our folks would very much like to brief both Rep* ████ *and you on this effort*." Mr. ████ Representative ████ Military Legislative Assistant, responded "*That said, would love to connect and get a briefing on your end as well because the Congresswoman is very supportive of this effort.*" When queried as to staff attendance, Navy OLA confirmed that "[OLA] *asked for both staff and Rep. and they asked if NHHC was available to brief "us.'"* Ms. Krepp confirmed on February 2, 2024, to Messrs. Cox and Burns "*OLA has arranged for NHHC to give Rep.* ████ *and her staff a briefing at 1430 on the 7th. I recommend that you, the Deputy, and a NMDF rep go. It's a 30 minute meeting.*" All personnel involved in scheduling the briefing apparently believed Representative ████ was going to be present. Alternatively, it is also possible that until February 2nd, NHHC "staff intent" was for "the staff" (likely Dr. ████████ to brief Representative ████ and/or her staff. The email traffic suggests that neither Messrs. Cox nor Burns were scheduled or were being considered to participate in the briefing until Ms. Krepps made the suggestion. (*see* Enclosure (A) pp. 61 to 65)

In either scenario, Mr. Burns "[asking] *these questions repeatedly over the next two weeks,*" is not an accurate statement as he was not participating in the briefing until at least February 2nd, three working days prior to the briefing. It is incredulous that Mr. Burns, "*in a bit of a panic,*" after having participated

---

[8]  Representative Kiggans's staff stated "*The Congresswoman has actually received a brief from the folks over at the National Navy Museum Development Foundation and I'm getting my own brief from them on Friday. That said, would love to connect and get a briefing on your end* [NHHC] *as well because the Congresswoman is very supportive of this effort.*" (emphasis added) (*see* Enclosure (A) pp. 56 to 65)

M N B  M E R I D I A N  L A W,  L T D.

in two detailed "briefings" with Representative ████ personally "*spent the next 2 days putting together a briefing to try to cover  as many possible discussion items ...*"

When the meeting took place, only Mr. ████ Representative ████ MLA, was present. Unfortunately, one of two things occurred:  (1) Representative ████ was never attending ("*would love to connect and get a briefing on your end as well because the Congresswoman is very supportive of this effort*"); or (2) the demands on a Representative's time require last minute adjustments and meetings are missed.  Both of these alternatives are the more likely conclusion than Ms. Krepp's "lied."

The reality is that Mr. Burns is, again, laying blame at her feet for acts and circumstances beyond Ms. Krepp's control when she was nothing more than a scheduler.   Dr. ████ appears to have "had the helm" in preparing for this briefing.  Miscommunication, inefficiency, and dysfunction on the part of NHHC is more to blame in this allegation than Ms. Krepp lied and obfuscated the intent and NHHC participation in the briefing.


**CONCLUSION**

None of Ms. Krepp's conduct requires or even suggests that dismissal is proper remedy for the specious allegations and facts that Mr. Burns alleges.  He fails to support his allegations foremost with facts, much less statutory, regulatory, or policy standards by which to gauge Ms. Krepp's purported conduct.  Let us be absolutely clear, just because Mr. Burns puts words to paper making weak accusations of the "*gravity of her misconduct*" that are "*so egregious*" and a "*serious lapses of judgment*" and that "*she can not be trusted to carry out her duties in an ethical and responsible manner*" such that "*removal is consistent with the Department of the Navy's penalties for the first offense of misconduct*," or, that: "*there are no other employees in a comparable position within this command, with similar or like disciplinary records, who committed the same or similar offenses ... [that]* both individually and cumulatively, and after full consideration of all relevant factors, I believe this proposed removal is the minimum action than can reasonably be expected to correct Ms. Krepp's misconduct and promote the efficiency of the service.  To be very clear, one charge standing alone supports this proposed removal...*" does not, *in actual fact*, make them true or supported by law, regulation and policy.

The mere permissibility of removal and Mr. Burns's mention of the Department of the Navy's Table of Penalties "[which] *serves to provide a general framework within which supervisors may exercise sound judgment in dealing with particular circumstances ... does not, however, replace supervisory judgment or require specific penalties.  While the penalty of removal exceeds the minimum recommended remedy for a first offense, a more severe penalty is warranted due to the seriousness of the misconduct and all of the aggravating factors at issue. I have no expectation that a lesser penalty than removal would be effective or appropriate to correct the misconduct and rehabilitate her*" does not, again, make them the <u>only</u> remedy or conclusion.   Again, Mr. Burns provides no factual, statutory, regulatory, or policy reference that would support these conclusions.

Mr. Burns claims further claims:

M N B  M E R I D I A N  L A W, L T D.

t "*Ms. Krepp created the appearance of, and subsequently admitted to, excluding qualified applicants from consideration for a subordinate position within her preview (Program Analyst, GS-0341-13/14) on the basis of gender. Rather than omitting applicants for lawful and legitimate business reasons, Ms. Krepp permitted personal preference to negatively influence her judgement as the designated selecting official for this hiring action. Discriminating against male applicants as the designated selecting official violates laws, rules, and regulations implementing or directly concerning merit system principles. To be very clear, her misconduct, as specifically stated within the proposed removal letter, directly and adversely impacted the hiring and recruitment process for the Program Analyst, GS-0341-13/14 position.*" (*see* Notice Enclosure (1), Douglas Factor 1)

Ms. Krepp never excluded qualified candidates from consideration. Ms. Krepp questioned the certification. *She and the panel* never interviewed the candidates and was therefore unable to "exclude" a candidate. The *panel* never selected a candidate. Insofar as the selection was a *panel* decision, a "*personal preference*" could not "*negatively influence her judgement as the designated selecting official for this hiring action*"

Ms. Krepp was never given an opportunity to ask questions as to how to "[omit] *applicants for lawful and legitimate business reasons*." Mr. Burns chose to cancel the July 11th meeting, and designate Ms. ███████ as the selecting official, who in turn recommended Mr. Burns's former commanding officer – despite his lack of professional qualifications, and personal demeanor. Incidentally, *each of which permissible reasons* to object to or pass overqualified Veteran candidates, such as Mr. Hill.

In that Mr. Hill was ultimately selected for and offered the position, Ms. Krepp did not "*directly and adversely impacted the hiring and recruitment process for the Program Analyst, GS-0341-13/14 position*." In fact, given the recruitment started in January, and the first candidate was selected in May, and the second recruitment occurred in June, and Mr. ███ was onboarded in September, there has been no "direct adverse impact on hiring or recruitment. Mr. Burns's apparent preferred candidate was offered the position in September, and is comparatively a rather quick hiring action by government standards.

Mr. Burns's further allegations and conclusions that Ms. Krepp has an "*unwillingness to be forthcoming to leadership or to accept responsibility for her actions;*" and, that she is "*severely compromised by her demonstrated lack of integrity and accountability*;" and, "*Her actions have eroded trust, not only between her and her superiors but also within the Command as a whole;*" and, that "*her job duties have been performed under increased supervisory oversight, further demonstrating the lack of confidence in her ability to operate independently*;" or, her "*ongoing lack of accountability and integrity in these critical areas makes it clear that she is no longer capable of performing her role effectively, even with additional supervision*; and, that "*given the severity of her misconduct, she cannot be trusted to perform the duties of her position or any other position within the Command effectively*," are not support by fact, law, regulation, or policy. Mr. Burns has not defined or elucidated a standard by which he, or more importantly, the United States Navy can measure and judge her conduct.

More importantly, Mr. Burns' statements are fabrications and false statements made to obfuscate the truth. For example, Ms. Krepp wasn't under increased supervision in July and August

14

MNB Meridian Law, Ltd.

2024. She was not placed on a performance improvement plan, or any other OPM recommended performance monitoring or corrective personnel action.  The opposite was occurring – senior leaders stopped talking with her after she filed the second EEO complaint.  Ms. Krepp even inquired of Mr. Cox why Mr. Burns was no longer meeting and communicating with her, to which he responded that NHHC attorneys were guiding his conduct to Ms. Krepp. It is difficult for an employee to be under increased supervision if the supervisor isn't communicating or providing performance "improving" guidance.

By all accounts, Ms. Krepp is NHHC's "truth to power," illuminating the inefficiencies, dysfunction, and misconduct by others that NHHC tries to cover over or fails to address despite being on notice.  (*see additional limited examples generally* at Enclosures (A) and (B))  We note with specific importance, ███████████████ letter detailing the discrimination she faced from her supervisor, but was never adequately or even addressed, and then the resulting meeting:

> *"Detailing my experiences of gender discrimination with Admiral Cox was distressing, and the situation was made all the worse by the fact that Admiral Cox initially failed to show up for our meeting. Denise had to physically track him down and bring him back to his office to meet with me. I left my meeting with Admiral Cox feeling extremely discouraged, having more or less been told that "some men of that generation are like that ... My impression is that NHHC is not an environment where women can thrive professionally, and it is hard for me to believe that Denise is not being retaliated against for her advocacy of women at NHHC. My male supervisor was never placed on administrative leave for serious and life-threatening misconduct including impeding my ability to get the medical care I needed for a high-risk pregnancy, yet he was allowed to retire (after my departure) with his full pension ... cannot help but feel that it is shameful the way NHHC treats its female professionals."* (*see* Enclosure (A) at p. 89)

Dr. ███████ also provides a good example of the dysfunction and apparent discrimination:

> *"... I do consider it telling that when she asked her chain of command's permission to present her gender history research at my "Meet the SME" SES and GO/FO breakfast, I received a troubled and suspicious phone call from a member of NHHC senior leadership, insinuating that Ms. Krepp had somehow put me up to hosting her, or otherwise manipulated me into it. Why problematize a scholarly contribution which was, ultimately, so well received by senior leaders? Why question it? If another individual has a problem with her research and writing, take it up with Ms. Krepp; if there is a personality clash, why raise it with me, an outsider?  I can assure you from fourteen years as a Navy historian on the outside looking in— and particularly the last 3 years in which I have worked closely with representatives from across the institution— NHHC is tragically divided and disturbingly contentious. No one individual can be held accountable for this fact. Yet it is a burden I have seen borne by historians, archivists, and members of its communications and outreach division, up and down chains of command."* (*see* Enclosure (B) at p. 10)

Dr. ███████ provides a closer view of the "supervisors" misogyny and harassment:  *"She is an asset to NHHC, which has a history of being a difficult environment for women. I have seen multiple*

MNB MERIDIAN LAW, LTD.

*instances of male employees – including those in supervisory roles – belittle women and dismiss their valid concerns regarding unequal and unacceptable treatment in the workplace. Thankfully, Denise has spoken out in opposition to this problematic environment and worked to improve the working conditions of the women at the Command.*"  (*see* Enclosure (A) at p. 139)

We completely agree with Mr. Burns that "*no organization can successfully operate without a reliable work force ...*"  Given the NHHC leadership, it is no wonder that female NHHC employees faced such hurdles.  Furthermore, Mr. Burns seems unwilling to directly face Ms. Krepp with regard to anything vaguely confrontational, and either inappropriately vented to the senior staff, or directed his anger and ire by email.  Mr. Burns allegations of Ms. Krepp's conduct, and the conversations that must be had with regard to the underlying issues, cannot be resolved through email discussions.

Mr. Burns claims to have "*placed substantial weight upon Ms. Krepp's length of federal service* [and] *her previous contributions to the Command are acknowledged …*" (*see* Notice Enclosure (1) Factor 4), yet he fails to detail how her federal service and previous contributions weighed on his decision.

For the record, Kathryn Denise Rucker Krepp's family has a long and storied affiliation with the United States military.  She is a direct descendant of veterans of the Revolutionary War, the War of 1812, the Civil War, and the Second World War.  Her father ███████████████ is a member of the US Military Academy Class of 1969. He and his brother ███████████████ fought in Vietnam. Ms. Krepp's mother ███████████████ served in the Women's Army Corps. Two  Army installation were previously named for family members Fort Rucker and Fort Benning, until Ms. Krepp actively pursued having their names removed as a private citizen and as the Navy liaison to the Naming Commission.  A prior DNS tasked Ms. Krepp with this responsibility and  CNN asked her to write about her participation in the name changing process.[9] Kendrick Memorial Center at Fort Eisenhower is named for Major General Douglas Kendrick, one of Ms. Krepp's cousins who provided services to General MacArthur and President Eisenhower. Another cousin is former Secretary of the Army Callaway. Lastly, Krepp's husband is a Navy SWO.

Ms. Krepp is a U.S. Coast Guard veteran.  She a former Presidential appointee as Chief Counsel to the U.S. Maritime Administration.  Prior to her appointment she was a senior legal counsel to the House of Representatives Homeland Security Committee, and a Transportation Security Administration plank holder and counsel.  She was specially selected due to her knowledge to help create the DHS.  She served as a locally elected official[10] in Washington, DC for eight years and a member of the Surface Transportation Security Advisory Committee.  She currently serves as a DC Ambassador for the Military Women's Memorial, and is a trustee of the National Maritime Historical Society.  She is also a frequently published essayist having article published in the Washington Post,[11] Richmond Times-Dispatch,[12]

---

[9]  *see* https://www.cnn.com/2024/04/29/opinions/civil-war-confederate-military-base-name-change-rucker/index.html; https://www.cnn.com/2023/10/05/opinions/tailhook-military-sexual-assault-scandal-rucker-krepp/index.html

[10]  *see* https://www.washingtonpost.com/made-by-history/2023/04/04/dc-crime-congress-mlk/

[11]   *see* https://www.washingtonpost.com/opinions/2022/04/29/my-seven-year-journey-get-answers-dc-crime-prosecutions/

[12] *see* https://richmond.com/article_81d8a0f5-6a06-5865-88cb-c87a6743c8aa.html

M N B  M E R I D I A N  L A W,  L t d.

Maritime Executive,[13] CQ Roll Call,[14] The Hill is Home, Tradewinds,[15] Proceedings,[16] and Gcaptain, among others.  She is also a frequent guest on national news and radio networks.[17]  Ms. Krepp's contributions to the Department of Defense and her community are and should be unquestioned. However, as is relevant to this matter are her contributions to while assigned to NHHC.  A review of her performance evaluations[18] will provide an exhaustive list of those accomplishments, as will the letters provided at Enclosure (B).  Yet, despite these accomplishments and contributions, Mr. Burns fails to describe how these contributions mitigated what he describes as the "*substantial impact of her current misconduct and harm to the Command's operations and integrity.*"

Ms. Krepp, as described by her colleagues:

"*an honest professional, selfless and responsive to the Navy's needs … she is trustworthy, delivers on her promises and enriches the Navy with her expertise.*"  (████████████████) (ASN(MR&A))

"*Denise is a rarity in the day and age … some (sic) who says what they mean, and willing to defend what she says to people she advocates for.*"  (████████)

"*Denise Krepp is a leader who has always spoken truth to power … I have always found her to be forthright, courageous, genuine, objective, and extremely candid without being offensive … she has been sought out for many challenging assignments, not because she "goes with the flow", but rather for her intellect, honesty and integrity.*"  (████████████████████████████)

"[Denise] *dove – feet first – into this knowing what would await and still, she refuses to yield. For her, it is about the pursuit of justice no matter how large the organization is, no matter how senior an individual is, and no matter what the professional or personal cost would be to her. She did not care about how this would impact her, rather, she only cared about seeing justice served.*"  (████████ ████████████████))

"*Since the* [Navy Museum's first-ever celebration of Filipino American History month], *she has continued to pursue documenting this history by collecting materials written by Filipinos in the Navy for the Naval History and Heritage Command. The educational programs that she has organized are insightful, inclusive and open the doors of the Navy to a wider audience.  Most of all, the programs inspire people to learn about the Navy and the people who nobly serve under it.  Denise serves an inspiration to many because she pursues the truth and helps others to achieve their potential. She is a*

---

[13] *see* https://www.maritime-executive.com/author/denise_krepp

[14] *see* https://rollcall.com/2013/09/19/guest-opinion-female-military-personnel-arent-whores/

[15] *see* https://www.tradewindsnews.com/people/sexual-assault-investigation-blocked-in-2011-says-former-marad-lawyer/2-1-1080393

[16] *see* https://www.usni.org/magazines/proceedings/2020/february/us-sealift-fleet-rusty-tin-cans

[17] *see* https://www.foxnews.com/politics/dc-democrat-fights-own-party-violent-crime-response; https://www.foxnews.com/media/lifelong-dc-democrat-own-party-enough-need-police; https://www.foxnews.com/video/6323646654112,

[18] Ms. Krepp's performance evaluations are available in DCPDS.

M N B   M E R I D I A N   L A W ,   L T D .

*great leader and the Navy is quite fortunate to have her.* (███████) (███████████████
████)

"*It is important to me to convey the character I have witnessed first-hand. Denise has shown herself to be a person of good moral fiber who takes responsibility seriously and strives continuously for personal and professional improvement. Her fundamental nature is geared towards constructive and honorable behavior.*" ████████████████████████████)

"*[As a sexual assault survivor] it was Denise that encouraged me up until the hour before I testified before the US Senate. It was Denise that sat behind me in the US Senate chamber while I recounted the most difficult months of my life with the American public. And it's been Denise that has encouraged me and other survivors since. She has aided countless other survivors - commissioned, enlisted, and civilian - through not only the most difficult experiences of their lives, but also navigate the complicated legal and administrative processes unique to the US government.*" (████████) (sexual assault survivor)

"*[Denise] functions as a mentor, helpmate, leader, amplifier, and supporter to numerous military personnel and civilians; assorted minorities and women. Put differently, she labors tirelessly to shed light on the achievements and value of other people (an exceptional trait). Also an exception to the rule, she labors tirelessly to diagnose and tackle barriers faced by other people.*" (███████████) (████
██████████████)

"*I watched Denise execute the effort* (DoD Naming Commission) *with expertise, professionalism and steadfast focus as she navigated through the complex environment and uncomfortable discussions on behalf of the Commission. Her efforts directly contributed to identifying all appropriate assets owned by the Department of the Navy. With every interaction, Denise Krepp demonstrated the strength of her integrity and character engaging on behalf of the Navy with the sense of duty necessary while bringing change to places such as the United States Naval Academy which is steeped in tradition.*" (████
██████████████████████)

The underlying facts and Mr. Burns's "analysis" of the alleged conduct he cites are NOT consistent with the most severe punishments available to supervisors. He does not support these allegations with a defined standard of conduct. Just because they are available does not make the best option. Mr. Burns states:

"*I have considered lesser disciplinary actions (a letter of reprimand, suspension, counseling, etc.) but find no alternative sanction to be an appropriate or viable alternative sanction that would rehabilitate her and deter future misconduct given the seriousness of the offense. Ms. Krepp's actions have caused significant harm to the Command's operations and integrity, and her continued employment would pose a risk to the Command's mission. The proposed removal is the only sanction that adequately addresses the severity of her misconduct and promote the efficiency of the service.*" *(see Notice Enclosure (1) Factor 12)*

18

M N B  M E R I D I A N  L A W,  L T D.

As we have repeatedly mentioned, what is lacking in Mr. Burns's analysis are the gradual remedial steps, as required by OPM and the Navy, he took to identify, inform, and attempt to correct his perception of Ms. Krepp's alleged failures. He did not counsel Ms. Krepp in writing. He did not place her on a Performance Improvement Plan. He did not reprimand her. *In fact,* there is nothing but commendable performance in her official personnel file.

Mr. Burns has an agenda: remove the squeaky wheel. One obvious fact is that Mr. Burns was the hiring official and selected Mr. ▇ – despite the prior panel's independent conclusion he was not qualified or a good fit. His selection and hiring ensures Mr. ▇ elevation to the Director's billet (if Ms. Krepp is dismissed) which contributes another complicit "old boy" to the NHHC senior staff that will ignore, condone, and participate in the misogynistic and "do as I want" environment.

## SUMMATION

Dismissal is the most severe punishment available to supervisors for a select line of misconduct: excessive unauthorized absences, discrimination, retaliation, harassment, involve drugs or alcohol, gambling, criminal or notoriously disgraceful conduct to colleagues or the public, a failure or delay in executing a work assignment, discourteous conduct, falsification or concealment of official records, false statements, or threatening subordinates, colleagues, or superiors, misuse of government property, endangering the lives of others or property, or even disclosing protected material or HIPAA data.

(1) Ms. Krepp is being accused of violating law, regulation, and policy for asking questions about the advertising, ranking, and certification of candidates. She is being recommended for dismissal because her supervisor secretly (or not so secretly) wanted to hire ▇▇▇▇ his former commanding officer. Ms. Krepp violated no statute, regulation, or policy when she questioned the pressure to hire Mr. ▇ A violation could not have happened until someone signed a document. Interestingly, it was Mr. Burns who signed that document and authorized Mr. ▇ selection.

(2) Ms. Krepp is accused of asking another to lie on her behalf. Nothing in the facts provided by Mr. Burns supports that conclusion. Mr. Burns has only provided facts, hearsay, circumstantial conclusions, and innuendo to support his allegation. Mr. Burns took Ms. ▇ very specific language and maliciously twisted it to infer that Ms. Krepp attempted to hide something nefarious: that she failed to do a job that was not hers to perform and from which she was explicitly and deliberately excluded.

(3) Ms. Krepp is accused of failing to follow instructions when she failed to provide answers to questions on an arbitrary deadline. Questions, the answers to which required explanation. When she failed to answer those questions by email by the arbitrary deadline, Mr. Burns cancelled the meeting to discuss the questions. He then directed another panel to interview two candidates, while withholding the hiring decision to himself, which he exercised in hiring his former commanding officer for the position.

(4) Ms. Krepp is accused of failing to engage Congress when that responsibility was not hers, and for which she expressed concerns regarding "lobbying" for funding of a non-governmental entity – a concern that Mr. Burns also has as late as May 7, 2024. Ms. ▇ was very specific in her statement

M N B   M E R I D I A N   L A W ,   L T D .

regarding NDMF:  "*it has been my responsibility to implement and manage the Congressional strategy for funding with the assistance of board member* ██████████████ [and] *It is important to clarify that the only NHHC member who has made calls, attended meetings, or contributed to the strategy regarding the US Congressional effort has been Pat Burns.*"  Ms. Krepp did not fail to do a duty that was not hers.

(5)  Ms. Krepp is accused of lying about setting meetings with Representative ██████ and was "*embarrassed*" that he "*briefed a junior staffer.*"  These were meetings that Mr. Burns directed given the success of the November 2023 NMDF brief to and dinner conversation with Representative ██████  Ms. Krepp is accused of lying, but is the Occam's Razor explanation that the simpler case of miscommunication was the culprit rather than a long term plot of lying and embarrassment.  .  Mr. Burns's conclusion that "*in a bit of a panic,*" he had to prepare a briefing because he believed Ms. Krepp dropped the ball is ludicrous.  Messrs. Cox and Burns were never considered or scheduled to conduct the briefing until Ms. Krepp suggested, based on information from Navy OLA, they might want to conduct the briefing, rather than "the staff" (Dr. Rentfrow).

Ms. Krepp's alleged conduct:  that of a squeaky wheel in an inefficient, ineffective, dysfunctional, misogynistic, "good old boy" command, ***does not rise to the level requiring dismissal***. Mr. Burns allegations should be unfounded.  Ms. Krepp should be returned to her position without retribution or fear of retaliation; or, *alternatively* transferred or detailed to a position where her skill, experience, and extensive knowledge can be better utilized.

We of course stand ready to discuss any of these issues and the underlying evidence provided by Ms. Krepp to ensure there adverse effect on the "efficiency of the United States Navy."  I can be contacted at the addresses and email addresses above, or on my mobile at ██████████ .

Sincerely,



*er* repp

cc:
Ms. K. Denise Rucker Krepp
Ms. ██████████  Director, EEO (DNS-E)
Ms. ██████████ , Navy OGC, OPNAV Counsel

Exhibit (F)

**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
2000 NAVY PENTAGON
WASHINGTON DC 20350-2000

5300
Ser N1B/119
27 Jan 25

From: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
To:   Ms. Kathryn Denise Rucker Krepp

Subj:  DECISION NOT TO EFFECT YOUR REMOVAL

Ref:   (a) SECNAVINST 12752.1A, Disciplinary Actions, dated May 3, 2016; Incorporating
           Change Transmittal 1, dated November 6, 2017
       (b) Proposed Removal, dated September 4, 2024
       (c) Written Reply from Christopher Nuneviller, MNB Meridian Law, Ltd., dated
           September 26, 2024

1. In accordance with reference (a), on September 4, 2024, Mr. Patrick Burns, Deputy Director of the Naval History and Heritage Command (NHHC), proposed your removal from the Department of the Navy and federal service for conduct unbecoming a supervisor, failure to follow instructions, and lack of candor. Reference (b) also advised you of your right to respond to the Notice of Proposed Removal both orally and in writing to me. I received your written reply on September 26, 2024, in which you allege the Notice of Proposed Removal was a retaliatory act for your attempts to "hold the NHHC accountable…"

2. Based on a thorough reading of the case file and coupled with the information you provided in your rebuttal, I have determined that your proposed removal, reference (b), is not supported by a preponderance of the evidence. I have further determined that while Mr. Burns outlined legitimate concerns about your actions at issue in the Notice of Proposed Removal, those concerns merit your consideration, not your removal from federal service. Your many years of dedicated federal service played no small part in my reaching this decision.

3. Your continued exchange with the Human Resources team about males on the certification list, however, could easily suggest you are disregarding the requirements of Title VII of the Civil Rights Act of 1964. In the future, I encourage you to be more thoughtful when discussing gender, or any other protected class (race, sex, religion, veteran status, marriage status, color, disability, genetic information, age, and pregnancy) in the context of hiring actions in the federal workplace.

4. Effective February 3, 2025, your administrative leave will conclude and you are to return to regular duty at your regularly scheduled location and time.

5. Copies of applicable regulations as well as the official case file are available to you and your representative at the Chief of Naval Operations Human Resources Office (CNO HRO), DNS-D, 2000 Navy Pentagon, Rm 4C669, Washington, D.C. 20350. Should you require further

Subj: DECISION NOT TO EFFECT YOUR REMOVAL


information regarding your rights, you may consult with Mr. ███████████ Labor and Employee
Relations Specialist, CNO HRO, at ███████████ or ███████████


Copy to:
OCHR Stennis

# Exhibit (G)

# COMPLAINT OF DISCRIMINATION IN THE FEDERAL GOVERNMENT

*(This form is subject to the Privacy Act of 1974)*
*(See Page 3 for Privacy Act Statement and Instructions - Please type or print)*

**FOR AGENCY USE**

| | |
|---|---|
| **1. FULL NAME OF COMPLAINANT** *(Last, First, Middle Initial)*<br>KREPP, Kathryn (Denise) Rucker | **2. TELEPHONE NUMBER** *(Include Area Code)* |

**3. ADDRESS** *(Street, City, State, and ZIP Code)*
1837 A Street SE
Washington DC 20003693

a. HOME ▮

b. OFFICE ▮

**4. FEDERAL OFFICE YOU BELIEVE DISCRIMINATED AGAINST YOU**
*(Prepare a separate complaint form for each office which you believe discriminated against you.)*

**5. ARE YOU NOW WORKING FOR THE FEDERAL GOVERNMENT?**
*(If answer is "Yes" complete a, b, and c below.)*
[X] YES    [ ] NO

**a. NAME OF OFFICE THAT YOU BELIEVE DISCRIMINATED AGAINST YOU**
Office of the Director, Navy History and Heritage Command

**a. NAME OF AGENCY WHERE YOU WORK**
Navy History and Heritage Command

**b. ADDRESS OF OFFICE** *(Street, City, State, and ZIP Code)*
805 Kidder Breese Street SE
Washington, DC 20374

**b. ADDRESS OF YOUR AGENCY** *(Street, City, State, and ZIP Code)*
805 Kidder Breese Street SE
Washington, DC 20374

**c. NAME AND TITLE OF PERSON(S) YOU BELIEVE DISCRIMINATED AGAINST YOU** *(If you know)*
Samuel Cox, Director, NHHC
Patrick Burns, Deputy Director, NHHC

**c. TITLE AND GRADE OF YOUR JOB**
Director, Director's Action Group (GS-0340-15-08)

**6. ELECTION OF REPRESENTATION** [X] ATTORNEY    [ ] NON-ATTORNEY    [ ] NO REPRESENTATION

**a. NAME OF REPRESENTATIVE** *(If applicable)*
Christopher Nuneviller, Esq.

**b. ADDRESS** *(Include ZIP Code)*
MNB Meridian Law, Ltd., 1650 Market Street, Suite 3600, Philadelphia, PA  19103

**7. DATE ON WHICH MOST RECENT ALLEGED DISCRIMINATION TOOK PLACE** *(YYYYMMDD)*

20250701

| **c. TELEPHONE NUMBER** *(Incl. area code)*<br>215-268-3003 | **d. FAX NUMBER** *(Incl. area code)* | **e. E-MAIL ADDRESS**<br>cnuneviller@mnbmeridian.com |
|---|---|---|

## 8. CHECK BELOW WHY YOU BELIEVE YOU WERE DISCRIMINATED AGAINST

| | |
|---|---|
| | a. RACE *(If so, state your race)* |
| | b. COLOR *(If so, state your color)* |
| | c. RELIGION *(If so, state your religion)* |
| | d. NATIONAL ORIGIN *(If so, state your national origin)* |
| X | e. SEX *(If so, state your sex)*  [ ] Male  [X] Female |
| | f. AGE *(If so, state your age)* (See Note 1) |
| | g. DISABILITY *(If so, state whether mental or physical)* |
| | h. SEXUAL HARASSMENT *(If so, state your sex*  [ ] Male  [ ] Female  *and the sex of the person you believe harassed you*  [ ] Male  [ ] Female  *)* |
| X | i. REPRISAL FOR PREVIOUS EEO ACTIVITY *(If so, when)*  Continuing reprisal currently pending investigation DON 24-63151-01110 |
| | j. GENETIC INFORMATION |
| | k. PREGNANCY |

Note 1:  Complaints of discrimination because of age apply only to employees or applicants who were at least 40 years of age at the time the discriminatory action is alleged to have occurred.

## 9. EXPLAIN IN SPECIFICS HOW YOU BELIEVE YOU WERE DISCRIMINATED AGAINST *(treated differently from other employees or applicants)* DUE TO YOUR RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX, AGE, PREGNANCY, GENETIC INFORMATION, DISABILITY, OR REPRISAL

*(For each allegation, please state to the best of your knowledge, information and belief what incident occurred and when the incident occurred. If you need more space, continue on another sheet of paper.)*

THIS MATTER IS CONTINUING PATTERN OF MISCONDUCT CURRENTLY INVESTIGATED UNDER DON 24-63151-01110 (Carolyn Jones)

(1) On or about June 15, 2025, Messrs. Cox and Burns improperly completed my April 2024 to March 2025 Performance Appraisal by (a) affixing my signature to the document on June 11, 2025 purporting to claim that I agreed with the Performance Elements and Standards outlined in mid-2024, and that I concurred with the statement "Employee's performance is assessed as successful." As is fully outlined in previous EEO complaints (DON 24-63151-01110), I disagreed with the addition of standards that I were assigned to other personnel and I had not control over the ability to influence the completion of the tasks (see Amended Notice of Partial Dismissal and Acknowledgement of Claims of Formal Complaint Forwarded for Investigation for Kathryn Denise Rucker Krepp V. Carlos Del Toro, Secretary of the Navy, Agency Number DON 24-63151-01110, dated September 25, 2024). The forgery of my signature strongly suggests further and continuing retaliation for the acts for which I complained in September 2024.

(2) On or about June 26, 2025, NHHC manipulated my time and attendance (without my authorization) in SLDCADA purportedly to correct "my" request to be placed on administrative leave and correct "my" mistaken use of the wrong fiscal codes to account for the administrative leave. NHHC appears to state that I was the one who incorrectly entered the data at my request and I incorrectly entered the wrong fiscal codes. As is clear from the record, I was PLACED on administrative leave on September 4, 2024 at the direction of the Deputy Director when he attempted to dismiss me from federal service. The allegation that I was the one who incorrectly entered the wrong status and fiscal information strongly suggests further and continuing retaliation for the acts for which I complained in September 2024.

**DD FORM 2655, FEB 2025**    PREVIOUS EDITION IS OBSOLETE.    **Page 1 of 3**

**10. I HAVE DISCUSSED MY COMPLAINT WITH AN EQUAL EMPLOYMENT OPPORTUNITY COUNSELOR** *(See instructions)*

☒ YES    ☐ NO

**11. NAME OF COUNSELOR** *(If applicable)*

Carolyn Jones, Department of the Navy

**12. HAVE THE ISSUES IDENTIFIED IN BLOCK 9 BEEN APPEALED TO THE MERIT SYSTEMS PROTECTION BOARD (MSPB) OR FILED UNDER A UNION NEGOTIATED GRIEVANCE PROCEDURE?** ☒ NO    ☐ YES *(If Yes, complete 12 a., b., and c. below)*

| a. *(X one)* | b. DATE FILED *(YYYYMMDD)* | c. MSPB OR UNION DOCKET NUMBER *(If known)* |
|---|---|---|
| ☐ MSPB  ☐ UNION NEGOTIATED GRIEVANCE | | |

**13. WHAT RELIEF ARE YOU SEEKING TO RESOLVE THIS COMPLAINT?** *(State specific corrective action desired for each allegation.)*

(1) return to my position as Director, Director Actions Group with full pay, bonuses, and my professional integrity intact, if only (see (2)). Alternatively, (a) I be placed in a position of similar responsibility and authority, or (b) I be permitted to retire from civil service with full retired pay and benefits as if I had attained those benefits for serving the required time towards retirement.

(2) that Messrs. Cox and Burns are removed from their positions, investigated as to their inappropriate behavior and creation of a toxic work environment, and removed from their leadership positions and prohibited from being placed in similar leadership positions

(3) that NHHC personnel undergo leadership training to recognize harassment and to build confidence in NHHC employees to report harassment and inappropriate behavior.

(4) financial payment of $300,000 in settlement of the two (2) claims identified in this complaint.

**14. LIST NAME(S) OF WITNESS(ES) AND BRIEFLY STATE WHAT INFORMATION WITNESS MAY CONTRIBUTE TO THE INVESTIGATION OF YOUR COMPLAINT.**

As to complaint (1) above:

1. Samuel Cox, Director, Naval History and Heritage Command, Washington Navy Yard, Washington DC: Mr. Cox is the senior rater who was responsible for, directed, or knew or should have known of the unlawful placement of my signature on the evaluation.

2. Patrick Burns, Deputy Director, Naval History and Heritage Command, Washington Navy Yard, Washington DC: Mr. Burns is the rater who was responsible for, directed, or knew or should have known of the unlawful placement of my signature on the evaluation.

As to complaint (2) above:

1. ▮▮▮▮▮▮▮▮▮▮ *(Email)*: ▮▮▮▮▮▮▮▮▮ Customer Service Representative, Resource Management Division, Naval History and Heritage Command. Office: ▮▮▮▮▮▮ -- Ms. ▮▮▮▮ was the NHHC representative who manipulated by Leave and Attendance records at the direction of NHHC leadership.

Documents and email supporting the allegations are provided herewith.

**15. SIGNATURE OF COMPLAINANT**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**16. DATE OF THIS COMPLAINT** *(YYYYMMDD)*

Exhibit (H)

| | |
|---|---|
| **From:** | Denise Krepp |
| **To:** | Christopher Nuneviller |
| **Subject:** | NHHC FOIA - For your records |
| **Date:** | Sunday, December 22, 2024 4:42:15 PM |

## Your FOIA request has been created and is being sent to the Department of the Navy.

Please save this page for your records.

Print page

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

Contact the agency
FOIA Requester Service Center
202-685-0412
usn.ncr.dns.mbx.don-foia-pa@us.navy.mil
Christopher Julka,  FOIA Public Liaison
703-697-0031
christopher.a.julka@navy.mil
*Chief of Naval Operations, DNS-36*
*2000 Navy Pentagon*
*Washington, DC 20350-2000*
usn.ncr.dns.mbx.don-foia-pa@us.navy.mil

# Request summary

Request submitted on **December 22, 2024**.
The confirmation ID for your request is **1799171**.
The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

Name
Kathryn Krepp

Mailing address
*1837 A Street SE*
*Washington, DC 20003*
*United States*

Phone number


Company/organization
Naval History and Heritage Command employee

Email

## Your request

I am a Naval History and Heritage Command (NHHC) employee and I am submitting a Freedom of Information Act request for a copy of the Office of the Naval Inspector General investigation of NHHC that was conducted and completed in the fall of 2024. I requested a copy of the NHHC investigation from the Office of the Naval Inspector General and was directed to submit a FOIA for the document. This request complies with the IG direction.

## Fees

What type of requester are you?
other

Fee waiver
yes

Fee waiver justification
I am a Naval History and Heritage Command employee and I respectfully requesting to obtain a copy of the IG investigation of NHHC at no cost.

The amount of money you're willing to pay in fees, if any
0

# Request expedited processing

Expedited processing
no

# Exhibit (I)



**DEPARTMENT OF THE NAVY**
NAVAL INSPECTOR GENERAL
1254 9TH STREET SE
WASHINGTON NAVY YARD DC 20374-5006

5720
Ser IG00L/0003
April 17, 2025

Kathryn Krepp
1827 A Street SE
Washington, DC 20003

Dear Ms. Krepp:

This responds to a Freedom of Information Act (FOIA) (2025-NAVYFOIA-002410) of December 22, 2024, in which you requested: copy of the NHHC investigation in which you were the complaint. Your request was processed in accordance with the FOIA and the Privacy Act (PA). Potential fees associated with this response are waived.

A search of Office of the Naval Inspector General records yielded two (2) responsive records. The redactions made in the responsive material are based on FOIA Exemptions (b)(6), and (b)(7)(c) as well as PA Exemption (k)(2). FOIA Exemption (b)(6) protects from disclosure material from personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of privacy. FOIA Exemption (b)(7)(c) and PA Exemption (k)(2) authorize the Government to withhold records, as well as redact names and other personal information contained in those records, compiled for investigatory or law enforcement purposes, which, if released, could be considered an unwarranted invasion of personal privacy. My review included consideration of the "foreseeable harm standard" (i.e., that information which might technically fall within an exemption should not be withheld from a FOIA requester unless the agency can identify a foreseeable harm or legal bar to disclosure).

My point of contact for FOIA is Ms. ███████. If you have any questions, she may be reached at ███████.

Under 32 CFR §701.12(a), you have the right to an appeal. Appeals can be filed via email or through the U.S. mail. In both cases, send the appellate authority the following items:

1. An email/letter requesting an appeal with reasons why it should be granted.
2. A copy of your initial request.
3. A copy of this letter.

An **appeal** sent **by email must be received within 90 calendar days** from the date of this letter. In the subject line of the email, type "FOIA Appeal" and your case number 2025-NavyFOIA-002410. Send the appeal to navinsgen_foia@us.navy.mil.

5720
Ser IG00L/0003
April 17, 2025

An **appeal** filed **through the internet must be received within 90 calendar days.**  Use the public portal of the SecureRelease (the Department of the Navy's FOIA processing system).  Go to https://www.securerelease.us.  Click "Login/Create Account" (in the top-right corner) and enter the information in the boxes that appear to create an account.  Once that is done, you will be able to file an appeal for any request created through the SecureRelease portal by clicking the Create Appeal button in the top-right corner of the Request page.

To appeal a request that was not submitted through the SecureRelease portal, create a SecureRelease portal account, then use the Create Request button on the SecureRelease portal homepage to create a FOIA request.  In the Request Description field for that FOIA request, indicate that this is an appeal and make reference to the tracking number you have received for the request you wish to appeal.

An **appeal** sent **by mail must be postmarked within 90 calendar days** from the date of this letter.  Make sure to mark the envelope "FOIA Appeal".  For issues related to the military, mail your appeal to The Judge Advocate General (Code 14).  For all non-military related matters, mail your appeal to the Office of General Counsel (OGC).  The appropriate addresses have been provided below.

The Judge Advocate General (Code 14)         General Counsel of the Navy
1322 Patterson Avenue SE, Suite 3000         1000 Navy Pentagon, Room 5A532
Washington Navy Yard, DC 20374-5066         Washington, DC 20350-1000

You may also contact the DON FOIA Public Liaison, Christopher Julka, at christopher.a.julka@navy.mil, (703) 697-0031.  In addition, the Office of Government Information Services (OGIS) provides a voluntary mediation process for resolving disputes between persons making FOIA requests and the Department of the Navy.  For more information, go to https://www.archives.gov/ogis/about-ogis/contact-information.



| | |
|---|---|
| **From:** | (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) |
| **To:** | (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) |
| **Subject:** | RE: Leave Question |
| **Date:** | Tuesday, October 1, 2024 10:23:31 AM |

Good morning (b)(6), (b)(7)(C),

No worries, it's a busy time ☺

**(b) (6), (b) (7)(C), (k)(2)**

Have a great day!

V/r,
(b)(6), (b)(7)(C)

**From:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C)@us.navy.mil>
**Sent:** Tuesday, October 1, 2024 9:56 AM
**To:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C)@us.navy.mil>
**Subject:** RE: Leave Question

Thank you (b)(6), (b)(7)(C) and my apologies for not replying sooner. The complainant (b) (6), (b) (7)(C), (k)(2)

it does not appear that it involves complainant's current position with the Department of the Navy.

v/r

(b)(6), (b)(7)(C)

(b) (6), (b) (7)(C)
Senior Investigator
Hotline Intake & Investigations Division  (IG60)
Office of the Naval Inspector General
1254 Ninth Street, S.E., Bldg. 172
Washington Navy Yard, DC 20374-5006
Office: (b) (6)

PRIVACY ACT NOTICE:  CUI - Privacy Sensitive.  This communication may contain privileged or other official information.  If you are not the intended recipient or believe that you have received this communication in error, please reply to the sender indicating that fact and delete the copy you received.  It is a violation of Federal law to print, copy, retransmit, disseminate, or otherwise use this information.  Any misuse or unauthorized disclosure may

result in both civil and criminal penalties

**From:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C) @us.navy.mil>
**Sent:** Monday, September 23, 2024 1:37 PM
**To:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) (b) (6), (b) (7)(C) @us.navy.mil>
**Subject:** RE: Leave Question

Good afternoon (b) (6), (b) (7)(C),

(b) (6), (b) (7)(C), (k)(2)

If you have any questions or concerns, please let me know.

Thank you and have a great day!

V/r,

**From:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C) @us.navy.mil>
**Sent:** Thursday, September 12, 2024 6:07 PM
**To:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C) @us.navy.mil>
**Subject:** Re: Leave Question

Thank you (b) (6), (b) (7)(C).

**From:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA)
<(b) (6), (b) (7)(C) @us.navy.mil>
**Sent:** Thursday, September 12, 2024 4:48 PM
**To:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C) @us.navy.mil>
**Subject:** RE: Leave Question

Hi (b) (6), (b) (7)(C),

(b) (6), (b) (7)(C), (k)(2)

Thank you and have a great day!

V/r,



**From:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C) @us.navy.mil>
**Sent:** Thursday, September 12, 2024 4:15 PM
**To:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C) @us.navy.mil>
**Subject:** RE: Leave Question

Thanks (b) (6), (b) (7)(C), (k)(2)

v/r



(b) (6), (b) (7)(C)
Senior Investigator
Hotline Intake & Investigations Division  (IG60)
Office of the Naval Inspector General
1254 Ninth Street, S.E., Bldg. 172
Washington Navy Yard, DC 20374-5006
Office: (b) (6), (b) (7)(C)

PRIVACY ACT NOTICE:  CUI - Privacy Sensitive.  This communication may contain privileged or other official information.  If you are not the intended recipient or believe that you have received this communication in error, please reply to the sender indicating that fact and delete the copy you received.  It is a violation of Federal law to print, copy, retransmit, disseminate, or otherwise use this information.  Any misuse or unauthorized disclosure may result in both civil and criminal penalties

**From:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C) @us.navy.mil>
**Sent:** Thursday, September 12, 2024 3:45 PM
**To:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C) @us.navy.mil>
**Subject:** RE: Leave Question

Good afternoon (b) (6), (b) (7)(C)

I'm not aware of any policy that covers such a scenario. (b) (6), (b) (7)(C), (k)(2)

It's different than Jury Duty, which would be covered by Administrative Leave (which is something OPM allows the various

agencies to manage themselves, providing some suggestions/recommendations).

**(b) (6), (b) (7)(C), (k)(2)**

V/r,



**From:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C) @us.navy.mil>
**Sent:** Thursday, September 12, 2024 2:54 PM
**To:** (b) (6), (b) (7)(C) USN NAVINSGEN WASH DC (USA) <(b) (6), (b) (7)(C) @us.navy.mil>
**Subject:** Leave Question

Good afternoon (b) (6), (b) (7)(C),

I am working on an allegation in which the complainant is **(b) (6), (b) (7)(C), (k)(2)**

. Are you aware of any leave policy that would cover such a scenario?

v/r

(b) (6), (b) (7)(C)

(b) (6), (b) (7)(C)
Senior Investigator
Hotline Intake & Investigations Division  (IG60)
Office of the Naval Inspector General
1254 Ninth Street, S.E., Bldg. 172
Washington Navy Yard, DC 20374-5006
Office: **(b) (6)**

PRIVACY ACT NOTICE:  CUI - Privacy Sensitive.  This communication may contain privileged or other official information.  If you are not the intended recipient or believe that you have received this communication in error, please reply to the sender indicating that fact and delete the copy you received.  It is a violation of Federal law to print, copy, retransmit, disseminate, or otherwise use this information.  Any misuse or unauthorized disclosure may result in both civil and criminal penalties

From:        NAVIGHotlines
To:          Krepp, Kathryn R (Denise) CIV USN (USA)
Subject:     Privacy Sensitive - Complaint Response to Case# 202403035
Date:        Thursday, October 24, 2024 3:56:50 PM

Dear Ma'am,

This is in response to your complaint submitted to the Department of Defense Inspector General Hotline on 6/5/2024, who in turn, referred it to the Office of the Naval Inspector General.

We carefully reviewed the information that you have provided and determined this is not a matter for this office.  Your concerns may be more appropriately addressed by utilizing the Alternative Dispute Resolution or Formal Grievance Process as outlined in SECNAVINST 12771.2.


The mission of the Office of the Naval Inspector General is to assist the Secretary of the Navy and Chief of Naval Operations in combating fraud, waste and mismanagement.  We invite you to visit our website at https://www.secnav.navy.mil/ig as it identifies topics which are appropriate to bring to the attention of the Office of the Naval Inspector General.  It also provides alternate avenues of redress which are more appropriate and should be exercised prior to filing a complaint with our office, or a local Inspector General.

We appreciate the opportunity to assist you and hope this information is helpful.

Very respectfully,

Hotline & Investigations Division
Office of the Naval Inspector General
1254 Ninth Street SE, Bldg. 172
Washington Navy Yard, DC 20374-5006
Phone: 800.522.3451
E-mail: NAVIGHotlines.fct@navy.mil
Website: https://www.secnav.navy.mil/ig

"PRIVACY SENSITIVE - Any misuse or unauthorized disclosure can result in both civil and criminal penalties."

# Exhibit (J)



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON NAVY YARD DC 20374

IN REPLY REFER TO:
5720
Ser 14/F314
April 28, 2025

*SENT VIA EMAIL*
Ms. Kathryn Krepp
1837 A Street SE
Washington, DC 20003
Email: kdrkrepp@hotmail.com

SUBJECT:  FREEDOM OF INFORMATION ACT (FOIA)/PRIVACY ACT (PA)
          REQUEST 2025-NAVYFOIA-002410; FOIA APPEAL 2025-NAVYAPPEAL-
          000232

    This letter responds to your April 22, 2025, FOIA/PA appeal, which was received by my office on April 22, 2025, and assigned tracking number 2025-NavyAPPEAL-000232.  Your underlying request was submitted to the Department of the Navy Office of the Naval Inspector General, the initial denial authority (IDA), on December 22, 2024, and assigned tracking number 2025-NavyFOIA-002410.  In your request, you sought "a copy of the Office of the Naval Inspector General investigation of [Naval History and Heritage Command (NHHC)] that was conducted and completed in the fall of 2024."

    The IDA issued its final disposition of your request on April 17, 2025, granting your request in part.  The IDA stated that a search yielded two responsive records and that redactions were made to the records based on FOIA exemption (b)(6) and (b)(7)(C) as well as Privacy Act exemption (k)(2).

    You now appeal the IDA's final disposition, contending that the initial response "was non-responsive" and "did not contain the information [you] requested."  Your attorney supplemented your appeal via email on April 23, 2025, stating that "the email traffic provided . . . was not responsive . . . [and that] there [was] a stark difference between what was requested and what was provided."  I note that you do not challenge redactions under FOIA exemption (b)(6), (b)(7)(C), or PA exemption (k)(2), and, accordingly, I find that you have waived any challenge to the IDA's application of those exemptions.

    Your appeal is a request for a final agency determination under the FOIA/PA.  For the reasons stated below, your appeal is denied.

## I.    ADEQUACY OF THE SEARCH

    Under the FOIA, the adequacy of an agency's search for information requested is determined by a "reasonableness" test. *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) ("'The court applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure'") (quoting *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998)); *see also Davis v. DOJ*, 460 F.3d 92, 103 (D.C. Cir. 2006) ("The 'adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case.'") (quoting *Schrecker v. DOJ*, 349 F.3d 657, 663

5720
Ser 14/F314
April 28, 2025

(D.C. Cir. 2003)).  As a general rule, an agency must undertake a search "using methods which can be reasonably expected to produce the information requested." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  Courts have found agencies satisfy the "reasonableness" test when they properly determine where responsive records are likely to be found and search those locations.  *Lechliter v. Rumsfeld*, 182 F. App'x 113, 115 (3rd Cir. 2006) (concluding that agency fulfilled duty to conduct a reasonable search when it searched two offices that it determined to be the only ones likely to possess responsive documents (citing *Oglesby*, 920 F.2d, 68); *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 849 F. Supp. 2d 47, 55–56 (D.D.C. 2012) (concluding that agency's search was reasonable because agency determined that all responsive records were located in a particular location created for express purpose of collecting records related to subject of request and searched that location).

## II.    ANALYSIS

Following receipt of your appeal, my office contacted the IDA regarding your request.  The IDA clarified that, during its search it found one responsive case, NIGHTS case #202403035, which was opened in June 2024 and closed in October 2024.  This case did not develop into a full investigation, and the IDA provided you with five redacted pages of responsive records on April 17, 2025.[1]

After the IDA's April 17, 2025, response, and while corresponding with you via telephone, the IDA located another case (NIGHTS #202400979) under the name "Denise Krepp," which you informed the IDA you also use.[2]  However, that case was deemed non-responsive to your request because it did not involve NHHC and was outside of the time period listed in your FOIA request.

In subsequent correspondence with you, the IDA clarified that there is another investigation, 20240917-098416-CASE-01, still pending with the Department of Defense Office of the Inspector General (DoD OIG) for final concurrence.  Your attorney acknowledged the status of this request in his email on April 23, 2025, and noted his intent to "reengage with the Navy FOIA office" once DoD OIG's review is complete.[3]

I find that the IDA's search was adequate.  The IDA conducted a search of the locations—the Office of the Naval Inspector General NIGHTS database—most likely to contain potentially responsive records.  The IDA used the search terms—personal identifiers and date timeframe— provided by you in your FOIA request.  These search terms identified two responsive records, which were redacted and provided to you.  Other records, as noted above, were either outside of

---

[1] Of note, the last page of the responsive records states, "[w]e carefully reviewed the information that you have provided and determined this is not a matter for this office."  Thus, there would not be a full investigative report to release.

[2] While this name appears in the "to" line of a responsive email from October 24, 2024 (and appears to be autogenerated from the Global directory), it was not listed in FOIA request 2025-NavyFOIA-002410, which only listed "Kathryn Krepp."  Consequently, it was not used as a search parameter initially.

[3] This is also not responsive to your FOIA request, 2025-NavyFOIA-002410, because it was not "conducted and completed in the fall of 2024.

5720
Ser 14/F314
April 28, 2025

the scope of your request or still pending DoD OIG review. An agency's inability to locate a responsive record does not undermine an otherwise reasonable search. *Moore v. FBI*, 366 F. App'x 659, 661 (7th Cir. 2010) (noting that, although agency had years earlier destroyed some potentially responsive records, that fact does not invalidate the search). Additionally, the mere speculation that requested documents exist does not undermine the finding that the agency conducted a reasonable search. *Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004) ("Likewise, the agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records."). Accordingly, your appeal is denied.

After higher level review of 20240917-098416-CASE-01 is complete, you can submit a new FOIA request for records from that investigation. You also retain the ability to appeal any response you deem adverse so long as your appeal is submitted within 90 days of such a determination.

As the Department of the Navy's designated adjudication official for this FOIA/PA appeal, I am responsible for its denial. You may seek judicial review of this decision by filing a complaint in an appropriate U.S. District Court. My office represents the U.S. Government and is therefore unable to assist you in this process.

You have the right to seek dispute resolution services by contacting the Department of the Navy's FOIA public liaison, ███████████████████████████████████████
████████ You may also seek dispute resolution services from the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office, at (202) 741-5770 or ogis@nara.gov.

If you have further questions or concerns for my office, my point of contact is Lieutenant Commander ███████████████, JAGC, USN, who may be reached at ███████████████ or by email at ███████████████████████████.

Copy to:
DON CIO
DNS-36
NAV IG

CERTIFICATE OF SERVICE

Pursuant to the Rule 5.3 (LCvR 5.3) of the District Court for the District of Columbia , Rule 4, service of this complaint on the Defendant United States of America will be effectuated by the Clerk of this Court.

Respectfully submitted,

MNB MERIDIAN LAW, LTD.

By: _____

Christopher Nuneviller, Esq.