UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHRYN RUCKER KREPP,

        Plaintiff,

    v.

JOHN PHELAN,
Secretary of the Navy,

        Defendant.

Civil Action No. 25-2371 (JMC)

**MOTION TO DISMISS AND**
**<u>MEMORANDUM IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

STANDARD OF REVIEW .................................................................................................. 5

ARGUMENT ...................................................................................................................... 5

I.     Plaintiff's Claims Related to Discrete Acts Before April 23, 2024 Are Not Exhausted. .... 5

II.    Plaintiff's Hostile Work Environment Claim Fails Because She Does Not Allege Sufficiently Severe and Pervasive Harassment (Count II). ................................................ 7

III.   Plaintiff's Does Not Plausibly Plead a Gender Discrimination Claim (Count I) ............... 9

     A.    Most or All of Plaintiff's Allegations Do Not Relate to an Adverse "Personnel Action." ................................................................................................................. 9

          1.    The Federal Sector Provisions of Title VII Apply. ..................................... 9

          2.    Plaintiff Does Not Allege "Some Harm" to a Term or Condition of Employment .............................................................................................. 14

     B.    Plaintiff Does Not Plausibly Allege That Any Adverse Action Was Caused by Discrimination. ................................................................................................... 16

          1.    Plaintiff Fails To Plausibly Allege Disparate Treatment, via Comparators or Otherwise. ...................................................................................... 17

          2.    Plaintiff's Own Pleadings Provide an Obvious Alternative Explanation for the Allegedly Discriminatory Actions. .................................................... 19

IV.   Plaintiff Does Not Plausibly Allege a Retaliation Claim (Count III) ............................. 22

     A.    Plaintiff Fails to Allege a Materially Adverse Action. ........................................ 22

     B.    Plaintiff Does Not Plausibly Allege Causation. ................................................. 25

CONCLUSION .................................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akonji v. Unity Healthcare, Inc.*,
　517 F. Supp. 2d 83 (D.D.C. 2007) ........................................................................9
*Arthur v. D.C. Hous. Auth.*,
　Civ. A. No. 18-2037, 2020 WL 7059552 (D.D.C. Dec. 2, 2020) ...........................25
*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ....................................................... 5, 17, 19, 22
*Babb v. Wilkie*,
　589 U.S. 399 (2020) ....................................................... 10, 11, 12, 13
*Bain v. Off. of Att'y Gen.*,
　Civ. A. No. 21-1751, 2022 WL 17904236 (D.D.C. Dec. 23, 2022) ......................12
*Baird v. Gotbaum*,
　792 F.3d 166 (D.C. Cir. 2015) ..........................................................7, 8
*Baloch v. Norton*,
　517 F. Supp. 2d 345 (D.D.C. 2007) ...................................................25
*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ...................................................................5
*Bridgeforth v. Jewell*,
　721 F.3d 661 (D.C. Cir. 2013) ......................................... 22, 23, 25
*Bridgeforth v. Salazar*,
　831 F. Supp. 2d 132 (D.D.C. 2011) ..................................................24
*Britt v. Washington Metro. Area Transit Auth.*,
　Civ. A. No. 23-0844, 2024 WL 3509484 (D.D.C. July 23, 2024) .........................27
*Brown v. Marsh*,
　777 F.2d 8 (D.C. Cir. 1985) .............................................................6
*Burlington N. & Santa Fe Ry. Co. v. White*,
　548 U.S. 53 (2006) .......................................................................23
*Carrero v. New York City Hous. Auth.*,
　890 F.2d 569 (2d Cir. 1989) ...........................................................9
*Chambers v. District of Columbia*,
　35 F.4th 870 (D.C. Cir. 2022) .......................................... 5, 10, 24
*Czekalski v. Peters*,
　475 F.3d 360 (D.C. Cir. 2007) ........................................... 12, 13
*Dagdagan v. Driscoll*,
　Civ. A. No. 23-3935, 2025 WL 3033726 (D.D.C. Oct. 30, 2025) ...............16, 17, 18
*Dozier v. Ford Motor Co.*,
　702 F.2d 1189 (D.C. Cir. 1983) ....................................................18
*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
　117 F.3d 621 (D.C. Cir. 1997) ........................................................3
*Faragher v. City of Boca Raton*,
　524 U.S. 775 (1998) .....................................................................7

*Garza v. Blinken*,
Civ. A. No. 21-2770 (APM), 2023 WL 2239352 (D.D.C. Feb. 27, 2023) ............................ 12

*Golden v. Mgmt. & Training Corp.*,
319 F. Supp. 3d 358 (D.D.C. 2018) ................................................................................ 21

*Gomez-Perez v. Potter*,
553 U.S. 474 (2008) ...................................................................................................... 11

*Harris v. D.C. Water & Sewer Auth.*,
791 F.3d 65 (D.C. Cir. 2015) ......................................................................................... 17

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993) ........................................................................................................... 8

*Heagney v. Bondi*,
Civ. A. No. 24-2592, 2025 WL 1496315 (D.D.C. May 22, 2025) ..................................... 26

*Hill v. Kempthorne*,
577 F. Supp. 2d 58 (D.D.C. 2008) .................................................................................... 5

*Ho v. Garland*,
106 F.4th 47 (D.C. Cir. 2024) ................................................................................. *passim*

*Howard R.L. Cook & Tommy Shaw Found. v. Billington*,
737 F.3d 767 (D.C. Cir. 2013) ....................................................................................... 22

*Howard v. Evans*,
193 F. Supp. 2d 221 (D.D.C. 2002) .................................................................................. 6

*Jones v. Ass'n of Am. Med. Colleges*,
Civ. A. No. 22-1680, 2023 WL 2327901 (D.D.C. Mar. 2, 2023) ...................................... 6

*Jones v. Castro*,
168 F. Supp. 3d 169 (D.D.C. 2016) .......................................................................... 15, 23

*Joyner v. Morrison & Foerster LLP*,
140 F.4th 523 (D.C. Cir. 2025) ............................................................................... *passim*

*Jud. Watch, Inc. v. FBI*,
Civ. A. No. 18-2316, 2019 WL 4194501 (D.D.C. Sept. 4, 2019) .................................... 21

*Lewis v. District of Columbia*,
653 F. Supp. 2d 64 (D.D.C. 2009) ................................................................................. 26

*McGrath v. Clinton*,
666 F.3d 1377 (D.C. Cir. 2012) ..................................................................................... 26

*Mohasco Corp. v. Silver*,
447 U.S. 807 (1980) ........................................................................................................ 6

*Montgomery v. McDonough*,
682 F. Supp. 3d 1 (D.D.C. 2023) ................................................................................... 16

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) ................................................................................................ *passim*

*National Railroad Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) ................................................................................................ 6, 7, 8

*Nguyen v. Mabus*,
895 F. Supp. 2d 158 (D.D.C. 2012) .................................................................................. 6

*Palmer v. Dep't of the U.S. Air Force*,
No. 24-3755, 2025 WL 2932925 (6th Cir. Oct. 15, 2025) ............................................. 14

*Pauling v. District of Columbia*,
286 F. Supp. 3d 179 (D.D.C. 2017) ............................................................................... 24

*Phelan v. Noem,*
    Civ. A. No. 24-0939, 2025 WL 2732749 (D.D.C. Sept. 25, 2025) ...........................................14

*Prescott-Harris v. Fanning,*
    Civ. A. No. 15-1716, 2016 WL 7223276 (D.D.C. Dec. 12, 2016) ...........................................18

*Russell v. Principi,*
    257 F.3d 815 (D.C. Cir. 2001) ...........................................14

*Scahill v. District of Columbia,*
    271 F. Supp. 3d 216 (D.D.C. 2017) ...........................................27

*Smith v. Jackson,*
    539 F. Supp. 2d 116 (D.D.C. 2008) ...........................................7

*Spinelli v. Gross,*
    446 F.3d 159 (D.C. Cir. 2006) ...........................................5

*Taylor v. Solis,*
    571 F.3d 1313 (D.C. Cir. 2009) ...........................................23, 24

*Teffera v. Turner,*
    Civ. A. No. 23-3803, 2025 WL 1900694 (D.D.C. May 28, 2025) ...........................................14, 23

*Terveer v. Billington,*
    34 F. Supp. 3d 100 (D.D.C. 2014) ...........................................6

*Tyes-Williams v. Whitaker,*
    361 F. Supp. 3d 1 (D.D.C. 2019) ...........................................8

*Williams v. Brennan,*
    320 F. Supp. 3d 122 (D.D.C. 2018) ...........................................5

*Williams v. Fam. Health Int'l,*
    Civ. A. No. 24-2654, 2025 WL 2506580 n.2 (D.D.C. Sept. 2, 2025) ...........................................20, 21

*Wilson v. Noem,*
    Civ. A. No. 20-0100, 2025 WL 1000666 (D.D.C. Apr. 3, 2025) ...........................................16, 24

*Young v. Perdue,*
    Civ. A. No. 19-2144, 2024 WL 3967358 (D.D.C. Aug. 26, 2024) ...........................................15, 23

**Statutes**

5 U.S.C. § 2302(a)(2)(A) ...........................................12, 13
29 U.S.C. § 633a(a) ...........................................10
42 U.S.C. § 2000e-2(a)(1) ...........................................10, 11
42 U.S.C. § 2000e-16(a) ...........................................9, 10, 11

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Defendant John Phelan, Secretary of the Navy, respectfully moves to dismiss Counts I, II, and III of Plaintiff Kathryn Rucker Krepp's Complaint (ECF No. 1) for failure to state a claim.

## INTRODUCTION

Plaintiff in this Title VII action is a civilian Navy employee who alleges hostile work environment, retaliation, and gender discrimination claims.  In an interesting twist, however, it is Plaintiff herself who is credibly accused of gender discrimination.  As the hiring manager for a position in her office, Plaintiff received from the Office of Civilian Human Resources ("OCHR") a certificate with four male candidates for employment.  Rather than interview the finalists, Plaintiff emailed an HR specialist to cancel the announcement:  "The list you shared only contained resumes for men.  It's 2024 and I'm not comfortable with only interviewing men for this job." Plaintiff's leadership removed her from the selection panel for having "attempted to exclude qualified candidates for consideration based on gender" and, based on this and other misconduct, proposed her removal from the civilian service.  Compl. ¶ 34, Ex. D at 2–3.

Trying to turn the tables, Plaintiff now asserts that she was the victim, not the perpetrator, of gender discrimination and unlawful retaliation.  What Plaintiff lacks, however, are factual allegations that would render those claims plausible.  Her gender discrimination claim rests largely on a modest collection of perceived workplace slights and lacks comparators or allegations probative of discriminatory intent.  For her retaliation claim, any inference that might arise from temporal proximity is defeated by her own Complaint, which presents material strongly suggesting that Plaintiff's own discriminatory conduct resulted in the consequences she now protests. Because Plaintiff's other factual allegations do not "dispel" this "obvious alternative explanation[]" for any adverse action against her, Plaintiff's discrimination and retaliation claims are not plausible.  *Ho v. Garland*, 106 F.4th 47, 51 (D.C. Cir. 2024).

Plaintiff's claims also suffer from other threshold defects. The harms she alleges are not cognizable as adverse actions under Title VII and are not "materially adverse" for purposes of her retaliation claim. And her factual allegations fall well short of establishing the severe, pervasive harassment required for a hostile work environment claim. For these reasons as well, Plaintiff fails to state a claim for discrimination, retaliation, or a hostile work environment.

## BACKGROUND

**Factual Background.** Plaintiff Kathryn Rucker Krepp is a civilian employee of the Department of the Navy. Beginning in March 2020, she was a program manager serving as Director, Director's Action Group ("DAG") within the Naval Heritage and History Command ("NHHC"). In that capacity, she developed briefings, decision papers, and other materials related to the NHHC, which manages various Navy museums and oversees the conservation of records and cultural property for the Navy. During the period relevant to the Complaint, the NHHC was led by Rear Admiral (Retired) Samuel Cox and Captain (Retired) Patrick Burns, who were serving as NHHC Director and NHHC Deputy Director, respectively. Compl. ¶¶ 11–19.

The Complaint alleges that beginning in approximately 2020, NHHC leadership "undertook a pattern [of] explicit and retaliatory behavior" directed at Plaintiff. Compl. ¶ 23. As examples of this conduct, Plaintiff alleges that approval of her telework agreement was delayed by four months, leadership referred to her as the "speech police" for her opposition to the use of misogynous epithets in the office, and leadership "routinely 'call[ed] out' Plaintiff for attempting to assist other female employees to help them resolve their pay, harassment, and other issues." Compl. ¶ 23(a), (b), (f).

Beginning in February 2024, the Complaint further alleges, Plaintiff was designated as the hiring official for a Deputy Director of the DAG. Compl. ¶¶ 24–36. After no applicants were hired based on the first vacancy announcement in March 2024, Plaintiff and the Office of Civilian

Human Resources ("OCHR") arranged to advertise the vacancy again. Compl. ¶¶ 26–32. Plaintiff took issue with the length of time the vacancy was advertised and the policy favoring the selection of veterans. Compl. ¶ 31. Plaintiff reviewed the four qualified candidates selected by OCHR for consideration and, instead of proceeding to interviews, Plaintiff instructed OCHR to cancel the position advertisement. Compl. ¶ 32. As justification for cancelling the announcement, Plaintiff emailed OCHR that the list of qualified candidates she received "only contained resumes for men," and Plaintiff was "not comfortable with only interviewing men for this job." Compl. Ex. D at 2; *see also id.* (describing Plaintiff's statement that "there were no women listed on the certificate, and that [Plaintiff] w[as] not going to hire any men").[1] In July 2024, The NHHC Deputy Director then removed Plaintiff from the selection panel and replaced her with a female NHHC employee. Compl. ¶ 34, Ex. A at 2.

Plaintiff's Complaint also recounts other workplace disputes. Plaintiff contends that her performance plan was modified to include responsibilities assigned to other employees, and her performance evaluations were negatively affected, Compl. ¶ 23(c); leadership "attempted to discipline Plaintiff" for meeting with congressional staff, Compl. ¶ 23(d); and leadership "exclude[ed] Plaintiff from senior staff meetings and working lunches" to which Plaintiff believes she should have been invited, Compl. ¶ 23(e). Plaintiff further contends that she was unfairly blamed for failing to coordinate with the Navy Museum Development Fund on congressional engagement in support of museum funding. Compl. ¶¶ 37–42; *see also* Compl. ¶¶ 51–54.

In September 2024, the NHHC Deputy Director issued Plaintiff a Notice of Proposed Removal, citing three charges. Compl. Ex. D. The first, Conduct Unbecoming a Supervisor, cited

---

[1]    On a motion to dismiss, this Court may consider "documents . . . attached to or incorporated in the complaint," such as the Notice of Proposed Removal attached to the Complaint as Exhibit D. *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

her refusal to consider male candidates as a hiring official earlier that year and her misrepresentations to leadership regarding her lack of coordination with the Navy Museum Development Foundation ("NMDF"). Compl. Ex. D at 2–3. The second, Failure to Follow Instructions, arose from Plaintiff's failure to respond to questions in July 2024 regarding the hiring dispute and misrepresentations regarding the NMDF and congressional engagement. Compl. Ex. D at 3–4. The third, Lack of Candor, related to Plaintiff's alleged misrepresentations to leadership regarding arrangements for a congressional briefing in February 2024. Compl. Ex. D at 4. At Plaintiff's request, an official outside the NHHC was appointed as the Deciding Official for the proposed removal. Compl. ¶ 45. That official noted that Plaintiff's "continued exchange with the Human Resources team about males on the certification list . . . could easily suggest [Plaintiff was] disregarding the requirements of Title VII," but—placing significant weight on Plaintiff's "many years of dedicated federal service"—decided not to effect her removal. Compl. Ex. F at 1. Plaintiff had been placed on paid administrative leave during the pendency of the proposed removal, but has now been detailed to an assignment outside the NHHC. Compl. ¶¶ 49–50.

**Procedural History.** Plaintiff first contacted an Equal Employment Opportunity ("EEO") Counselor regarding alleged gender discrimination on June 7, 2024, and filed a formal discrimination complaint on July 16, 2024. Compl. Ex. A at 5. Plaintiff amended her EEO complaint three times, Compl. ¶ 57, and her claims were dismissed in part by the Navy's EEO office as untimely. Compl. Ex. B. The EEO office notified Plaintiff in June 2025 that it would be unable to complete its investigation into her remaining claims before September 2025, Compl. Ex. C, and Plaintiff filed this lawsuit in July 2025, alleging gender discrimination (Count I), a hostile work environment (Count II), retaliation (Count III), and a violation of the Freedom of Information Act (Counts IV and V).

## STANDARD OF REVIEW

A motion made under Rule 12(b)(6) tests whether a complaint has successfully "state[d] a claim upon which relief can be granted." While detailed factual allegations are not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or a "formulaic" recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible only when a plaintiff pleads factual content that enables the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must assume that any "well-pleaded factual allegations" in a complaint are accurate, conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679. This standard applies with full force in employment discrimination cases: "If a Title VII plaintiff fails to plead sufficient factual matter to state a discrimination claim that is plausible on its face, then the district court should dismiss the case before discovery." *Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (internal quotation marks omitted).

## ARGUMENT

**I.    Plaintiff's Claims Related to Discrete Acts Before April 23, 2024 Are Not Exhausted.**

To the extent Plaintiff's Complaint raises claims of discrete acts occurring before April 23, 2024—forty-five days before she first contacted an EEO counselor on June 7, 2024, *see* Compl. Ex. A at 5—her claims are barred for failure to administratively exhaust her remedies.

Title VII requires a federal employee to exhaust administrative remedies before filing suit in federal court. *Spinelli v. Gross,* 446 F.3d 159, 162 (D.C. Cir. 2006); *Williams v. Brennan,* 320 F. Supp. 3d 122, 127-28 (D.D.C. 2018); *Hill v. Kempthorne*, 577 F. Supp. 2d 58, 64 (D.D.C. 2008)

(collecting cases). To exhaust a claim, "[a]n employee of the federal government who believes he or she has been subject to discrimination is first required to 'initiate contact' with an EEO counselor within forty-five days of the allegedly discriminatory action." *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 171 (D.D.C. 2012) (quoting 29 C.F.R. § 1614.105(a)(1)).  As the Supreme Court stated in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *Id.* at 108 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980)). "The purpose behind the regulation is to provide the agency notice and an opportunity to rectify any wrong through the conciliation process or through administrative relief." *Howard v. Evans*, 193 F. Supp. 2d 221, 227–28 (D.D.C. 2002). Only after a plaintiff has timely sought counseling and exhausted his administrative remedies may this Court hear the subject matter of a claim. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985).

Critically, each discrete claim of discrimination or retaliation must be separately exhausted. *Terveer v. Billington*, 34 F. Supp. 3d 100, 112 (D.D.C. 2014) ("Since *Morgan*, courts in the District of Columbia Circuit have largely refused to take jurisdiction over unexhausted claims of discrete discriminatory acts, such as terminations that occur following the filing of an administrative charge."); *Jones v. Ass'n of Am. Med. Colleges*, Civ. A. No. 22-1680, 2023 WL 2327901, at *5 (D.D.C. Mar. 2, 2023) ("[A]s a general rule, a Title VII plaintiff must timely exhaust administrative remedies for each discrete act of discrimination or retaliation alleged, even if the acts are related." (alterations omitted)).

The exhaustion requirement, applied here, sweeps away any discrete acts claims based on many of the workplace slights described in Plaintiff's complaint.  This includes, for example, Plaintiff's claims that her supervisors recommended an unfair change in her performance plan

(2023), the NHHC Deputy Director did not invite Plaintiff to his holiday party (2023), and the NHHC Deputy Director "rolled his eyes" at a reference to Plaintiff (February 2024). Compl. ¶ 51, Ex. B at 3–4. The same conclusion applies to two stray uses of derogatory terms by unnamed NHHC personnel in February 2024 and October 2023. Compl. Ex. A at 2.[2] To the extent Plaintiff contends these allegations are relevant to her claim of an ongoing hostile work environment, rather than a discrete acts claim, that theory is addressed in Section II, *infra*.

## II.    Plaintiff's Hostile Work Environment Claim Fails Because She Does Not Allege Sufficiently Severe and Pervasive Harassment (Count II).

Plaintiff does not plausibly allege a hostile work environment under Title VII. A hostile work environment exists only when a "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). In determining whether this standard is met, courts must "look at the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Smith v. Jackson*, 539 F. Supp. 2d 116, 137 (D.D.C. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)); *see also Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015) (noting that "occasional name-calling, rude emails, lost tempers and workplace disagreements" are "the kind of conduct courts frequently deem uncognizable under Title VII"). Hostile work environment claims are subject to dismissal when the Plaintiff "fail[s] to allege misconduct that meets the legal threshold

---

[2]    Plaintiff's EEO complaint also describes a contentious exchange at an "October 23, <u>2024</u> staff meeting," Compl. Ex. A at 2 (emphasis added), but this appears to be a typographical error, as the complaint was submitted in July 2024.

for a hostile work environment claim." *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 10 (D.D.C. 2019); *see also Baird*, 792 F.3d at 172 (dismissing complaint).

Here, Plaintiff's allegations fall well below this threshold.  *See* Compl. ¶¶ 23, 51–56. Plaintiff's exclusion from certain workplace meetings and lunches, inadequate air conditioning, adjustments to her performance plan, and back-and-forth with supervisors and human resources personnel regarding leave (for example) plainly do not create an "abusive working environment." *Morgan*, 536 U.S. at 116.  The same conclusion applies to criticism of her job performance from the NHHC Deputy Director.  And the alleged "delay[]" in the approval of Plaintiff's telework agreement likewise comes "nowhere near satisfying the . . . standard" for a hostile work environment.  *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 8 (D.D.C. 2019) (discussing alleged denial of "an award, the opportunity to telecommute, certain training, and a transfer").  While Plaintiff recounts a considerable number of incidents, she cannot rely on the "sheer volume" of her grievances to plead a hostile work environment claim.  *Baird*, 792 F.3d at 172 ("[A] long list of trivial incidents is no more a hostile work environment than a pile of feathers is a crushing weight.").

A similar conclusion holds for allegations that the NHHC Deputy Director referred to Plaintiff as the "speech police" and that, on two occasions, unspecified people used misogynist epithets to denigrate women.  *See* Compl. ¶ 23(b), Ex. A at 2 (item 3).  The "speech police" comment was at most "occasional name calling" that is not cognizable under Title VII.  *Baird*, 792 F.3d at 171.  And the crude epithets Plaintiff reports were also not actionable, especially as they were isolated, not directed at Plaintiff, and not uttered by leadership.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (noting that "'mere utterance of an . . . epithet which engenders offensive feelings in [an] employee' does not sufficiently affect the conditions of employment to implicate

Title VII" (citation omitted)); *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 97 (D.D.C. 2007) (quoting *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989), for the proposition that for a hostile work environment claim, "[t]he incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive"). Taken together, then, Plaintiff's allegations are plainly insufficient to state a hostile work environment claim.

**III.    <u>Plaintiff's Does Not Plausibly Plead a Gender Discrimination Claim (Count I).</u>**

Plaintiff's gender discrimination claim fares no better. As an initial matter, many or all of the discrete acts she identifies—including her proposed removal and her displacement from the hiring panel from a position in her office—are not cognizable as adverse actions for purposes of a discrimination claim. Moreover, she does not plausibly allege that any adverse acts resulted from gender discrimination, especially in light of the obvious alternative explanation for those acts—namely, Plaintiff's own well-documented use of her authority to exclude employment applicants from consideration based on gender.

**A.    Most or All of Plaintiff's Allegations Do Not Relate to an Adverse "Personnel Action."**

Unlike the provisions of Title VII applicable to private employers, the narrower federal sector provisions of that statute only reach discrimination in "personnel actions." 42 U.S.C. § 2000e-16(a). Most of the actions Plaintiff contests—including her proposed removal, which was never effected—do not constitute personnel actions and therefore cannot be the basis of a gender discrimination claim under Title VII.

**1.    <u>The Federal Sector Provisions of Title VII Apply.</u>**

The federal sector provisions of Title VII provide that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination."

- 9 -

42 U.S.C. § 2000e-16(a).  The Civil Service Reform Act defines "personnel actions" to include an appointment, promotion, disciplinary action, transfer or reassignment, reinstatement, performance evaluations, decision concerning pay, benefits, or awards. 5 U.S.C. § 2302(a)(2)(A)(i)–(xi).  This definition includes other, unenumerated "change[s] in duties, responsibilities, or working conditions" only if they are "significant." *Id.*  The Supreme Court in *Babb v. Wilkie*, 589 U.S. 399, 405 (2020), agreed that the Civil Service Reform Act's definition of "personnel action" was "consistent with the term's meaning in general usage," and assumed it had the same meaning for purposes of the federal-sector provisions of the Age Discrimination in Employment Act ("ADEA"), which parallel those of Title VII.  *Compare* 29 U.S.C. § 633a(a) (ADEA), *with* 42 U.S.C. § 2000e-16(a) (Title VII).

The Court in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), clarified the standard applicable to private and state and local government employers for assessing the existence of an adverse action under Title VII.  *Id.* at 354 (discussing 42 U.S.C. § 2000e-2(a)(1)).  In *Muldrow*, the Supreme Court rejected a reading requiring an employee to demonstrate that an alleged transfer resulted in "significant" harm to be actionable under the non-federal provisions of Title VII.  *Id.* The Court reasoned that while an employee "must show *some harm* respecting an identifiable term or condition of employment" the employee need not show that harm caused "significant disadvantages[.]"  *Id.* at 354–55 (emphasis added; "To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment. What the transferee does not have to show, according to the relevant text, is that the harm incurred was 'significant.'").  Notably, the Court's holding in *Muldrow* effectively displaces the decision rendered by the en banc D.C. Circuit in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir.

2022).  *See Muldrow*, 601 U.S. at 364–65 (Kavanaugh, J., concurring) (noting that the Court's standard of "some harm" differs from that described in *Chambers*).

Accordingly, were the federal sector provisions of Title VII coextensive with those applicable to non-federal employers, an employee attempting to bring a Title VII claim must identify an alleged event affecting their "compensation, terms, conditions, or privileges of employment" that caused "some harm."  *Id.*  But the provisions at issue here applicable to Defendant differ from those applicable to non-federal employers.  The non-federal provision of Title VII (§ 2000e-2(a)(1)) considered by the Court in *Muldrow* uses different language from the provision of Title VII applicable to the federal government (§ 2000e-16(a)).  Specifically, the non-federal provisions of Title VII outlaw discrimination "with respect to [an employee's] compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), whereas the federal provisions prohibit discrimination with respect to "personnel actions," 42 U.S.C. § 2000e-16(a).  The Court should honor Congress's choice to create different standards for federal and non-federal employers and apply the text of Title VII as written.

The difference in wording is meaningful as the Supreme Court has ruled in considering similar text in the ADEA, which has different provisions for federal and non-federal employers.  *Babb*, 589 U.S. at 410 ("as we previously recognized, the ADEA's private- and public-sector provisions are 'couched in very different terms'" (quoting *Gomez-Perez v. Potter*, 553 U.S. 474, 487 (2008)).  In *Gomez-Perez*, the Court considered the wording of the ADEA's federal sector provision, holding, "[t]he ADEA federal-sector provision was patterned 'directly after' Title VII's federal-sector discrimination ban."  553 U.S. at 487 (comparing text and collecting citations).  In so doing, the Court noted that while "Title VII's federal-sector provision incorporates certain private-sector provisions" it does not incorporate them all.  *Id.*

In *Babb*, 589 U.S. at 410, the Supreme Court further explained the differences in the wording of the federal and non-federal provisions of the ADEA, which again are almost identical to those found in Title VII. *See id.* The Court emphasized that equating the scope of the two provisions was misplaced when they used different words. It noted, "Congress could have easily used the same language in both provisions "[b]ut Congress did not choose this route. Instead, it 'deliberately prescribed a distinct statutory scheme applicable only to the federal sector,' and in doing so, it eschewed the language used in the private-sector provision[.]" *Id.* at 412 (citations omitted). In considering the distinct federal sector provisions of the ADEA, the Court observed that the ADEA's federal sector provisions, as those of Title VII, concern "personnel actions." *Id.* at 405. Specifically, it reasoned:

> Section 633a(a) concerns "personnel actions," and while the ADEA does not define this term, its meaning is easy to understand. The Civil Service Reform Act of 1978, which governs federal employment, broadly defines a "personnel action" to include most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews. *See* 5 U.S.C. § 2302(a)(2)(A). That interpretation is consistent with the term's meaning in general usage, and we assume that it has the same meaning under the ADEA.

*Id.*

Some judges in this District have declined to adopt this straightforward textual application of the Title VII and ADEA federal sector standards in the wake of *Chambers*, relying on pre-*Babb* precedents such as *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), which construed Title VII's federal and non-federal provisions as coterminous. *See, e.g.*, *Bain v. Off. of Att'y Gen.*, Civ. A. No. 21-1751 (RDM), 2022 WL 17904236, at *21 (D.D.C. Dec. 23, 2022) (citing pre-*Babb* authorities); *Garza v. Blinken*, Civ. A. No. 21-2770 (APM), 2023 WL 2239352, at *5 (D.D.C. Feb. 27, 2023) (same). Respectfully, following this path runs contrary to the clear and necessary holding of *Babb* and the plain text of the federal anti-discrimination provisions. For example, in *Czekalski*, the D.C. Circuit in setting forth the standard for an adverse action noted that while the

- 12 -

federal sector "language differs from that of the provision governing private employers, we have held that the two contain identical prohibitions." *Czekalski*, 475 F.3d at 363 (citation omitted; collecting cases). But in *Babb*, decided in 2020 more than a decade after the D.C. Circuit's decision in *Czekalski*, the Supreme Court rejected that theory and, instead, held that when anti-discrimination statutes use different language in their federal and non-federal provisions they should not be interpreted the same. *Babb*, 589 U.S. at 411 (the federal sector provision of the ADEA, which are nearly identical to Title VII, "is markedly different from the language" of its non-federal provision and warrants a different standard).

Accordingly, for an event to be actionable under the federal sector provisions of Title VII the identified event must either be an enumerated "personnel action" under the Civil Service Reform Act, 5 U.S.C. § 2302(a)(2)(A)(i)–(xi), or fall into that term's catch-all (i.e., "any other significant change in duties, responsibilities, or working conditions," 5 U.S.C. § 2302(a)(2)(A)(xii)), and that employee must suffer "some harm" from the alleged event (i.e., that the event was "adverse").

Applying that standard here, most of the actions alleged by Plaintiff are not actionable as gender discrimination because they are not "personnel actions" within the meaning of the federal sector provisions of Title VII. For example, the proposed removal of Plaintiff described at length in the complaint, Compl. ¶¶ 43-47, is not cognizable as discrimination under Title VII because it was never effected, Compl. ¶ 48 & Ex. F. Simply put, it was not a "personnel action," but rather a *proposed* personnel action that never occurred. *See* 5 U.S.C. § 2302(a)(2)(A). As to her temporary placement on paid administrative leave and her displacement as a hiring official for a particular vacancy are likewise not "*significant* change[s] in duties, responsibilities, or working conditions," 5 U.S.C. § 2302(a)(2)(A)(xii), and a similar observation applies to Plaintiff's

allegations of delayed approval of a telework agreement and other administrative inconveniences described in Plaintiff's Complaint.[3]

       2.     <u>Plaintiff Does Not Allege "Some Harm" to a Term or Condition of Employment</u>

Courts in this District that reject the "personnel action" requirement described in the preceding subsection instead apply the non-federal provisions of Title VII, which require that a Plaintiff "allege 'some harm' regarding the terms and conditions of his employment." *Phelan v. Noem*, Civ. A. No. 24-0939, 2025 WL 2732749, at *7 (D.D.C. Sept. 25, 2025) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)). That test, if it were applied here, would demonstrate that no act of alleged discrimination described in the Complaint is an adverse action for purposes of Title VII.

*Proposed Removal.* The proposed removal of Plaintiff described at length in the complaint, Compl. ¶¶ 43–47, is not cognizable as discrimination under Title VII because it was never effected and therefore never resulted in a change to the "terms and conditions" of Plaintiff's employment, Compl. ¶ 48 & Ex. F. This is because "an unrealized risk of future adverse action, even if formalized, is too ephemeral to constitute an adverse employment action." *Russell v. Principi*, 257 F.3d 815, 819–20 (D.C. Cir. 2001); *see also Palmer v. Dep't of the U.S. Air Force*, No. 24-3755, 2025 WL 2932925, at *3 (6th Cir. Oct. 15, 2025) (applying *Muldrow*; plaintiff's "notice of proposed removal" was not an adverse employment action because it "d[id] not . . . result in changes to the terms or conditions of Palmer's employment"); *Teffera v. Turner*, Civ. A. No. 23-3803, 2025 WL 1900694, at *9 (D.D.C. May 28, 2025) (collecting cases for proposition that in the

---

[3]    It is true that certain "performance evaluation[s]" are personnel actions, *see* 5 U.S.C. § 2302(a)(2)(A)(viii), but Plaintiff's 2024 "Fully Successful" rating (Compl. ¶ 52 & Ex. B at 2) did not violate Title VII for reasons described elsewhere in this motion.

retaliation context, "courts in this district have consistently held that a notice of proposed removal 'ordinarily does not state a materially adverse action,'" because "'[n]o tangible harm or materially adverse consequence' flow[s] directly from it").

*Paid Administrative Leave.*    Similarly, "[c]ourts in this district have generally held that 'suspension with pay' does not 'constitute an adverse employment action.'" *Young v. Perdue*, Civ. A. No. 19-2144, 2024 WL 3967358, at *5 (D.D.C. Aug. 26, 2024), *aff'd*, No. 24-5213, 2025 WL 2649111 (D.C. Cir. Sept. 12, 2025); *see also Jones v. Castro*, 168 F. Supp. 3d 169, 179 (D.D.C. 2016) (holding that "placement on paid administrative leave does not itself constitute an adverse action under either the discrimination standard or the retaliation standard" of Title VII).    The Complaint's factual allegations reinforce this conclusion, as Plaintiff herself concluded that it "would be inappropriate" for her to "return to NHHC" while her proposed removal was pending, and she was then, "at her request," "placed . . . in a temporary position of appropriate rank and responsibility until the resolution of this case."  Compl. ¶¶ 49–50.

*Displacement as Hiring Official.*    Plaintiff also alleges that after a vacancy in the Director's Action Group was twice advertised, and after Plaintiff had a series of contentious exchanges with human resources personnel about the selection, the Deputy Director "removed Plaintiff from the selection panel."  Compl. ¶ 34.  But this is not an "injury . . . concern[ing] the terms or conditions of [Plaintiff's] employment.  *Muldrow*, 601 U.S. at 358.

*Performance Review.*    To the extent Plaintiff contends her performance appraisal rating of "Level 3—Fully Successful" was an act of gender discrimination for Title VII purposes, Compl. ¶ 52 & Ex. B, at 2, this argument fails as well.  "[C]aselaw from this district . . .  require[s] a performance review to have some identifiable negative effect on the terms, conditions, or privileges of employment before it will be considered an adverse employment action for the

purposes of an intentional discrimination claim." *Wilson v. Noem*, Civ. A. No. 20-0100, 2025 WL 1000666, at *25 (D.D.C. Apr. 3, 2025) (collecting cases).  Plaintiff's Complaint contains no such allegations.

*Administrative Trivia*.  Plaintiff's Complaint contains alleges a number of other alleged slights, delays, misunderstandings, and inconveniences, but none rise to the level of an adverse action.  That is because *Muldrow* requires "some harm respecting *an identifiable term or condition of employment*." 601 U.S. at 354–55 (emphasis added).  So, for example, "merely refusing an employee's request to telework" is not actionable, "because there is no 'identifiable term or condition of employment' that has been harmed by the denial." *Wilson*, 2025 WL 1000666, at *22; *cf*. Compl. ¶ 23(a) (alleging delay in approval of telework agreement).  Plaintiff's routine disagreements and misunderstandings with her supervisors and with human resources personnel likewise do not qualify.  *See Montgomery v. McDonough*, 682 F. Supp. 3d 1, 16 (D.D.C. 2023) ("several scuffles and contentious meetings" did not "qualify as adverse actions").  In short, Plaintiff has failed to allege the type of adverse action that would support a gender discrimination claim under Title VII.

## B.   Plaintiff Does Not Plausibly Allege That Any Adverse Action Was Caused by Discrimination.

Even if Plaintiff alleged an adverse action, her claim would fall at the second hurdle: she fails to plausibly allege causation.  To survive a motion to dismiss, Plaintiff "must plead facts sufficient to allow a plausible inference that the challenged action was taken because" of her gender. *Dagdagan v. Driscoll*, Civ. A. No. 23-3935, 2025 WL 3033726, at *2 (D.D.C. Oct. 30, 2025) (quoting *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025)).  The plausibility standard "cannot be reduced to a mechanical formula; it is sensitive to the specific context of each case, and courts must draw on their 'judicial experience and common sense' in

determining whether it is met." *Joyner*, 140 F.4th at 530 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Two considerations weigh strongly against Plaintiff here, and we discuss them in turn.

        1.      <u>Plaintiff Fails To Plausibly Allege Disparate Treatment, via Comparators or Otherwise.</u>

As an initial matter, Plaintiff's Complaint fails to advance any plausible theory of gender-based discrimination.  To survive a motion to dismiss, Plaintiff needed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  "This requires Plaintiff to make more than a 'bare assertion' of discrimination." *Dagdagan v. Driscoll*, Civ. A. No. 23-3935, 2025 WL 3033726, at *2 (D.D.C. Oct. 30, 2025) (quoting *Joyner*, 140 F.4th at 530 n.2).

Plaintiff here has failed to meet this relatively low bar.  The Complaint does not include factual allegations pointing to direct evidence of discriminatory intent, nor does it identify similarly situated comparators to bolster the plausibility of its allegations.  Instead, the Complaint focuses on a retaliation theory and, at least as to gender, includes only boilerplate allegations that gender was a motivating factor in any adverse action experienced by Plaintiff.  For this reason, Plaintiff's gender-based discrimination claims should be dismissed.  *See Dagdagan*, 2025 WL 3033726, at *2–3.

True, the exhibits to the Complaint include elements of what may be understood as a comparator theory.  For example, the Amended Notice of Partial Dismissal, attached as Exhibit B to the Complaint, describes an allegation that the NHHC Director "diminished [Plaintiff's] role . . . in the recruitment process for the Deputy DAG vacancy while he has never interfered with a male division director hiring individuals in their respective divisions."  Compl. Ex. B at 4.  The same

exhibit describes an allegation that the NHHC Director "is allowing[] Dave Adams, a male NHHC employee, to be responsible for building on the new National Museum of the U.S. Navy while working remotely . . . while [Plaintiff is] not afforded the same teleworking privileges." *Id*.

These allegations, however, are insufficient to state a claim under a comparator theory. First, there are good reasons not to "piece together" Plaintiff's theory of the case from clues scattered throughout the exhibits, *Prescott-Harris v. Fanning*, Civ. A. No. 15-1716, 2016 WL 7223276, at *7 (D.D.C. Dec. 12, 2016), especially as Plaintiff here is represented by counsel. *See, e.g.*, *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983) (plaintiff "cannot generally be permitted to shift the burden of litigating his case to the courts"). After all, it is Plaintiff's burden to present a short and plain statement of her claim. Fed. R. Civ. P. 8(a)(2).

Second, these comparator allegations are far too conclusory to pass muster under *Twombly* and *Iqbal*. "At the pleadings stage," a comparator theory "requires the complaint to contain 'allegations that a comparator was similarly positioned to the plaintiff in at least some relevant respects, and include[] enough detail that [the court] could plausibly infer that discrimination caused the defendant's differential treatment of the plaintiff.'" *Dagdagan*, 2025 WL 3033726, at *2 (D.D.C. Oct. 30, 2025) (alterations in original) (quoting *Joyner*, 140 F.4th at 531). Plaintiff's claims fall well short here. As to the change in hiring responsibility, for example, other unnamed "male division directors hiring individuals" are inapt comparators. After all, Plaintiff cancelled a vacancy announcement to avoid hiring a candidate of a gender she disfavored. This distinction renders Plaintiff's generic comparator class as not similarly situated. And as to telework, the proffered comparator did not have duties analogous to Plaintiff's, as he was managing a museum building project rather than directing the "Director's Action Group." *Compare* Compl. Ex. B at 4 (supposed comparator) *with* Compl. ¶ 19 (Plaintiff's responsibilities).

Other similar allegations in the Complaint's exhibits suffer from the same infirmity, as they refer broadly to potential comparators without alleging sufficient factual matter to support an inference that the comparison is valid. *See Joyner*, 140 F.4th at 531 ("[I]t cannot be enough to simply allege that the plaintiff was treated differently from a 'similarly situated' comparator, without additional allegations showing the comparators are in fact 'similarly situated' in some meaningful respect.").

   2.    Plaintiff's Own Pleadings Provide an Obvious Alternative Explanation for the Allegedly Discriminatory Actions.

Even if Plaintiff had advanced particularized factual allegations supporting an inference of gender discrimination, her discrimination claim would fail for an additional reason. Plaintiff's Complaint provides, in exquisite detail, the non-discriminatory rationale for her proposed removal: she repeatedly refused to proceed with a hiring action because the list of certified candidates contained "only men." Compl. Ex. D, at 2–3. This "obvious alternative explanation" for the employer's supposedly discriminatory conduct, *Iqbal*, 556 U.S. at 682, amply supports dismissal of Plaintiff's Title VII claim here because it renders her conclusory allegations of discrimination implausible.

Courts uniformly conclude that "at the motion to dismiss stage," the Plaintiff must at least "dispel any 'obvious alternative explanations'" for the allegedly discriminatory action. *Ho*, 106 F.4th at 54 (alterations omitted). A recent D.C. Circuit decision illustrates the rule. In *Joyner v. Morrison & Foerster LLP*, the Court encountered a Section 1981 and Title VII case alleging racial discrimination. 140 F.4th 523. As relevant here, the plaintiff alleged that his request to work remotely was denied due to discrimination, but he also "attached to his complaint an email suggesting the request was denied because" he had misdirected his request in violation of his company's policy. *Id.* at 533–34. Concluding that the plaintiff's "own pleadings raise—and then offer nothing to rebut—at least one alternative explanation for" the defendant's denial of his

request, the Court observed that this alternative explanation "confirms that discrimination is not a plausible inference" and affirmed the district court's dismissal of the complaint. *Id*. at 534; *see also Williams v. Fam. Health Int'l*, Civ. A. No. 24-2654, 2025 WL 2506580, at *8 n.2 (D.D.C. Sept. 2, 2025) (dismissing complaint where "[p]laintiff essentially alleges that [defendant] provided a logical, nondiscriminatory reason" for the contested action and "[p]laintiff does not allege other facts that allow for a competing inference of discrimination to sustain her claim").

This same logic mandates dismissal of Plaintiff's discrimination claims here. The Complaint recounts Plaintiff's role as hiring official for a deputy position in the office she directed. Compl. ¶¶ 24–25. After the first announcement of the position did not result in a selection, Compl. ¶¶ 26–27, the position was announced a second time. Plaintiff then clashed with human resources officials regarding the length of time the vacancy would be advertised and whether veteran's preference rules would apply. Compl. ¶¶ 28–31. According to the Complaint, Plaintiff then "expressed concern" that only four applicants were found qualified, reviewed the applicants' resumes, and cancelled the announcement "with the intent of finding ways to expand the qualified pool of applicants." Compl. ¶ 32. Cryptically, the Complaint then alleges that Plaintiff's manager "found Plaintiff's desire to hire the most qualified candidate 'created the appearance of . . . excluding qualified applicants from consideration . . . on the basis of gender,'" and removed her from the selection panel. Compl. ¶ 34 (first alteration in original).

The puzzling reference to Plaintiff "excluding qualified applicants from consideration . . . on the basis of gender" is illuminated elsewhere in the Complaint. The Notice of Proposed Removal, attached to the Complaint as Exhibit D, catalogs verbatim some of Plaintiff's remarks on gender and hiring, including this email from Plaintiff:

- 20 -

> Please cancel the announcement. The list you shared only contained resumes for
> men. It's 2024 and I'm not comfortable with only interviewing men for this job.
> I'll work with Charmain to submit a new announcement.

Compl. Ex. D at 2 (quoting Reference D, a series of emails dating from June 12-26, 2024). Other

comments from Plaintiff cited in the Notice are to the same effect. *See, e.g.*, *id.* (Plaintiff told

human resources personnel "that there were no women listed on the certificate, and that [Plaintiff]

w[as] not going to hire any men"). Although the Complaint gamely tries to reframe and

recharacterize Plaintiff's statements as intended to "find[] ways to expand the qualified pool, not

just for women but all qualified candidates," Compl. Ex. E at 5–6, the Complaint does not appear

to dispute the authenticity of the quoted email or other communications. *See generally* Compl.

¶¶ 28–36, Ex. E at 3–8. The Notice of Proposed Removal cited these exchanges as proof that

Plaintiff had exhibited conduct unbecoming a supervisor, and this is the obvious alternative

explanation for Plaintiff's proposed removal, her placement on paid administrative leave, and her

removal from the selection panel for that vacancy. Compl. Ex. D at 2–3. Even the decision to

ultimately *not* remove Plaintiff from the civilian service—rendered by an official outside the

NHHC and outside Plaintiff's chain of command, Compl. ¶ 45—recognized the gravity of these

concerns, finding that Plaintiff's "continued exchange with the Human Resources team about

males on the certification list . . . could easily suggest [Plaintiff was] disregarding the requirements

of Title VII." Compl. Ex. F at 1.[4]

---

[4]    The same conclusion would hold if Plaintiff did not attach these documents to the
Complaint, for a court ""may consider any documents . . . incorporated by reference in the
complaint" on a motion to dismiss. *Jud. Watch, Inc. v. FBI*, Civ. A. No. 18-2316, 2019 WL
4194501, at *1 n.1 (D.D.C. Sept. 4, 2019); *see also Golden v. Mgmt. & Training Corp.*, 319 F.
Supp. 3d 358, 366 n.2 (D.D.C. 2018) (explaining that "[i]n deciding a motion to dismiss" "[i]n
employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC
decisions").

The Notice of Proposed Removal's other allegations are to the same effect; Plaintiff's repeated lack of candor with her leadership and failure to follow instructions are also well-documented, as reflected in the Notice and its references, and further bolster the obvious alternative explanation for Plaintiff's proposed removal. *See* Compl. Ex. D at 2–4 (citing refs. (j)–(n)).

In short, Plaintiff has herself pleaded facts supporting an inference that her proposed removal resulted from her well-documented efforts to discriminate in the hiring process, as well as her lack of candor and failure to follow instructions. As between this "obvious alternative explanation" for the allegedly adverse actions and the "purposeful, invidious discrimination" Plaintiff asks the Court to infer, "discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at 682.

## IV.     <u>Plaintiff Does Not Plausibly Allege a Retaliation Claim (Count III).</u>

Plaintiff's retaliation claim likewise fails at the pleading stage for two reasons. First, the allegedly retaliatory acts she identifies do not count as "materially adverse." Second, any inference of causation is controverted by the "obvious alternative explanation" for Plaintiff's displacement from the hiring panel or her proposed removal from federal service—namely, Plaintiff's own well-documented attempts to discriminate on the basis of gender. *See Ho*, 106 F.4th at 51; *Howard R.L. Cook & Tommy Shaw Found. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (elements of retaliation claim).

### A.     Plaintiff Fails to Allege a Materially Adverse Action.

"To sustain a prima facie case of unlawful retaliation," Plaintiff must show that Defendant "took materially adverse action against [her] because [she] participated in protected activity." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013). As the Supreme Court has explained, not every adverse action will support a retaliation claim. The touchstone of the analysis is that a materially adverse action is one that "could well dissuade a reasonable worker from making or

supporting a charge of discrimination." *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009)

(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). The requirement of

*material* adversity "separate[s] significant from trivial harms" and forbids claims based on "petty

slights, minor annoyances, and simple lack of good manners." *Burlington*, 548 U.S. at 67–68. A

careful analysis of the allegedly retaliatory acts identified by Plaintiff show that they do not meet

this threshold.

   *Proposed Removal.* The proposed removal of Plaintiff described at length in the

Complaint, Compl. ¶¶ 43–47, is not a materially adverse action because it was never effected,

Compl. ¶ 48 & Ex. F. "[C]ourts in this district have consistently held that a notice of proposed

removal 'ordinarily does not state a materially adverse action,'" because "'[n]o tangible harm or

materially adverse consequence' flow[s] directly from it." *Teffera v. Turner*, Civ. A. No. 23-3803,

2025 WL 1900694, at *9 (D.D.C. May 28, 2025) (collecting cases).

   *Paid Administrative Leave.* Similarly, "placement on paid administrative leave does not

itself constitute an adverse action under either the discrimination standard or the retaliation

standard" of Title VII. *Jones v. Castro*, 168 F. Supp. 3d 169, 179 (D.D.C. 2016); *cf. Young v.

Perdue*, Civ. A. No. 19-2144, 2024 WL 3967358, at *5 (D.D.C. Aug. 26, 2024), *aff'd*, No. 24-

5213, 2025 WL 2649111 (D.C. Cir. Sept. 12, 2025) ("Courts in this district have generally held

that 'suspension with pay' does not 'constitute an adverse employment action.'").

   *Displacement as Hiring Official.* Plaintiff also alleges that after a vacancy in the Director's

Action Group was twice advertised, and after Plaintiff had a series of contentious exchanges with

human resources personnel about the selection, the Deputy Director "removed Plaintiff from the

selection panel." Compl. ¶ 34. "Typically, a materially adverse action in the workplace involves

'a significant change in employment status,'" *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir.

2013), and Plaintiff's removal as a selection panel member for the position in question does not meet this test. *See Chambers*, 35 F.4th at 874 ("[N]ot everything that happens at the workplace affects an employee's 'terms, conditions, or privileges of employment.'")

*Performance Evaluation*. Plaintiff takes issue with her 2024 performance appraisal rating of "Level 3—Fully Successful," Compl. ¶ 52 & Ex. B, at 2, but here, too, her "Fully Successful" rating does not clear the "materially adverse action" bar. "[W]here a plaintiff alleges that a disappointing, but not negative, performance evaluation constitutes a materially adverse action, the plaintiff must present evidence that the evaluations 'were attached to' specific and tangible 'financial harms.'" *Bridgeforth v. Salazar*, 831 F. Supp. 2d 132, 144 (D.D.C. 2011), *aff'd in relevant part*, No. 12-5015, 2012 WL 2371601 (D.C. Cir. June 15, 2012) (per curiam) (quoting *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009)). Plaintiff makes no such allegations here.

*Administrative Trivia*. Plaintiff counts a delay in approval of her telework agreement as part of a "pattern . . . of misogynistic and retaliatory behavior specifically toward Plaintiff," Compl. ¶ 23, but this allegation is likewise insufficient to support a retaliation claim. "[A]lthough the revocation of an existing telework arrangement may constitute a materially adverse employment action and support a retaliation claim, the denial of an 'initial telework request' does not." *Wilson*, 2025 WL 1000666, at *26; *see also Pauling v. District of Columbia*, 286 F. Supp. 3d 179, 207 (D.D.C. 2017) (finding "delay in providing the plaintiff with . . . telecommuting privileges" was not materially adverse action). A similar conclusion holds for the numerous workplace frustrations and difficulties encountered by Plaintiff, including criticism by the NHHC Deputy Director regarding Plaintiff's job performance in connection with the Navy Museum Development Fund, and disputes about accounting for leave or whether or not she signed her performance evaluation. These disagreements fall comfortably within that category of "petty slights or minor annoyances"

that are not actionable. *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013); *see also Baloch v. Norton*, 517 F. Supp. 2d 345, 356 (D.D.C. 2007), *aff'd*, 550 F.3d 1191 (D.C. Cir. 2008) (restrictions that "impose[] a negligible burden on the plaintiff's employment conditions mitigate any deterrent effect a reasonable employee would ascribe to them" are not actionable as retaliation).

**B.      Plaintiff Does Not Plausibly Allege Causation.**

Even if Plaintiff had identified a materially adverse action, Plaintiff does not "plead sufficient facts to support a plausible inference that [her] protected activity was a but-for cause" of the adverse actions she identifies. *Ho*, 106 F.4th at 51. As with gender discrimination, a Plaintiff advancing a retaliation claim must, "[a]t the motion to dismiss stage, . . . dispel any 'obvious alternative explanations'" for the allegedly retaliatory conduct. *Id.* at 54; *see also Arthur v. D.C. Hous. Auth.*, Civ. A. No. 18-2037, 2020 WL 7059552, at *5 (D.D.C. Dec. 2, 2020) ("A plaintiff may fail to meet her burden when, crediting all inferences in her favor, her charge of retaliation 'is not plausible in light of an "obvious alternative explanation."'" (alteration omitted)). And here, as with Plaintiff's gender discrimination claim, the obvious alternative explanation is evident on the face of the Complaint—Plaintiff was removed from the hiring panel, and was subject to a proposed removal from civilian service, for her well-documented efforts to discriminate against candidates of a different gender. *See supra*, § III.B.

While the causation analysis for the retaliation claim largely parallels the causation analysis for the gender discrimination claim, some additional considerations are relevant here. As an initial matter, the Complaint appears to adopt an untenably broad definition of what counts as "protected activity" in the retaliation context. While submitting an EEO complaint is clearly protected activity, the Complaint seems to evince a belief that Plaintiff has engaged in other protected activity as well. *See, e.g.*, Compl. ¶ 23(d) ("providing information" to congressional staff

- 25 -

regarding "sexual misconduct in the U.S. Coast Guard"); *id.* ¶ 52 ("'calling out' the behavior of the NHHC Director and Deputy Director"). However, the Complaint falls well short of plausibly alleging that Plaintiff's conversations with congressional staff or her "calling out" her supervisor amounted to "oppos[ing] 'a practice made an unlawful employment practice' by" Title VII. *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) ("[I]f the practice the employee opposed is not one that could reasonably and in good faith be regarded as unlawful under Title VII, this element is not satisfied."). Because Plaintiff does not plausibly allege protected conduct before her first EEO counselor contact in June 2024, Compl. Ex. A at 5, Plaintiff's claims to have been subject to retaliation since "approximately calendar year 2020" (or "2023"), Compl. ¶¶ 6, 22, are plainly implausible. *See Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 79 (D.D.C. 2009) ("The fact that the allegedly retaliatory actions preceded the protected activity precludes a determination that the protected activity caused the defendant to retaliate against the plaintiff.").

Perhaps the core of Plaintiff's retaliation claim is that her proposed removal in September 2024 was unlawful retaliation for her EEO counselor contact in June 2024 and her EEO complaint lodged in July 2024. *See* Compl. ¶ 43. If so, it is true that courts sometimes find that "[t]emporal proximity" between the protected activity and the alleged adverse actions can support an allegation of causation at the motion-to-dismiss stage. *E.g.*, *Heagney v. Bondi*, Civ. A. No. 24-2592, 2025 WL 1496315, at *11 (D.D.C. May 22, 2025); *see also Ho v. Garland*, 106 F.4th 47, 52 (D.C. Cir. 2024) (on motion to dismiss; noting "that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation"). But decisions on the topic are united by a common thread: "'neither the Supreme Court nor [the D.C. Circuit] has established a bright-line' rule" by which causation is established by temporal proximity. *Ho*, 106 F.4th at 52. Instead, "the D.C. Circuit has cautioned

district courts not to focus only on timing where other allegations also bear on causation." *Britt v. Washington Metro. Area Transit Auth.*, Civ. A. No. 23-0844, 2024 WL 3509484, at *9 (D.D.C. July 23, 2024).  While "[n]ormally, the relatively close proximity between the protected conduct" and the alleged adverse action might "raise 'a plausible inference of retaliation,'" that is not enough to establish plausibility where the Complaint presents "more likely explanations" for the supposed retaliation. *Scahill v. District of Columbia*, 271 F. Supp. 3d 216, 236–37 (D.D.C. 2017), *aff'd*, 909 F.3d 1177 (D.C. Cir. 2018) (dismissing First Amendment retaliation claim for lack of plausibility with one-month interval between protected conduct and supposed retaliation).  A similar conclusion is warranted here, where the obvious nonretaliatory rationale for Plaintiff's proposed removal appears so clearly on the face of the Complaint.

## CONCLUSION

For the foregoing reasons, Counts I, II, and III of Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted.


Dated: January 16, 2026                    Respectfully submitted,

                                           JEANINE FERRIS PIRRO
                                           United States Attorney

                                           By:＿＿＿＿＿＿*/s/ Andrew J. Vaden*＿＿＿＿＿
                                           ANDREW J. VADEN, D.C. Bar #1044860
                                           Assistant United States Attorney
                                           601 D Street, NW
                                           Washington, DC 20530
                                           (202) 252-2437

                                           *Attorneys for the United States of America*