# United States District Court
## for the District of Columbia

|  |  |  |  |
|---|---|---|---|
| Kathryn Rucker Krepp | : | | |
| | : | | |
| *Plaintiff* | : | | |
| | : | | |
| *vs.* | : | Case No.: | 1:25-cv-02371 (JMC) |
| | : | | |
| The Honorable John Phelan | : | | |
| Secretary of the Navy | : | | |
| | : | | |
| *Defendant* | : | | |
| | : | | |

## PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

**TABLE OF CONTENTS**

Table of Authorities ....... ii

I    **INTRODUCTION** ....... 1

II   **BACKGROUND** ....... 3

III  **PROCEDURAL BACKGROUND** ....... 7

IV   **STANDARD OF REVIEW** ....... 9

V    **ARGUMENT** ....... 10

A. Defendant's Continuing Course of Conduct ....... 10

B. Plaintiff's Hostile Work Conditions are Severe and Pervasive ....... 12

C. Plaintiff's Discrimination and Retaliation Claims are Plausible ....... 14

D. Plaintiff's Claims of Discrimination in Adverse Actions are Plausible ....... 16

E. Causal Proximity ....... 18

F. Discovery is Necessary ....... 20

VI   **CONCLUSION** ....... 21

**TABLE OF AUTHORITIES**

**Case(s)**                                                                 **Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................1, 10, 11, 13

*Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672 (D.C. Cir. 2009) .............3, 11, 13

*Ayissi-Etoh v. Fannie Mae,* 712 F.3d 572 (D.C. Cir. 2013) ............................................17

*Bain v. Off. of the Att'y Gen.*, 648 F. Supp. 3d 19 (D.D.C. 2022)....................................22

*Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008) ...................................................16, 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................1, 3, 10, 11, 13

*Brady v. Off. of Sergeant at Arms,* 520 F.3d 490 (D.C. Cir. 2008) .................................21

*Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999)...............................................................22

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) ............................................23

*Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022)....................................21, 22, 23, 27

*Cruz v. McAleenan*, 931 F.3d 1186 (D.C. Cir. 2019) .......................................................26

*Czekalski v. Peters*, 475 F.3d 360 (D.C. Cir. 2007)..........................................................22

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ........................................................11

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ......................................................16, 17

*Fennell v. AARP*, 770 F. Supp. 2d 118 (D.D.C. 2011) .....................................................21

*George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005)............................................................23

*Hamilton v. Geithner*, 666 F.3d 1344 (D.C. Cir. 2012)....................................................24, 25

*Hancock v. Urban Outfitters*, 830 F.3d 511 (D.C. Cir. 2016) ..........................................12

*Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65 (D.C. Cir. 2015)................................26

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)..............................................................14, 16

*Heller v. Elkins*, 340 F. Supp. 3d 18 (D.D.C. 2018) ........................................................25

*Ho v. Garland*, 106 F.4th 50 (4th Cir. 2024) ...............................................................24, 25, 26

*Jones v. Castro*, 168 F. Supp. 3d 169 (D.D.C. 2016) .....................................................25

*McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77 (D.D.C. 2016)...................................11

*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986).............................................24

*Mitchell v. Garland*, 2024 WL 3251217 (D.D.C. July 1, 2024)......................................22

*Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024)......................................................21, 22, 27

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)..........................................14, 15

*Singletary v. District of Columbia*, 351 F.3d 519 (D.C. Cir. 2003)...............................22, 23, 25

*Terveer v. Billington*, 34 F. Supp. 3d 100 (D.D.C. 2014).................................................25

*Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1 (D.D.C. 2019)........................................18

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)...........................................25

*Woodruff v. Peters*, 482 F.3d 521 (D.C. Cir. 2007).........................................................25

**Statutes**

5 U.S.C. § 2302(a)(2)(A)(i)-(xi) ........................................................................................22

42 U.S.C. § 2000e-2(a)(1)..................................................................................................23

42 U.S.C. § 2000e-5(e)(1)...................................................................................................14

29 C.F.R. § 1614.108 ...........................................................................................................9

29 C.F.R. § 1614.407 .........................................................................................................10

Fed. R. Civ. P. 8(a)(2).....................................................................................................10, 27 +1

Fed. R. Civ. P. 12(b)(6).......................................................................................................12

iii

iv

**Other Authorities**

DODI 1035.01 (Telework and Remote Work) ........................................................7

DODI 1400.25 (Civilian Personnel Management) ...............................................8

James v. Department of the Army, EEOC Request No. 0520120488 (2013) ........................14

# United States District Court
# for the District of Columbia

Kathryn Denise Rucker Krepp

  *Plaintiff*

  *vs.*            Case No.:  1:25-cv-02371 (JMC)

The Honorable John Phelan
Secretary of the Navy

  *Defendant*

**PLAINTIFF'S MOTION IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
AND MEMORANDUM OF LAW IN SUPPORT**

  **AND NOW COMES THE PLAINTIFF** Kathryn Denise Rucker Krepp, by and through her undersigned counsel, MNB Meridian Law, Ltd., who submits this Motion in Opposition to Defendant's Motion to Dismiss Count I, II, and III of Plaintiff's well-plead (reinstated) Complaint (ECF 1) as each count does, *in fact*, "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)), and respectfully requests Defendant's motion be **DENIED**.

## I   INTRODUCTION

  Despite the lessons of Tailhook, and the focus of recent Presidencies and Secretaries of Defense on eliminating sexual crimes from the federal workforce through aggressive training and discipline, the reality is that "in the trenches," boys are still behaving like boys and getting away with it. The Naval History and Heritage Command ("NHHC") leadership is comfortably nestled

1

in one of those trenches – as will be borne out as this case progresses.  Ms. Krepp's allegations will be further supported by independent investigations conducted by the Department of Defense and the Department of the Navy, when released via the Freedom of Information Act or obtained through discovery, will show NHHC's institutionalized discriminatory and retaliatory behavior.

Kathryn Denise Rucker Krepp is a 50-plus year old professional, well-regarded long time federal employee, Veteran and former commissioned officer of the United States Coast Guard, attorney, former political senior executive service appointee as the Chief Counsel of the U.S. Maritime Administration, senior staff counsel for the U.S. House of Representatives Homeland Security Committee, former registered lobbyist, employee of the Department of the Navy.  Many of these positions were patriarchal, and in some, Ms. Krepp suffered sexual harassment and sex discrimination.  At NHHC, she suffered pervasive discrimination as a female from the white male-dominated leadership and senior staff.  Given her experience, she does not make her allegations or decision to file her complaint lightly.

Throughout its Motion to Dismiss, Defendant goes to great lengths to minimize and trivialize Ms. Krepp's complaints, focusing on flipping the narrative that she was the one discriminating against men, and claiming that Plaintiff's "claims rests largely on a modest collection of perceived workplace slights and lacks comparators or allegations probative of discriminatory intent." (*see* Def Motion at p. 1)

The opposite it actually the case, the discrimination, harassment and retaliation were not trivial or workplace slights:  Plaintiff was not provided the same telework benefits as the other male staff; her superiors refused to meet with her in person to discuss routine business within Plaintiff's portfolio; she was routinely, directly and indirectly, subjected to misogynistic and derogatory comments about women; harassed due to her personal and material involvement in

2

investigations of sexual assaults in the U.S. Coast Guard (Operation Fouled Anchor); she was faulted for the failures of others for responsibilities outside her portfolio; her signature was forged on her performance appraisals indicting that she agreed with the reduced ratings and new duties and responsibilities; she reported a possible fiscal law or hiring violation with regard to a $50,000 travel budget for a teleworking employee; she was removed as the hiring decision official because she "brought unwanted attention to command" when question the advertisement and hiring authorities; and, finally, and most importantly, Messrs. Cox and Burns proposed her removal six weeks after Plaintiff filed an EEO complaint.  The reality is that the combined effect of Defendant's actions created a hostile environment that changed the terms of her employment such that it interfered with her work performance, requiring her to file EEO complaints.

The allegations in Plaintiff's complaint, supported by the evidence in the exhibits to her Complaint, make her claims plausible, thus the "court may not grant a motion to dismiss for failure to state a claim even if it strikes a savvy judge that recovery is very remote and unlikely. So long as the pleadings suggest a plausible scenario to show that the pleader is entitled to relief, a court may not dismiss." *Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks and ellipsis omitted).  Defendant's attempts to trivialize Plaintiff's complaints do not take away from the fact that her claims are *in fact* plausible if not *prima facie* evidence of harassment, discrimination and retaliation.

## II   BACKGROUND

Prior to filing her equal employment opportunity complaints in June 2024, and since March 2021, Ms. Krepp served as the Naval History and Heritage Command ("NHHC") Director, Director's Action Group ("D/DAG"), a general schedule (GS-0340-15-08) position.   It

3

is in fulfilling her duties in this position that Ms. Krepp suffered discriminatory, misogynistic, and retaliatory acts at the impetus and direction of her first and second-level supervisors:  Navy Rear Admiral (retired) Samuel Cox (Commander, NHHC) ("Cox") and Navy Captain (retired) Patrick Burns ("Burns") (Deputy Commander, NHHC).

In her capacity as the D/DAG, she was responsible for, among other things:  the supervision, development, and creation of NHHC-related briefings, decision papers, white papers, internal  reports for NHHC, the Chief of Naval Operations, and the Secretary of the Navy. She was responsible for identifying, developing, publishing and presenting high-priority special projects of interest to the Navy.  She was further responsible for developing the Navy's (now apparently abandoned) NHHC strategic engagement plan for building the National Museum of the United States Navy on the Navy Yard, and lastly, supervising the general DAG administrative matters related to the NHHC's budget, organization, manpower, training, and administrative programs.

As the D/DAG, Ms. Krepp was a member of the "senior leadership team," or command staff, which consisted of seven positions then occupied by five (5) Caucasian males, a minority female, and Ms. Krepp, a Caucasian female.  On Ms. Krepp's departure, a sixth Caucasian male was appointed to fill her position.[1]  Given her complaints of discrimination and retaliation by Messrs. Cox and Burns, she is currently detailed to the Office of the Deputy Chief of Naval Operations (N9) – the second such assignment since returning from administrative leave.  Ms. Krepp is pending a 3rd reassignment in late May while resolution of this case works through the courts.  Given the likely two-year progression of this case, Ms. Krepp can *expect to be moved at least six (6) more times* to other offices within Headquarters, Department of the Navy during that

---

[1] The individual who replaced Ms. Krepp is an individual that is the topic (but not the source) of one of Ms. Krepp's retaliation complaints in this action.

time.  This is, in itself, retaliation for filing an EEO complaint insofar as Ms. Krepp has no professional progression, may lose out on bonuses, and be significantly prejudiced in further employment within or outside the federal government.

Mrs. Krepp alleges, established through complaint exhibits, and can further establish later through discoverable evidence, the discriminatory, misogynistic, and retaliatory acts committed by both Messrs. Cox and Burns against Plaintiff, amounted to a change in the roles and responsibilities in the terms and conditions of employment.  Specifically, both Messrs. Burns and Cox, or each of them individually have:

a.        communicated differently with Plaintiff than they did with the white male members of the Senior Staff by refusing to meet in person with Plaintiff on matters within Plaintiff's portfolio, resorting only to email communications with Plaintiff on official matters;

b.        denied Plaintiff's authorization to telework by either refusing or abrogating their responsibilities to ensure Plaintiff had a valid telework agreement in place in accordance with Navy and Department of Defense regulations (see Department of Defense Instruction (DoDI) 1035.01 (*dated* January 8, 2024), when all the white male members of the senior staff has approved telework agreements thereby denying Plaintiff the same working conditions;

c.        created a hostile work environment when Mr. Burns understood that Plaintiff was a material witness in the Department of Homeland Security investigation of sexual misconduct in the U.S. Coast Guard ("Operation Fouled Anchor"), was actively providing information and evidence on sexual assaults in the U. S. Coast Guard to Senate and House of Representative committees conducting independent investigations, by requiring Plaintiff to take personal time to conduct official business;

5

d.　　created or continued the hostile work environment over Plaintiff's Operation Fouled Anchor participation, Mr. Burns issued Plaintiff an unsupported and unreasonably low performance, and then completed the appraisal process by closing the appraisal with an annotation that Plaintiff "declined to sign," despite numerous attempts by Plaintiff to seek an in person meeting with Mr. Burns to discuss the appraisal.  Mr. Cox contributed to this retaliatory behavior, as Plaintiff's second line supervisor, by refusing to meet with Plaintiff to discuss the appraisal, as is Plaintiff's right pursuant to DoDI 1400.25 (*dated* February 4, 2016, as amended);

e.　　modified Plaintiff's performance standards and plan, restricting access to the performance plan, and they refusing to inform or consult with Plaintiff about the changes to her duties and responsibilities, and required performance of those duties;

f.　　 diminished Plaintiff's ability to perform the core responsibilities of the D/DAG position by publicly excluding Plaintiff from meetings with the District of Columbia government on matters related to the development and construction of The Museum of the United States Navy (the "Navy Museum"), when responsibility for coordinating, attending, and participating in those meetings were within Plaintiff's assigned duties and responsibilities;

g.　　created or continued a hostile work environment after Plaintiff openly questioned the hiring of an (GS-15) employee whose primary duty station would be his home in Texas and the further authorization of a significant ($50,000-plus) travel budget to allow that individual to frequently travel to/from Texas for routine meetings in the Washington, D.C. metropolitan area.

h.　　diminished Plaintiff's duties and responsibilities as the D/DAG when Mr. Burns removed Plaintiff from her role as the hiring official for the vacant position as the Deputy Director, Director's Action Group (the "Deputy Director Position") after seeking to widen the applicant pool for the Deputy Director position and questioning the regulatory authorities for

restricting the applicant poll such that it was widely perceived that Mr. Burns sought to narrow the applicant pool to one or more favored individuals, specifically Mr. Burns's former commanding officer (who was ultimately hired by Mr. Burns as the deciding official);[2]

     i.      placed Plaintiff on administrative then without justification prior to … retaliating against Plaintiff by proposing to remove Plaintiff from federal service for conduct unbecoming a supervisor, failure to follow instructions, and lack of candor (*see* Compl. Ex. D), the allegations of which were misleading and outright false.[3]

Defendant's cumulative actions against Plaintiff are plausible evidence insofar as the above facts "allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556.)

## II      Procedural Background

1.     Plaintiff filed a timely Equal Employment Opportunity ("EEO") complaint with the Navy on July 16, 2024 (amended on July 22, 2024, further amended on September 4, 2024 (Agency Docket Number(s) DON 24-63151-01110 and DON 24-68323-00706)).  In July 2025, Plaintiff later filed third EEO complaint (Agency Docket No. 25-63151-01086), regarding continuing retaliatory acts related to the July 2024 complaints.

2.     In the EEO Complaint, Plaintiff alleged prohibited acts committed by Plaintiff's supervisors, Messrs. Cox and Burns, based on Plaintiff's sex (gender), and in retaliation for

---

[2] Defendant alleges that "Plaintiff's leadership removed her from the selection panel for having "attempted to exclude qualified candidates for consideration based on gender" and, based on this and other misconduct, proposed her removal from the civilian service." (see Defendant' Motion to Dismiss at p. 1)  Absent from Defendant's brief is the fact that the identified hiring action was a second announcement after the first successful applicant (a male) declined to take the position, and the eligibility pool was shrunken to restrict the type of applicants.

[3] The Deciding Official declined to remove Plaintiff from federal service because the evidence did not meet the preponderance of the evidence.

conducting protected activities including being a whistleblower, the filing of the EEO Complaint(s), and for "calling out" misogynistic behavior toward Plaintiff and other NHHC female employees (*see* Compl. Exhibit "A").  Defendant's actions, and those of its appointees, employees, or agents began in 2024, and continue until the dates of this Complaint and this motion.

3.      The Navy acknowledged and accepted some of Plaintiff's complaints on September 25, 2024, for investigation in EEO Docket No.:  24-63151-01110, and dismissed others.  (*see* Exhibit "B")  However, the Navy retained the information provided in the dismissed claims in the investigation, stating that "Although I am dismissing these claims as discrete acts that were not timely raised with an EEO Counselor, however, these events should be considered in the analysis of your harassment claim because *they are sufficiently related to the overall pattern of harassment*." (*see* Compl. at Ex. B, p. 6) (emphasis added)

4.      On October 16, 2024, Plaintiff agreed to extend the Navy's timeline to investigate the EEO Claims for 90 days, or until April 12, 2025.

5.      Plaintiff was issued a "Right to Sue" letter by the Navy on June 17, 2025, due to the Navy's inability to complete its investigation within the time limits of Title 29 C.F.R. § 1614.108, and informing Plaintiff of her right to file this civil action pursuant to 29 C.F.R. § 1614.407 stating the estimated time to complete the Navy's investigation was September 3, 2025, well beyond the 360-days (beginning July 16, 2024) permitted by 29 C.F.R. § 1614.407. (*see* Exhibit "C")

6.      Plaintiff filed this matter on July 23, 2025.

7.      Defendant filed its motion to dismiss on January 16, 2026 (ECF 11).

8.      In response to Defendant's motion to dismiss, Plaintiff filed an amended complaint (ECF 14).

9.      On April 15, 2026, Plaintiff filed and the Court granted Plaintiff's motion to withdraw her amended complaint (ECF 16) and reinstate the original complaint (ECF 1), and motion for leave to file out of time this motion in opposition to Defendant's motion to dismiss (ECF 15) (*see* minute order of April 15, 2026).  This motion complies with that Order.

### III    STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must only provide a "short and plain statement of the claim." (F.R.C.P. 8(a)(2)), and must give "the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570, (2007)  The notice-pleading rules are "not meant to impose a great burden upon a plaintiff." *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 85 (D.D.C. 2016) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)), and must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' and 'allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  Plaintiff's allegations in her complaint, supported by the exhibits, are evidence of plausible allegations.

A plaintiff is also not required to plead *prima facie* evidence or even "detailed factual allegations" in a complaint, nor does the rule even impose a "probability requirement" on the plaintiff.  *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Plausibility is not akin to

9

probability; rather, a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In assessing such a motion, the Court must treat a complaint's factual allegations as true and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Twombly*, 550 U.S. at 584; *Hancock v. Urban Outfitters*, 830 F.3d 511, 513-14 (D.C. Cir. 2016).

Indeed, a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," as the inquiry is whether the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. "A court may not grant a motion to dismiss for failure to state a claim even if it strikes a savvy judge that recovery is very remote and unlikely. So long as the pleadings suggest a plausible scenario to show that the pleader is entitled to relief, a court may not dismiss." *Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks and ellipsis omitted).

## IV    ARGUMENT

Defendant's factual support for its Motion to Dismiss focuses solely on trivial events. In doing so, Defendant seeks to distract the Court from the voluminous evidence discussed above and which Plaintiff extensively documents in the exhibits to her reinstated Complaint – all of which "suggest a plausible scenario to show that the pleader is entitled to relief, a court may not dismiss." *Atherton,* 567 F.3d at 681.

### A.    Defendant's Continuing Course of Conduct.

The discrete acts cited by Defendant, *e.g.*, changes to Plaintiff's performance plan, the "rolling of eyes," and non-invitations to parties, etc., were correctly not accepted by the Navy

EEO office for investigation as they were outside the requisite windows. (*see* Compl. Ex. B at

para. 3)  Defendant's reliance on these events trivializes all of Plaintiff's allegations as mere

"workplace slights."  While dismissed, these "workplace slights" illustrated some (plausible)

evidence of a continuing course of conduct that informed the investigation of Plaintiff's reinstate

complaint:

> "Although I am dismissing these claims as discrete acts that were not timely raised with an EEO Counselor, however, these events should be considered in the analysis of your harassment claim because they are sufficiently related to the overall pattern of harassment. Therefore, claims 3(a)-3(e) of this letter are dismissed for untimeliness; however, they *will be included* in the investigation *as background information* to the extent that it *provides relevant information in support of the accepted hostile work environment claims*." (citing James v. Department of the Army, EEOC Request No. 0520120488 (May 17, 2013).  (*see* Pltf. Compl. at Exhibit B) (emphasis added)

To determine whether an actionable hostile work environment claim exists, the Court

must look to "… all the circumstances," including "the frequency of the discriminatory conduct;

its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's work performance." *Amtrak* 536 U.S.

at 101 (*citing* Harris v. Forklift Sys. 510 U.S. 17, 23 (1993)).  At a higher standard of assessing

liability (greater than the plausibility standard required here), a court must review all such

conduct, including those acts that occur outside the filing period, in accordance with the statute

(42 U.S.C. § 2000e-5(e)(1)), which states a charge must be filed within 180 or 300 days "after

the alleged unlawful employment practice occurred." *Amtrak* 536 U.S. at 116-117

A hostile work environment claim is comprised of a series of separate acts that

collectively constitute one "unlawful employment practice."  "The timely filing provision only

requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful

practice happened.  It does not matter, for purposes of the statute, that some of the component

acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." (*Id.* at 117)

Given that Plaintiff's claims must be plausible at the pleading stage, Defendant's position that "discrete acts occurring before April 23, 2024, forty-five days before she first contacted an EEO counselor on June 7, 2024, *see* Compl. Ex. A at 5, her claims are barred for failure to administratively exhaust her remedies," is incorrect and they should be considered in *evaluating* the overall plausibility of Plaintiff claims.

### B.    Plaintiff's Hostile Work Conditions are Severe and Pervasive.

Defendant further argues that Plaintiff's claims of a hostile work environment must be "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *AMTRAK v. Morgan*, 536 U.S. 101, 116 (2002). However, *AMTRAK* also supports that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. (*AMTRAK* 536 U.S. at 115, *citing* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-349 (3d ed. 1996) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). *AMTRAK* continues that "'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citations omitted)

A hostile work environment claim requires an employee to have been subjected to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter

12

the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201  Hostile or harassing behavior "must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Plaintiff's complaint and its exhibits, as well as the documents that support those exhibits, provide plausible and ultimately discoverable evidence of, for example, the failure of Messrs. Cox and Burns to work with Plaintiff face to face created a hostile environment that changed the terms of her employment such that it interfered with her work performance., *e.g.,* "being called and routinely referred to as the "speech police;" identifying to Messrs. Cox and Burns discrete acts of routinely "*calling out*" Plaintiff for attempting to assist other female employees to help them resolve their pay, harassment, and other issues.  Issues of which they were both fully aware and failed to timely and appropriately correct, including but not limited to conduct of one of the Senior Male Staff telling a female military subordinate "don't go getting pregnant on me;" and, another of the Senior Male Staff harassed an employee by hindering her ability to get routine medical care for a high-risk pregnancy such employee chose to resign due to Messrs. Cox and Burns's inaction, (*see* Compl. at para. 23) that Messrs. Cox and Burns permitted such behavior toward Plaintiff but also command wide.

In evaluating the offensiveness of a hostile work environment, the court must look "to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity,

its offensiveness, and whether it interferes with an employee's work performance." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201, 384 U.S. App. D.C. 85 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).  Clearly, Plaintiff's allegations, the evidence in the complaint exhibits, and the existence of discoverable evidence of the pervasiveness of the use of derogatory language toward women in Plaintiff's presence.  Also, Plaintiff's repeated requests to refrain from the use of the misogynistic language, when coupled with the permitted behavior, as Plaintiff has alleged, are sufficient to survive the plausibility test.  Messrs. Cox and Burns created and allowed a hostile work environment to exist that affected not only Plaintiff, but other female NHHC employees.

Furthermore, Defendant appears to incorrectly invokes a summary judgment standard that hostile work environment claims are subject to dismissal when the Plaintiff "fail[s] to allege misconduct that meets the legal threshold for a hostile work environment claim." *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 10 (D.D.C. 2019).  Defendant refers solely to and trivializes "Plaintiff's exclusion from certain workplace meetings and lunches, inadequate air conditioning, adjustments to her performance plan, and back-and-forth with supervisors and human resources personnel regarding leave …" (*see* Defendant's Motion to Dismiss at p. 8), and ignores the many other acts Messrs. Cox and Burns committed in their harassment and retaliation against Plaintiff.  Defendant's further reliance on *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 8 (D.D.C. 2019), is incorrect.

      C.     Plaintiff's Discrimination and Retaliation Claims *are* Plausible.

Defendant argues that Plaintiff "does not plausibly allege that any adverse acts resulted from gender discrimination, especially in light of the obvious alternative explanation for those acts—namely, Plaintiff's own well-documented use of her authority to exclude employment applicants from consideration based on gender," but more specifically Plaintiff did not suffer a

discrete adverse personnel action.  With regard to excluding applicants, Defendant fails to use the full facts provided in Plaintiff's Complaint, which are clearly elucidated in supporting exhibits.  (*see* Compl. at Ex. E p. 3)

With regard to Defendant's allegation that Plaintiff allegedly discriminated, really against white males, what the Defendant conveniently fails to discuss is that Defendant's servicing human resources office improperly restricted the pool of potential applicants in its February 2024 announcement (RPA 818020) for the Deputy Director Position, *e.g.*, to be a term position and advertised for only 7 days to prevent a former employee from using her return rights (*see* p. 4  of Compl. Exhibit "D").  The idea that Plaintiff solely and through her own sole and exclusive authority excluded male applicants is preposterous.  From the RPA 818020 applicants, the *hiring panel* initially offered the position to a male applicant (who declined the offer) from a pool of two male and two female applicants.  The *hiring panel* determined the two female applicants were not qualified, and for the reasons discussed in Exhibit E to Plaintiff's complaint, a male applicant ("Bob") was found to be unsuitable.  Coincidently, "Bob" was Mr. Burns's former commanding officer, a then-current NHHC employee, a rehired annuitant, and ultimately hired into the position by Mr. Burns, as discussed below.

In the June 2024 advertisement (RPA 917488), Plaintiff sought to open the pool of applicant to the entire federal workforce requesting "two changes.  First, the announcement should be open for two weeks. Second, the job should be open to all current federal employees." Defendant eventually acquiesced but not because due to Plaintiff's request.  Additionally, without Plaintiff's knowledge, Defendant incorrectly closed the announcement:  "just issued the certificates for this position. These certificates contain applicants with veteran's preference.

15

Since this is a DE recruitment, applicants with veteran's preference must be selected or decline the position before we can review non-vet applicants."[4] (*see* p. 5 of Compl. Exhibit "D").

Of the four applicants, Plaintiff and the hiring panel reviewed the resumes and concluded that none of veteran applicants were qualified, including, again, "Bob." When Plaintiff questioned the hiring authorities and the applicant certification methods, Plaintiff was found by the servicing Navy HR office, but more specifically, Mr. Burns to be "obstructive" and removed Ms. Krepp from the hiring panel, and another female placed on the panel.[5] In that decision, Mr. Burns withheld the hiring authority to himself. After the hiring panel interviewed the four "certified" (and arguably unqualified) candidates, the panel made an unknown but easily guessed recommendation to Mr. Burns, give that Mr. Burns hired "Bob" on September 29, 2024. This was *after* Plaintiff had been placed on administrative leave and issued the Notice of Proposed Removal (September 4, 2024). Nothing in Plaintiff's actions is evidence of a "well-documented use of her authority to exclude employment applicants from consideration based on gender," considering she was one member of a panel of three required, of which a 2 of 3 vote was required to offer the position – as happened in the offer to the male applicant in the RPA 818020 selection process.

> D.      Plaintiff's Claims of Discrimination in Adverse Actions are Plausible.

In *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), the Supreme Court clarified the standard for an actionable adverse employment action. A plaintiff need only allege "some harm" regarding the terms and conditions of her employment to support a discrimination claim. *Id*. at 972. This decision came after and is consistent with the D.C. Circuit's decision in *Chambers v. District of Columbia,* 35 F.4th 870, 874-875, 878 (D.C. Cir. 2022) (*en banc*), in which the

---

[4] Plaintiff was not told that recruitment was open only to Veterans until this point.
[5] This allegation was one basis for Plaintiff's proposed removal.

Circuit rejected the heightened "objectively tangible harm" standard and confirmed that some change with respect to the terms and conditions of employment is sufficient to plead an adverse action ("[T]he textual requirement of 'objectively tangible harm' frustrates Title VII's purpose of ending discrimination in the workplace.")  Further, Plaintiff need not "plead the elements of a *prima facie* case" to survive a motion to dismiss.  *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). But "[s]he must nevertheless plead sufficient facts to show a plausible entitlement to relief."  *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011) (emphasis deleted).

Defendant appears to argue that the adverse-action standard enunciated in *Muldrow* and *Chambers* does not apply because Plaintiff is a federal-sector employee covered by separate provisions of Title VII.  According to Defendant's view, a federal-employee plaintiff may only bring a claim based on an adverse "personnel action" as defined by the Civil Service Reform Act, 5 U.S.C. § 2302(a)(2)(A)(i)-(xi).  In *Mitchell v. Garland*, (No. CV 23-2412 (LLA), 2024 WL 3251217, at *3 (D.D.C. July 1, 2024)), the D.C. Circuit "has consistently held that the private-and federal-sector provisions of Title VII should be construed similarly." (citing *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007); *Singletary v. District of Columbia*, 351 F.3d 519, 523-24 (D.C. Cir. 2003); *Bain v. Off. of the Att'y Gen.*, 648 F. Supp. 3d 19, 54 (D.D.C. 2022) ("[Chambers] did not so much as hint that the private-sector and federal-sector discrimination provisions should no longer be construed alike. If anything, it affirmed the *status quo*.")).  The Court further pointed out that *Chambers* overruled *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), which involved a federal-sector employee. *See id*. Thus, the D.C. Circuit Court intended its interpretation of the adverse action requirement to apply to all Title VII discrimination claims, not just those brought by private-sector employees. *See id*. The identical

17

application of anti-discrimination laws for federal and non-federal employees has been consistent within the Federal Circuit for many years. *see George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005) ("Despite the differences in language between the two provisions, we have held that 'Title VII places the same restrictions on federal and District of Columbia agencies as it does on private employers, and so we may construe the latter provision in terms of the former.'") (citing *Singletary v. Dist. of Columbia*, 351 F.3d 519, 523–24 (D.C.Cir.2003)).

The thrust of the hostile work environment cases is that an abusive working environment amounts to a "constructive alteration … in the terms or conditions of employment" only if … harassment is severe or pervasive. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 752 (1998). The *Burlington* line of cases have no bearing on a case in which an employer discriminates against an employee with respect to the actual terms or conditions of employment; for example, by transferring an employee to a new position because of the employee's race or sex. *Chambers* 35 F.4th at 878. Title VII should be read to mean what it says – that it prohibits any "discriminat[ion] against [an] individual with respect to … terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), even if that that discrimination is "garden-variety." This saves courts the trouble of administering an open-ended requirement of objectively material injury found nowhere in the statute's text. And it is more consistent with the statute's "intent to strike at the entire spectrum of disparate treatment … in employment." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64 (1986) (internal quotation marks omitted).

### E.    Causal Proximity.

Plaintiff's complaint clearly establishes causal proximity to a protected activity. It is the most egregious example not only of a plausible allegation, but a *prima facie* one: Mr. Burns proposed Ms. Krepp's removal on September 4, 2024 – not six weeks after Plaintiff amended her

18

July 16, 2024 EEO complaint (Agency Docket Number(s) DON 24-63151-01110 and DON 24-68323-00706) for the very act she filed the EEO complaint (complaining of her removal from the Deputy D/DAG position) – for which she again amended her EEO complaint on September 4, 2024.

When a plaintiff alleges multiple protected activities, "courts should consider [the] later protected activity in determining whether evidence of temporal proximity satisfies the causation element." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).  This six-week timeline is well and squarely within the outer bounds of what courts have recognized as being a sufficiently close temporal proximity. see *Ho v. Garland*, 106 F.4th 50, 52 (4th Cir. 2024).  While there is no "bright-line rule, the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." (cleaned up)).  *Id.* at 52.

"To establish causation in a Title VII retaliation case against a federal employer, a plaintiff must prove that, but for her protected conduct, the employer would not have taken the adverse employment action of which she complains." *Heller v. Elkins*, 340 F. Supp. 3d 18, 29 (D.D.C. 2018) (citations omitted); see also *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). "At the motion to dismiss stage, the hurdle of alleging a causal link is not a high one." *Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d 9, 38 (D.D.C. 2018). "Temporal proximity, for example, may suffice[.]" *Id.* (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012); *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007); *Singletary v. District of Columbia*, 351 F.3d 519,

19

525 (D.C. Cir. 2003)). So "other factual allegations that, construed in the light most favorable to the plaintiff, would 'plausibly' establish this element of the claim." *Id.* (quoting *Twombly*, 550 U.S. at 570) (citations omitted)); *see also, e.g., Ho*, 106 F.4th at 52–55 (collecting facts from the complaint "that together support an inference of causation"). Furthermore, Plaintiff need even not "establish" a causal link in the pleadings, particularly opposing a motion to dismiss. *Jones v. Castro*, 168 F. Supp. 3d 169, 184 (D.D.C. 2016) ("[A] plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss.")

Even if Defendant were to claim that Ms. Krepp's other conduct, *e.g.,* the alleged facts supporting the other specifications in Mr. Burns's proposed removal,  the D.C. District Courts have denied motions to dismiss where an employer's prior contemplation of the adverse action foreclosed causation by temporal proximity because the plaintiff had alleged separate facts that were probative of retaliation. *see, e.g.*, *Terveer v. Billington*, 34 F. Supp. 3d 100, 118–20 (D.D.C. 2014).  Plaintiff has sufficiently alleged other facts that would plausibly establish causation absent even temporal proximity. *see, e.g.*, *Ho*, 106 F.4th at 52 ("Ho's complaint, however, does not rely solely on the timing of his non-selection in relation to his EEO complaints. He pled several other facts . . . that together support an inference of causation."); *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69–70 (D.C. Cir. 2015) ("We need not decide whether a five-month time lag without more would be sufficient to render Harris' claim plausible because his complaint alleged more."). As discussed above, Plaintiff alleges that she (and other NHHC females) was forced to endure a hostile work environment being called a "bitch" and a "pussy."

F.      *Discovery is Necessary*

20

A grant of Defendant's motion to dismiss is inappropriate at this stage because there are many reasonable bases for discovery that can and will produce the evidence required to prove disparate treatment, harassment, and retaliation in this matter. *see Cruz v. McAleenan*, 931 F.3d 1186, 1193 (D.C. Cir. 2019) (denying discovery on the subject of comparators was an abuse of discretion). To access that information given that Defendant has not yet acted on Plaintiff's Freedom of Information Act requests, additional discovery is required to fully develop the record on the Agency's purportedly justified reasons for proposing Plaintiff's removal, among other issue. Defendant's argument is that Plaintiff is claiming conduct too far outside the 45-day window for the Government to accept an EEO complaint. However, in Mr. Burns's proposed removal, he provides on partially produced witness statements, many of which were not directly related to the misconduct Defendant alleges Ms. Krepp committed (*see* Pl. Compl. Exhibit D). Given the limited information available to Plaintiff thus far, she will seek statements, emails, and other documentary and testamentary evidence through interrogatories and depositions to show Messrs. Cox and Burns's animus toward Plaintiff.[6]

Plaintiff will also request further information concerning comparators, as well as evidence of communications between the Navy leadership and other Agency officials regarding the adverse actions at issue here, and information on what efforts the Agency made to address the harassment and discrimination Plaintiff detailed in her complaints. Plaintiff believes some of this evidence exists in Navy IG investigations conducted at NHHC and into its leadership.

## V      CONCLUSION

For the reasons set forth motion and this memorandum of law in opposition, Kathryn Denise Rucker Krepp has far exceeded the "short and plain statement" requirement of

---

[6] Plaintiff is also aware of at least two completed Navy Inspector General investigations of NHHC that have not yet been released publicly or to Plaintiff pursuant to her 2024 and 2025 Freedom of Information Act requests.

21

Fed.R.Civ.P. 8(a)(2). Her Complaint does not merely rest on speculation; it provides a detailed, factual account of a patriarchal, misogynistic, and discriminatory culture at the Naval History and Heritage Command (NHHC) that systematically targeted her based on her sex and her protected whistleblower activities.

Defendant's attempts to "trivialize" and "minimize" these allegations as mere "workplace slights" ignore the totality of the circumstances. The record established thus far, including the denial of telework benefits provided to male peers, the forgery of her signature on performance appraisals, and the diminishment of her core responsibilities all present a "plausible scenario" of a hostile work environment and disparate treatment that entitles her to relief.

Furthermore, the temporal proximity of Mr. Burns's proposal to remove Ms. Krepp from federal service, just six weeks after she amended her EEO complaint, serves as a higher *prima facie* example of retaliation that must be tested through discovery. Under the standards clarified in *Muldrow* and *Chambers*, Ms. Krepp has clearly alleged "some harm" to the terms and conditions of her employment sufficient to survive a motion to dismiss.

This case requires the "light of discovery" to fully uncover the extent of the misogynistic animus and retaliatory conduct within NHHC leadership. Because the Complaint "contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the Court must allow this matter to proceed.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court **DENY** Defendant's Motion to Dismiss in its entirety.

Respectfully submitted:

MNB MERIDIAN LAW, LTD

Date:   April 21, 2026                By:   _____

Christopher Nuneviller, Esq.
PA Sup.Ct. ID. No.:  81969
DCDC Bar No.:  PA0148
1650 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Main:  (215) 268-3003
Facsimile:  (267) 392-2024
Email:  cnuneviller@mnbmeridian.com

23